PIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GURPAL SINGH, as Administrator of decedent RANJIT SINGH, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 06 0574 RMC |
| v. | : | |
| | : | |
| | : | |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, Et Al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**A. Background**

This case occurred at an event known as the "Bhangra Blowout" in 2005. Bhangra is a style of song and dance originating from India and Pakistan. This event, which was organized and promoted by George Washington University and the George Washington South Asian Society, had several components, including a party at the end of the contest which was held at the Old Post Office Pavilion located at 1100 Pennsylvania Ave NW, Washington, DC 20004. This event was attended by approximately 1,250 persons. Alcohol was served to patrons over the age of twenty one. The event began at 7:00 p.m. on March 26, 2005 and was supposed to continue until 3:00 a.m. the next morning, but it appears that the event was shut down at around 2:00 a.m. in the middle of a performance. Plaintiff has alleged that there had been a number of assaults at this event in previous years. In an effort to control the number of such incidents, attendance in 2005 was halved and security was increased inside the building. Plaintiff has alleged that prior to the end of the event there was an assault

1

which occurred inside the building during which no security guards intervened. Subsequently, he alleges, some friends of the decedent, Ranjit Singh, were assaulted on the steps leaving the building. He has specifically alleged that these steps were part of the property. The assailant who had also attended the event appeared to be drunk. Moments later, the decedent was assaulted at the top of the same steps, by the same assailant who had assaulted his friends. The decedent walked away but was fatally stabbed on the sidewalk about ten feet from the bottom of the steps. The murderer then ran off and made good his escape. No security guards were posted at the exit.

**B. Argument**

I.    **Defendants owed plaintiff's decedent a duty to provide reasonable security for safe egress from the event**

Defendants contend that they were under no duty to plaintiff to provide security in the area because he was attacked by an unknown assailant, the attack occurred after the event had ended, and it occurred on a sidewalk. Each of these contentions lacks merit. Firstly, the fact that the assailant is unknown to plaintiff's decedent is irrelevant. The attacker in *Doe v. Dominion Bank, N.A.* 295 U.S. App. D.C. 385, 963 F.2d 1552 (D.C. Cir. 1992) was also unknown, and this made no difference to the holding which was that the landlord failed to provide adequate security at an office building. Likewise, the assailant in *Doe v. District of Columbia*, 524 A.2d 30 (1987 D.C.) was unknown but this made no difference to the analysis of the case and the finding that the District had been negligent in failing to provide reasonable security to an eleven year old girl who was raped inside an elementary school.

Defendants' second point, that the event was over and therefore their duty ended the moment the event ended, is also without any basis in law. Actually, the event was in the process of ending. It had been shut down early, for undisclosed reasons, and around twelve hundred patrons were in the process of leaving the building. Under such circumstances, it is

simplistic to claim that the defendants' duties to their patrons ended the instant they announced the event was over. Defendants fail to cite any cases in support for this proposition and plaintiffs have been unable to find any. Cases in other jurisdictions suggest that public events attended by large numbers of people impose on the promoter a duty to take reasonable care to ensure an orderly exit from the event. Courts which have considered the issue have held that the duty to provide for an invitee's security "'extends to the entrance of the property and to a safe exit after the purpose [of the visit] is concluded…." *Banks v. Hyatt Corp.* (5th cir. 1984) 722 F.2d 214, 222, quoting Prosser, Law of Torts (4th ed. 1975) § 61 at p. 392.) In *Avila v. Jado Properties, Inc.,* 112 Cal. App. 4th 405, (2003 Cal. App.) the court held in a case against a restaurant owner, that summary adjudication of guests' negligence claims arising from a shooting were precluded because the owner had agreed to provide security and there was a material question of fact as to the scope of that duty. The court also held that the area of invitation to patrons extended to the entrance of the property and to a safe exit after the purpose of the visit was concluded. See Also: *Shields v. Food Fair Stores, Inc.*, Fla.App.1958, 106 So.2d 90, *cert. denied*, Fla. 1959, 109 So. 2d 168; *Heller v. Select Lake City Theatre Operating Co.*, 187 F.2d 649 (7th Cir. 1951); *Thompson v. Gallo*, 680 So. 2d 441 (1996 Fla.)

In this case, plaintiff has alleged that there was no security at all, in the area where plaintiff exited the event. He has also alleged that there had been prior assaults at this event in prior years, that there had been an assault inside the building earlier and that moments before the same assailant who murdered the decedent, had engaged in assaultive behavior to other persons leaving the event. Hence, it is submitted that plaintiff has sufficiently alleged a violation of the duty to provide a safe exit from the Old Post Office Pavilion.

Defendants also fail to provide any specific authority for their contention that because the actual stabbing occurred on a public sidewalk they cannot be held responsible. In fact, most cases which have considered the issue, have rejected the notion that the duty stops exactly at

3

the boundary of the property. *Banks v. Hyatt Corp.* 722 F.2d 214 (5th cir. 1984) involved the shooting of a hotel guest by a third party outside the entrance to the hotel on property serving as a sidewalk. The hotel argued that it could not be liable for conduct that occurred on a sidewalk. (*Id.* at p. 221.) The court concluded that "[a]fter examining general tort doctrine, the relevant caselaw, and the policies underlying tort liability, we find ourselves unwilling to create an immunity based on a distance of four feet," the distance between the victim's feet and the hotel entrance. (*Id.* at p. 221.)

In, *Zepf v. Hilton Hotel & Casino*, 346 N.J. Super. 6, 786 A.2d 154 (2001 N.J.) the victim and employee of defendant's Casino was robbed and injured . The robbery occurred while the employee was crossing a driveway in front of the casino which was not part of the its property. The court held that the issues of whether the robbery was foreseeable and whether the employer was negligent for failing to provide security in the area where the robbery occurred were questions for the jury. The fact that the incident occurred off the defendant's property was not dispositive of plaintiff's claim.

In *Silva v. Spohn Health Sys. Corp.*, 951 S.W.2d 91 an injured employee challenged a trial judge's order granting summary judgment to defendant's employer, a hospital. Plaintiff was part of defendant's evening cleaning crew. She was stabbed one night after work while waiting outside for a ride home. The trial judge granted the defendant summary judgment, citing the fact that the stabbing occurred outside the hospital. The court reversed and remanded. The court held that defendant was an invitee and that defendant owed her a duty to protect her from attacks by third parties which were reasonably foreseeable. Defendant's duty did not necessarily end at the threshold of its building. Because there were factual disputes regarding the foreseeability of the attack and defendant's ability to protect appellant on the street just outside its building, summary judgment was inappropriate.

4

In the instant case, the distance between the boundary of the Old Post Office Pavilion and the stabbing of decedent is alleged to be ten feet. This is within range to be considered part of the egress from the building. However, more significantly, plaintiff also specifically alleges that the assaultive behavior which led to the stabbing *began* on the Old Post Office property. Plaintiff has alleged that the incident began at the top of the steps leading from the building which he specifically alleges, were part of the property. Defendants' position is, that even where an assault begins on its property, if it happens to end outside it, defendants are automatically absolved of all responsibility, as a matter of law, merely because of the happenstance of where the assault ended. Plaintiff has been unable to find any cases case which even comes close to suggesting this and defendants fail to cite any relevant authority which supports their position.

Innkeepers, in particular, have been held liable for assaults which have been committed upon their guests by third parties, if they have breached a duty which is imposed by reason of the innkeeper-guest relationship. By this duty, the innkeeper is generally bound to exercise reasonable care to protect the guest from abuse or molestation from third parties, be they innkeeper's employees, fellow guests, or intruders, if the attack could, or in the exercise of reasonable care, should have been anticipated.

Liability in the innkeeper-guest relationship is based as a matter of law either upon the innkeeper's supervision, care, or control of the premises, or by reason of a contract which some courts have implied from the entrustment by the guest of his personal comfort and safety to the innkeeper. *Gurren v. Casperson,* 147 Wash. 257, 265 P. 472 (1928). *See also Fortney v. Hotel Rancroft, Inc.*, 5 Ill.App.2d 327, 125 N.E.2d 544 (1955). Specifically, innkeepers have been held liable for assaults which have been committed upon their guests by third parties, if they have breached a duty which is imposed by reason of the innkeeper-guest relationship. By this duty, the innkeeper is generally bound to exercise reasonable care

5

to protect the guest from abuse or molestation from third parties, be they innkeeper's employees, fellow guests, or intruders, if the attack could, or in the exercise of reasonable care, should have been anticipated. *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 141 U.S. App. D.C. 370 , 439 F.2d 477, 482.

In this case, plaintiff has alleged that alcohol was available at the event. It was clearly a public dance. It was attended by a large number of persons and the murderer in this case had attended the event, appeared to be drunk at the time of the incident. Under such circumstances, the promoters of the event, should be deemed to be innkeepers. Not only then were they under a duty to safeguard plaintiff, they were under a heightened duty to do so. By failing to provide any security at all, in the area where the fatal assault began, on the property where their event was taking place, they fell well short of meeting such a standard.

**II.   On the Facts Alleged in Plaintiff's Complaint, Plaintiff Can Satisfy the "Heightened Forseeability" Standard.**

Defendant characterizes the alleged facts upon which he relies as bordering on "frivolous." Plaintiff disagrees. He has alleged that this was a large dance party attended by over twelve hundred people which started at 7.00 p.m. and was abruptly shut down at about 2.00 a.m. an hour prior to time it was supposed to end. Alcohol was available at the event. Prior to the end, there was a disturbance inside the event involving members of the group decedent was with and other persons who were friends of the murderer. No security guards intervened. When the event closed down, the murderer assaulted friends of the decedent as they were at the top of the some steps leading from the building. Plaintiff has specifically alleged that the steps were part of the property. Plaintiff has alleged that there was no security guard present in the area. When decedent left the building shortly afterwards, the same person, who was obviously drunk, then began to act in a menacing and assaultive manner towards him, again while decedent was

still on the property where the defendants were staging their event. Decedent continued down the steps, went on to the sidewalk and was fatally stabbed ten feet away from the bottom of the steps. Based on this scenario it is highly likely that a reasonable security guard would have intervened much earlier in this chain of events, had one been present. Was there heightened forseeability that this gentleman would assault another member of decedent's group after the first assault on the steps, especially since he continued to "lie in wait" at the top of the stairs? Plaintiff respectfully submits that the answer to that question is obviously yes. Moreover, according to the complaint he was clearly drunk, slurring his words, staggering, acting in a belligerent fashion and making fists. How much more foreseeable could it possibly be that he was likely to assault someone else?

In a more general sense, the defendants were running an event at which, plaintiff alleges, there had been prior assaults in previous years. Indeed, the nature and extent of those problems had, plaintiff alleges, necessitated a fifty percent reduction in the persons allowed to attend the event and an increase in security. Moreover, just the nature of the event, a dance party attended by over twelve hundred young people which went on for seven hours and at which alcohol was served, makes it highly likely that disputes may arise and fights occur. Failing to provide any security whatsoever, after the event suddenly closed down early, and allowing people to exit the event in what plaintiff has alleged, was a poorly lit area, actually seems to invite just such a tragedy as actually occurred.

One of the lead cases on heightened forseeability in this jurisdiction is *District of Columbia v. Doe*, 524 A.2d 30 (1987 D.C.) a case in which an unknown intruder gained access to the Plummer Elementary School and abducted and raped Jane, a fourth grade student at the school. The District, relying on *Lacy v. District of Columbia*, 424 A.2d 317 (D.C. 1980), argued that the abduction and rape was unforeseeable as a matter of law because no previous occurrences of this type of criminal act had occurred at the school before. The court held that:

7

> While *Lacy* requires a heightened showing of foreseeability in cases involving intervening criminal conduct, this heightened showing does not require previous occurrences of the particular type of harm, but can be met instead by a combination of factors which give defendants an increased awareness of the danger of a particular criminal act.

Id. at 33. In *Doe*, the combination of factors that the court found established "heightened forseeability" included "crimes against persons in and around the school -- an arson in the school and a robbery on the school's playground; sexual assaults and other violent activity in the surrounding area; and deficient school security -- the open rear gate, broken doors, malfunctioning intercom, and presence of adult males who freely roamed throughout the school." Id. at 34. In the instant case, the same showing can be made by considering, the nature, size and duration of the event, prior assaults in previous years at the event, the obvious drunkenness and assaultiveness of the murderer prior to the fatal stabbing, another assault just moments before committed by the same person on decedent's friends, the prior disturbance inside the event and the failure to post any guards at all in the poorly lit vicinity of the exit at a time when the entire event had suddenly been closed down. Should this combination of factors have led to "an increased awareness" of the danger of this type of incident? Plaintiff submits that indeed it should.

*Potts v. District of Columbia*, 697 A.2d 1249 (1997 D.C. App) is a case which bears some similarities on the facts to the instant case. In that case, two victims were injured by gunshots from an unknown source as they were exiting a boxing event being held at the government-owned convention center. In support of their motions for summary judgment, defendants each furnished affidavits averring that they had not been aware, nor had reason to be aware, of any indication that a criminal act would occur at the boxing event that evening. Furthermore, they contended that plaintiffs had presented no evidence whatsoever to establish the foreseeability of the shooting. In opposition to summary judgment, the sole evidence proffered by appellants to

show the requisite foreseeability was an unsworn statement by their attorney that he expected to call Robert diGrazia at trial. According to that statement, Mr. diGrazia was "expected to testify regarding the foreseeability of the criminal attack on the plaintiffs at the boxing event staged at the Washington Convention Center on October 29, 1991 and the adequacy of security in the light of that foreseeability." His opinions would be "based upon a review of police crime data, statistics regarding unreported crime, community characteristics, image and reputation of the location, environmental design of the building and the activity itself, i.e., boxing, creating opportunity for crime as well as a review of all records, pleadings, deposition transcripts and interviews with plaintiffs." The court held that merely proffering an expert's testimony was insufficient to withstand a motion for summary judgment. However, this case is readily distinguishable from the case at bar. The most obvious distinction is that *Potts* concerns a motion for summary judgment whereas as here, the defendants have moved to dismiss. In *Potts,* all plaintiffs could come up with was a proffer of expert testimony, and this was after they had engaged in pretrial discovery. Not surprisingly, the court found this to be insufficient. In this case, plaintiff has alleged highly specific facts concerning prior assaults at this event and at the same event in prior years, and poor lighting, and alcohol consumption, which should have alerted a reasonable promoter that it needed to supervise a large crowd exiting the event.

*Bailey v. District of Columbia,* 668 A.2d 817 (1995 D.C. App) is also a case which merits brief discussion. Bailey paid an admissions fee to attend a cheerleading competition at Evans Junior High School, where one of her daughters was competing. When the competition ended at about 9:00 p.m., the crowd, estimated at between five and six hundred people, began leaving the school gymnasium through a door to the outside. After Bailey had left the building, but while she was still on school grounds, an altercation broke out among some people in the crowd whom she did not know. Gunfire erupted and Bailey was struck in the leg by a ricocheting bullet. The court upheld the granting of summary judgment to the defendant because plaintiff has not shown there was heightened forseeability of this type of criminal activity at this type of

event. Again, though, the critical distinction is that this concerned a motion for summary judgment, not a motion to dismiss (in fact, it worth noting that defendants failed to cite a single case in which the court actually granted a motion to dismiss in a case of this type). Moreover, plaintiff's allegations are considerably more specific than the evidence submitted by Bailey. In that case, Bailey proffered no evidence of any shooting incidents, assaults, or other gun-related violence at any Department cheerleading competition or any other Department event held at Evans Junior High School. This is in sharp contrast to plaintiff's allegations in this case of prior assaults at the actual event itself and at the same event in previous years.

### IV.  Standards To Be Applied in Considering Defendant's Motion To Dismiss

Dismissal under Rule 12 is proper only if it is apparent "beyond doubt the plaintiffs can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 893 (D.C. 1977). *See also Diamond v. Davis*, 680 A.2d 364, 371 (D.C. 1996) ("Under the Superior Court Civil Rules . . . the plaintiff need only plead facts sufficient to put the defendants on notice of the claims brought against them. A plaintiff need not plead his evidence at all.") (internal citation omitted); *Vincent v. Anderson*, 621 A.2d 367, 372 (D.C. 1993) (issue of "whether or not appellants had available evidence sufficient to prove the allegations in [their] complaint" "really had nothing to do with the legal sufficiency of the complaint").

In, *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 63, the plaintiffs needed to be able to link a firearm used in a particular shooting to a particular manufacturer in order to make their case. In responding to a motion to dismiss the plaintiff elucidated several avenues that may

10

have been open to them in discovery. The court stated that even if all seemed "speculative" to it as a way of arriving at that link, none could be rejected at that stage. *See also: Arnold v. Moore,* 980 F. Supp. 28, 37 (D.D.C. 1997) (dismissal inappropriate even though prisoner-plaintiff had "failed to identify or name the [individual prison-officer] defendants who allegedly assaulted [him]"; "if, after discovery, the plaintiff still has not provided the names of the defendant . . . officers . . ., the Court may make a determination at that time whether . . . judgments should be granted in favor of the defendants"); *and see*, by contrast, *Bly v. Tri-Cont'l Indus., Inc.*, 663 A.2d 1232, 1236 (D.C. 1995) (summary judgment properly granted manufacturers *after discovery* for "lack of evidence as to which of [defendant's] products" caused plaintiffs' injuries). Likewise, in this case, it requires little imagination to appreciate how plaintiff may flesh out his allegations. Information on prior assaults at the same event and on assaults which may have occurred at this event can be investigated and precisely delineated. The extent of alcohol consumption at the event and information on the extent of drunkenness amongst the patrons can also be determined,. as can the precise reasons for the decision to suddenly close down the event. The reasons for the decision to fail to provide any security presence at the exit used by decedent may also be investigated. All of this information will likely be important in determining the questions of whether there was a breach of the standard of care in this case.

### C. Conclusion

For the reasons stated above, defendants' motion to dismiss should be denied.

By: _____
    Geoffrey D. Allen
    DC Bar No. 288142
    1730 Rhode Island Ave, NW
    Suite 206
    Washington, DC 20036
    (202) 778-1167
    Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GURPAL SINGH, as Administrator** : <br> **of decedent RANJIT SINGH** : <br> : <br> **Plaintiffs,** : <br> : <br> v. : <br> : <br> : <br> **SOUTH ASIAN SOCIETY OF THE GEORGE** : <br> **WASHINGTON UNIVERSITY, Et Al.** : <br> : <br> **Defendants.** : | **Civil Action No. 06 0574 RMC** |

**ORDER**

Upon consideration of Defendant's Motion To Dismiss the Complaint and Plaintiff's Opposition thereto, it is hereby,

**ORDERED,** that the motion is **DENIED,**


Dated: _____
 Judge Collyer
 United States District Court

Copies to:

Geoffrey D. Allen, Esq.
1730 Rhode Island Ave, NW
Suite 206
Washington, DC 20036


Karen A. Khan
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036

Case 1:06-cv-00574-RMC    Document 7    Filed 05/01/2006    Page 14 of 14