## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GURPAL SINGH, Administrator of decedent )
RANJIT SINGH,                            )
                                         )
                    Plaintiff,           )   Civil Action No. 06-00574 (RMC)
                                         )
        vs.                              )
                                         )
SOUTH ASIAN SOCIETY OF THE GEORGE        )
WASHINGTON UNIVERSITY, THE GEORGE        )   Next Scheduled Event: None
WASHINGTON UNIVERSITY, FALCON            )
SECURITY CORPORATION, UNITED STATES      )
OF AMERICA, HILL PARTNERS, INC., and     )
SECTEK, INC.,                            )
                                         )
                    Defendants.          )

## DEFENDANTS' OPPOSITION TO THE MOTION OF
## CHIEF CHARLES H. RAMSEY FOR PROTECTIVE ORDER

**COMES NOW**, Defendants, The George Washington University, and the South Asian

Society of the George Washington University (hereinafter "Defendants"), by and through their

undersigned attorneys, and hereby file the instant Opposition to the Motion of Chief Charles H.

Ramsey for Protective Order (Docket No. 30), by stating as follows:

## BACKGROUND

On or about February 23, 2006, the parents of decedent Ranjit Singh, acting as

Administrator Ad Prosequendum for his estate, initiated the instant lawsuit alleging several

counts of negligence and wrongful death against The George Washington University and one of

it's student groups pertaining to the death of their son on March 27, 2005.[1]  On this date, Ranjit

---

[1]    Plaintiffs have since twice amended the complaint to add several additional party
defendants to this lawsuit, including Falcon Security Corporation, Hill Partners, Inc., SecTek,

Singh was killed on the streets of the District of Columbia stemming from a criminal attack by an

unknown assailant who approached him after he left an event known as the "Bhangra Blowout,"

an annual Indian festival held on the grounds of the Old Post Office Pavilion, a property owned

by the federal government.  The event was hosted by The George Washington University and one

of its' student groups– the South Asian Society.[2]

Following an initial Scheduling Conference, discovery in this case commenced on August

2, 2006. (Docket No. 13, Scheduling Order).  Given that the parties have little to no relevant

information of any kind concerning the actual circumstances, facts, witnesses, and individual(s)

responsible for stabbing Mr. Singh on the night in question, the University propounded a

subpoena to the District of Columbia Metropolitan Police Department (hereinafter "MPD") –

which was on-site and investigated this incident– on or about August 10, 2006, seeking "the

entire police file relative to the investigation surrounding the assault and death of Ranjit Singh on

March 27, 2005, including but not limited to all incident reports, police and witness accounts,

findings, conclusions, and all other documents pertaining to this file..." (Ex. 1, Subpoena to MPD

and Affidavit of Service).  The subpoena required the MPD to produce the requested information

---

Inc., and the United States government. (*See* Docket Nos., 14, 27: motions for leave to file First
and Second Amended Complaints, respectively).

    [2]   The basic facts pertaining to this lawsuit are well known to the Court, having
considered an initial motion on the part of the undersigned Defendants to dismiss for failure to
state a claim upon which relief could be granted (Docket No. 3), and having informally conferred
with the parties on two occasions pertaining to discovery disputes.

not later than August 24, 2006. Id.

The subpoena return date came and passed without any action being taken by the MPD or it's agents, and no written objections were ever served as envisioned by Fed.R.Civ.P. 45(c)(2)(B).  In early September of this year, the undersigned counsel for the University was able to locate a member of the MPD's Office of General Counsel concerning the failure of the MPD to in any way respond to the subpoena, and in good faith sought that the MPD produce the requested files without having to ask the Court to intercede.  Despite repeated requests, both the MPD's Office of General Counsel and the Attorney General's Office refused to produce the information, and Chief Ramsey filed the instant Motion for Protective Relief on November 8, 2006, nearly three months after the subpoena was first served. (*See* Docket No. 30, Motion for Protective Order).  The MPD's Motion contains a declaration from a Commander in the department's Superintendent of Detectives Division disclosing that the MPD is in possession of no less than forty six (46) categories of responsive and relevant documents, including but not limited to witness statements, reports of investigation, affidavits, photographs, notes, event chronologies, and related information. Id.   The MPD's sole asserted reason for refusing to turn over these documents is a claimed "law enforcement privilege," which is qualified in nature. (MPD's Mot., p. 2).  It is against this background that Defendants now oppose the MPD's motion for protective relief.

## ARGUMENT

## POINT I

## THE MPD HAS WAIVED ANY ASSERTED PRIVILEGE BY FAILING TO FILE TIMELY OBJECTIONS OR TIMELY MOVING FOR PROTECTIVE RELIEF

A.    Introduction

At the outset, this Court need not even address the many factors and considerations governing the MPD's attempted invocation of the qualified law enforcement privilege in this case in order to deny the pending motion for protective relief. The fact remains that the MPD has waived any such privilege by failing to raise it in a timely manner. The University in this case propounded and served the subpoena at issue to the MPD on or about August 10, 2006. The MPD did not file written objections to the subpoena within the time frames mandated by the Federal Rules, and in fact did not file the instant motion seeking protective relief until November 8, 2006, a delay of nearly *three* full months. Based on the clear and unambiguous provisions in the Federal Rules and the laws of this jurisdiction, the MPD's challenge on the basis of privilege comes far too late.

B.    Requirements of the Federal Rules of Civil Procedure in Preserving a Challenge to a Subpoena on the Basis of Privilege

The necessary starting point with regard to the University's timeliness challenge is the actual text of the Federal Rules of Civil Procedure. More specifically, two provisions contained within Federal Rule of Civil Procedure 45 govern the procedures for timely raising claims of privilege in response to a properly served subpoena. With respect to timing, the Rule provides,

4

in relevant part, that:

> "... a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials..."

Fed.R.Civ.P. 45(c)(2)(B).

Moreover, when the subpoenaed party's objection is based on an asserted privilege – as in this case– the Rules contain additional obligations on the responding party to specifically file objections in a manner which allows the demanding party to evaluate the nature of the privilege. Specifically, the Rule provides in relevant part, that:

> "...When information subject to a subpoena is withheld on a claim that it is privileged... the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."

Fed.R.Civ.P.45(d)(2).

The Court of Appeals for the District of Columbia Circuit addressed these very provisions in Tuite v. Henry, 98 F.3d 1411 (D.C. Cir. 1996). In Tuite, the Court of Appeals considered an appeal brought by several criminal defense attorneys who claimed that the Department of Justice had illegally taped their conversations while they were engaged in defending their clients against criminal racketeering charges. During the course of the civil case, the plaintiff-attorneys issued subpoenas to the Department of Justice pertaining to these activities. The Department of Justice – like the MPD in this case– raised the issue of the law

enforcement privilege in an attempt to avoid complying with the subpoena.  However, unlike the

MPD in this case, the Department of Justice followed the constricts of Rule 45 and filed

objections within fourteen (14) days accompanied by a detailed description of the documents

withheld.[3]  In upholding the District Court on the issue of timing, the Court of Appeals agreed

that the Department of Justice did not waive the privilege and asserted it timely.  Addressing

ambiguities over the timely assertion of a privilege, the Court addressed the twin provisions

contained in Rule 45(c)(2)(B) and Rule 45(d)(2) and concluded that: "In our view, a party

objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2)

state the claim of privilege within fourteen days of service...." Id. at 1416.  This remains the state

of the law in this jurisdiction and is fatal to the MPD's motion, since the MPD never filed written

objections, let alone timely written objections, to the University's subpoena.[4]

For this reason alone, the Court should deny the MPD's motion and compel production of

all requested documents.

---

[3]    Although the Department of Justice timely filed objections on the basis of privilege,
the detailed description of the documents for which privilege was claimed was not initially
submitted, which prompted the timeliness challenge.

[4]    Notably, the MPD cites both Rules 45 and Rule 26(c) as the basis for it's motion.   For
the reasons set forth above, Rule 45 governs this analysis.  However, even if considered under
the constricts of Rule 26(c)(2)– which generally sets forth the standards for protective relief– the
motion remains untimely.  While this Rule 26(c) does not expressly impose a time frame for
moving for protective relief, courts and commentators alike have recognized that such a motion
is only timely or 'seasonable' if made *before* the date for discovery compliance. *See* 6-26
Moore's Federal Practice – Civil §26.102[1]. *See also*, Nestle Foods Corp. v. Aetna Cas. and
Sur. Co., 129 F.R.D. 483 (D.N.J. 1990)(motion for protective relief filed two months after
discovery was due not timely).

## POINT II

## THE MPD HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THAT ALL FORTY-SIX (46) CATEGORIES OF DOCUMENTS ARE SUBJECT TO THE LAW ENFORCEMENT PRIVILEGE

A.     Introduction

As a threshold matter, before even reaching the issue of whether a balancing of the equities support disclosure of the documents in question, the Court must first address whether the MPD has established it's burden of proving that the law enforcement privilege actually applies to the forty-six categories of enumerated documents in question. The University asserts that the MPD has failed to make this requisite showing.

B.     The MPD Bears the Burden of Demonstrating that the Law Enforcement Privilege Applies

It is well established that the proponent of a privilege bears the burden of demonstrating *facts* sufficient to establish the applicability of a privilege. In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006). That a claim of privilege arises in subpoena enforcement proceedings as opposed to civil litigation does not alter this requirement. Id.  For the MPD to satisfy this burden, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1998). In this case, the University has no information at this time to challenge the MPD's assertion that Commander

Michael Anzallo is the head of the division having control over the information sought by

subpoena, or his statement that he personally reviewed the documents in question. (MPD's Mot.,

Ex. B, Decl. M. Anzallo, ¶¶ 3, 5). However, the University maintains that Commander Anzallo's

naked and unsupported assertion that the law enforcement privilege applies to a general list of

forty-six (46) categories of document falls far short of the MPD's burden to explain with detail

and specificity why each category of document is subject to the law enforcement privilege.

      C.     The MPD Has Failed to Carry the Burden of
               Establishing that the Law Enforcement Privilege Applies

In this case, the MPD's entire proffer as to the applicability of the privilege comes in the

form of a five paragraph declaration from Commander Anzallo, who states in the most general of

terms that the forty-six (46) categories of documents constitute the department's "working

homicide file" and are therefore subject to the law enforcement privilege. (MPD's Mot., Ex. B,

Decl. M. Anzallo, ¶ 5). This blanket assertion of privilege, however, is completely insufficient.

The MPD has offered no affidavits or briefings detailing why each category of these documents

are subject to the privilege, whether they are factual in nature or their context, how they might

implicate the privilege, let alone how their disclosure might jeopardize their investigation in this

case – which is the very purpose for this privilege.  The law enforcement investigatory privilege

is "designed to prevent disclosure of information that would be contrary to the public interest in

the effective functioning of law enforcement" and to "preserve the integrity of law enforcement

techniques." Tri-State Hosp. Supply Corp. v. U.S., 2006 U.S. Dist. Lexis 68168 (D.D.C. Sept.

25, 2006)(copy attached as Ex. 2).  Whether a document is factual or evaluative in nature is an

8

important consideration in the applicability of this privilege. Waters v. U.S. Capitol Police Bd., 218 F.R.D. 323 (D.D.C. 2003). The deliberative process privilege does not apply to documents that speak to a particular investigation, but rather a policy that applies to all cases of a particular nature. Id.

Based on the record the MPD has put forth, neither the University nor this Court can adequately assess whether the law enforcement privilege would apply to the enumerated categories of documents, and this alone is fatal to the MPD's motion. The Court of Appeals for the District of Columbia Circuit recently addressed an analogous issue in In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006). In that case, during the course of a civil action alleging that the defendant illegally manipulated the energy market, a subpoena was issued to the Commodity Futures Commission seeking documents with respect to it's investigation and settlement. In examining a challenge on the basis of privilege, the Court of Appeals explained that the burden of demonstrating facts sufficient to establish the privilege's applicability falls to the proponent of the privilege to do so with "appropriate deliberation and precision," and that the basis of the privilege must be "adequately established" through evidence sufficient to establish the privilege with "reasonable certainty." Id. at 750-751. Finding that there were only generalized descriptions of the documents in question devoid of context, the Court of Appeals held that the district court lacked a sufficient factual context to evaluate the privilege, and affirmed the lower court's order compelling production by the Commission. Id. at 754. In so ruling, the Court noted that the requirement of providing a detailed factual background

9

establishing the grounds of privilege prevents courts from having to address difficult questions in

the abstract and further protects the subpoenaing party's right to contest the claims of privilege.

Id. at 751.

      As with this case, the present Motion by the MPD is similarly devoid of a necessary

factual record or examination of the forty-six categories of documents which would allow this

Court or the University to adequately evaluate and contest the law enforcement privilege, let

alone prove that the MPD has established the privilege as to all documents with "reasonable

certainty."  The University submits that it's complaints in this regard are well founded.  Even a

cursory review of the forty-six categories of documents raise repeated questions as to how the

MPD can in good faith even assert an investigatory privilege over numerous documents.  For

example, it is unimaginable how the MPD can claim privilege over categories of documents such

as the "Family Contact Record," "Death Report," General Service Administration Reports,"

"Witness Statements," "Crime Scene Photographs," "Department of Justice Forms," "Diagram

with location information," "D.C. Alcoholic Beverage Regulation Administration Report," and

"documents from the George Washington University," to name just a few. (MPD's Mot., Ex. B,

Decl. M. Anzallo, ¶ 5, Nos. 1, 2, 7, 8, 13, 14, 15, 38, and 43).[5]  It is unimaginable – even without

an explanation or context as to how these documents are somehow privileged – that these

documents somehow fall under the privilege or could jeopardize the MPD's investigation.

_____

      [5]   In pointing these out, the University by no means concedes that the other categories of
documents would be covered by the privilege.  To the contrary, on their face, there is simply not
enough evidence to assess the applicability of the asserted privilege.

For the foregoing reasons, the bare and generalized assertion of privilege which the MPD makes is insufficient as a matter of law to establish its burden that the alleged law enforcement privilege even applies in this case.  The MPD has failed in it's burden of production, and absent a meaningful factual record and analysis on this point, this Court should deny the MPD's motion and compel production of these documents forthwith.

**POINT III**

**A BALANCING OF THE FACTORS GOVERNING THE QUALIFIED<br>LAW ENFORCEMENT PRIVILEGE STRONGLY FAVORS DISCLOSURE**

A.      Absolute vs. Qualified Privilege

In the event the Court determines that the MPD has carried it's burden of proving that the law enforcement privilege covers the enumerated documents outlined in the motion, that does not end the inquiry, since the law enforcement privilege is not absolute.  To the contrary, the law enforcement privilege is "qualified" in nature, meaning that the Court can nevertheless order disclosure based on a weighing of factors even if the asserted privilege applies.  Tri-State Hosp. Supply Corp. v. U.S., 2006 U.S. Dist. Lexis 68168 (D.D.C. Sept. 25, 2006)(Ex. 2).

B.      The Records at Issue

The MPD's motion for protective relief confirms that there are forty-six (46) categories of documents responsive to the subpoena in the possession of the MPD as follows:[6]

---

[6]     While the supporting declaration of Commander Anzallo indicates that he has "no objection to the disclosure of the other documents not specifically set forth in paragraph numbered 5 of this affidavit, such as the PD 251 Event Report," the MPD to date has not disclosed nor produced these "other documents" or the "PD 251 Event Report." (MPD's Mot., Ex. B, Decl. M. Anzallo, ¶ 5).

| | | |
|---|---|---|
| 1.  Family Contact Record | 17.  MPD Photo View Sheet | 33.  MPD Tour of Duty Supervisor's Report |
| 2.  Death Report | 18.  Photos for identification | 34.  MPD Vehicle Inspection and Activity Report |
| 3.  Washington Area Criminal Info. & Intell. System Invest. Reports | 19.  Documents from Choicepoint Searches | 35.  COLUMBO database documents |
| 4. Running Resume Entries | 20.  WALES records | 36.  Affidavits for arrest and search warrants |
| 5.  Report of Investigation Continuation Entries | 21.  Witness lists | 37.  Violent Criminal App. Program Form |
| 6.  PD 252s Supp. Reports | 22.  Notes from Detective Investigating Case | 38.  DMV records pertaining to case |
| 7.  GSA Reports | 23.  MPD Property Release | 39.  Emails pertaining to case |
| 8.  Witness Statements | 24.  Contact Information | 40.  Expedia.com documents |
| 9.  Phone Records and Subscriber Info. | 25.  Notes on telephone msgs. and phone nos. | 41.  Dept. of Defense documents |
| 10.  Affidavits of Super. Ct. re: extradition | 26.  Handwritten notes and business cards | 42.  DVD's in case file |
| 11.  MPD Supp. Evid. Report | 27.  Mapquest documents | 43.  George Washington University documents |
| 12.  MPD Evidence Report | 28.  Event Chronology | 44.  MPD Information Control Sheet |
| 13.  Crime Scene Photos | 29.  Handwritten notes | 45.  Alcoholic Bev. Reg. Admin. Case Report |
| 14.  Diagram with location information | 30.  Documents from the FBI in case file | 46.  Summary Report for Homicide Memorandum |
| 15.  Dept. of Justice Forms | 31.  Documents from other police departments | |
| 16.  Super. Ct. Subpoenas | 32.  MPD e-team database | |

C.    A Balancing of the Ten-Factor Test
      Strongly Favors Disclosure

The assertion of the qualified privilege requires the Court to consider whether the societal

interest in preserving the confidentiality of the records outweighs the litigant's needs for access

to the information. Waters v. U.S. Capitol Police Bd., 218 F.R.D. 323 (D.D.C. 2003); Tuite v.

Henry, 98 F.3d 1411 (D.C. Cir. 1996). The Court of Appeals for the District of Columbia Circuit

requires the Court to balance and evaluate a ten-factor test.[7] In Re Sealed Case, 856 F.2d 286

(D.C. Cir. 1988). While the MPD's motion largely ignores a discussion of the various factors,[8]

the University will attempt to address these factors– as best it can– even though the MPD has

largely failed to provide a detailed explanation of what is contained in most of the enumerated

documents.

**(1)    The extent to which disclosure will thwart governmental processes by
         discouraging citizens from giving the government information;**

This factor does not weigh in favor of enforcing the privilege. The MPD has not argued

that the disclosure of the forty-six categories of documents will somehow impeded future

investigatory efforts by the department or otherwise discourage citizens in the District from

coming forward. This is not a trafficking or drug case where the identity of an informant will be

---

[7]   At least one Court in this jurisdiction has informally referred to this test as the "Tuite
v. Henry Factors." McPeek v. Ashcroft, 202 F.R.D. 332 (D.D.C. 2001).

[8]   The failure of the MPD to even address and brief each of these factors on an
individualized basis is itself grounds upon which the Court can deny the instant motion. *See*
McPeek v. Ashcroft, 202 F.R.D. 332 (D.D.C. 2001)(a litigant's failure to discuss or brief the ten
factors set forth in *Tuite v. Henry* can itself be deemed a waiver of the right to do so).

13

jeopardized, and no "informer privilege" has been asserted by the MPD. <u>United States v. Green</u>, 670 F.2d 1148 (D.C. Cir. 1972).  To the contrary, upon information and belief, the alleged witnesses in this case (to the extent there are any) are a group of Mr. Singh's *friends* who traveled with him from Phillipsburg, New Jersey to attend the event in question.  Furthermore, even if the MPD claimed (it does not) that the act of disclosing information in a civil suit could hamper future law enforcement efforts in other cases, the opposite is more likely true in this case. The killing of Ranjit Singh in March of 2005 received considerable media attention, and even prompted an inquiry by the Congressional Committee on Government Reform. (*See e.g.*, Ex. 3, Ltr. 3/30/05, Chairman – Congressman Tom Davis).  As it now stands – some eighteen months later– Ranjit Singh's killer has still not been arrested and brought to justice in the District.  In the event that this pending civil suit were to receive media attention (which is by no means assured), then it is likely that any citizens with information relevant to the identity and whereabouts of Mr. Signh's killer would actually be encouraged to come forward.  In sum, if this factor applies at all, it weighs in favor of disclosure.

> **(2)    The impact upon persons who have given information of having their identities disclosed;**

This factor does not weigh in favor of confidentiality.  At this time, the Plaintiff has already disclosed in discovery the names of Ranjit Signh's friends who are potentially material witnesses in this case. (Ex. 4, Excerpts from Plaintiff's Amended Answers to Interrogatories).  It is almost a certainty that the University and other defendants in this lawsuit will seek to contact and possibly depose these individuals.  Having the MPD provide documents which may further

14

disclose their identities will not further "impact" these individuals in any way, let alone in a

negative fashion, particularly in light of the importance of their testimony to the proceedings in

this civil case.  Given the relevance of witnesses accounts that are contemporaneous in nature (*ie*,

given to the police in March of 2005), this factor weighs in favor of disclosure.

> **(3)    The degree to which governmental self-evaluation and consequent
> program improvement will be chilled by disclosure;**

The University is not aware that any of the documents at issue contain governmental self-

evaluation, and the MPD has not argued this in it's motion.  This is a non-issue which does not

implicate any interest which favors enforcement of the privilege.

> **(4)    Whether the information sought is factual data or evaluative
> summary;**

Whether a document is factual as opposed to evaluative in nature is an important

consideration in the applicability of this privilege. Waters v. U.S. Capitol Police Bd., 218 F.R.D.

323 (D.D.C. 2003).  In reviewing the forty-six categories of documents at issue, it would appear

that the vast majority are factual in nature.  Witness statements, affidavits, photographs, family

contact information, phone records, diagrams, witness lists, contact information, database

searches, vehicle information, emails, and documents provided from other agencies certainly

appear to be – on their face– factual.  In fact, the only category of documents identified which

arguably may contain evaluative information is the Summary Report for Homicide Memorandum

(No. 46).  However, even this memorandum likely contains detailed factual information.[9]  Given

that the overwhelming information held by the MPD appears to be factual in nature, this factor

strongly favors disclosure.

> **(5)    Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow form the incident in question;**

The party seeking discovery herein is the George Washington University, a private

educational institution located in the District of Columbia.  Neither the University nor any of the

other corporate or governmental defendants are actual or potential defendants in any criminal

proceeding.  As the University is not an actual or potential defendant in a criminal proceeding

relating to the incident in question, this factor weighs in favor of disclosure.

> **(6)    Whether the police investigation has been completed;**

The question of whether the police investigation is complete is the only factor the MPD

has meaningfully addressed and put before this Court.  In it's motion, the MPD repeatedly

attempts to characterize the investigation as "ongoing," and suggests that this – standing alone–

justifies enforcement of the privilege. (Mot., p. 3).  However, while the investigation is not

technically "complete," the MPD's attempts to characterize it as 'ongoing' is somewhat

misleading.  As it now stands, more than eighteen months have passed since Mr. Singh's death

and the police investigation has progressed to point where the only apparent thing to be

---

[9]    Once again, as noted throughout, the MPD has made no proffer as to what these documents actually contain, making the exercise of evaluating the privilege difficult, if not impossible.

accomplished is to extradite the alleged killer, who upon information and belief, is overseas.[10]

While the MPD has not confirmed this assertion, it is a reasonable supposition given that they

have identified "affidavits of the Superior Court regarding extradition" as a category of

documents (No. 10), and the fact that at least one newspaper account produced by the Plaintiff

suggest that the killer may be of Hispanic or Indian ethnicity. (Ex. 5, Newspaper Account).

Further, the MPD's motion voices a concern that third parties may become apprised of the

official inquiry into the matter. (Mot., p. 3). As such, the real concern here seems to be that

disclosure of the information could jeopardize police efforts to extradite the killer. However, all

parties, as well as the MPD, obviously want the killer brought to justice, and it is inconceivable

that any party to this civil suit would do anything to jeopardize police efforts to extradite.[11]  To

this end, the University will even go so far as to stipulate that if the name of alleged killer is

revealed, it will not attempt to contact him in any way until apprehended, and if the University or

it's agents learn of the alleged killer's whereabouts in discovery, it will promptly report this to

the police. For all of these reasons, the MPD's assertion of an ongoing investigation by no

means weighs strongly in support of enforcing the privilege.

---

[10]    The point remains that the police investigation is by no means in the formative
stages, and it is implausible that the fact gathering is truly "ongoing" after eighteen months. *See
e.g.*, Tripp v. Executive Office of President, 104 F.Supp.2d 30 (D.D.C. 2000)(citations
omitted)(expressing skepticism about how an investigation is 'ongoing' after two years in the
context of a law enforcement privilege).

[11]    Moreover, it is highly unlikely that the killer is unaware that the police are
attempting to bring him to justice. He obviously knows what he did, fled the scene on the night
in question, and ostensibly left the country.

**(7)    Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;**

The University is aware of no interdepartmental disciplinary proceedings at issue and the MPD has not identified this as a concern. Moreover, Plaintiffs have not alleged in any pleadings or in discovery that the MPD or it's officers have somehow conducted a deficient investigation. This is a non-issue which does not implicate any interest which favors enforcement of the privilege, and therefore weighs in favor of disclosure.

**(8)    Whether the plaintiff's suit is non-frivolous and brought in good faith;**

By the filing of amended complaints in this Court naming other Defendants, Plaintiffs have certified under Rule 11 that the instant lawsuit is not frivolous, and is brought in good faith and with substantial justification. Fed.R.Civ.P. 11.   This factor therefore weighs in favor of disclosure.

**(9)    Whether the information sought is available through other discovery or from other sources;**

The subpoena which serves as the underlying basis for the motion was largely propounded due to the paucity of information which is available to the parties regarding the facts and occurrences on the evening in question.   In fact, aside from newspaper clippings, an autopsy report, ambulance report, funeral bill, and a report from an economic expert, Plaintiffs in this case have produced virtually no documents of any kind which address the actual context and circumstances pertaining to the stabbing and death of Ranjit Singh and those involved.  While it is certainly possible that the University could obtain limited information from deposing a few of

Mr. Signh's friends when discovery commences, the MPD's records are the only way of

obtaining contemporaneous witness accounts from individuals who gave statements to the police

on the night in question or in the immediate aftermath of the incident.  Moreover, the MPD at

this point is the only entity which apparently knows the identity of the alleged killer whose

actions which Plaintiff asserts was a substantial factor in causing or contributing to Mr. Singh's

death. (Ex. 6, Amended Answer to Interrogatory No. 14).  The University also propounded

subpoenas to the General Services Administration, the Department of Homeland Security,

SecTek, Inc., and Hill Partners, none of which resulted in any meaningful information relative to

these issues.  It is also notable that in responding to interrogatories, Plaintiffs have certified that

their "...counsel has attempted to contact the police officers involved in the investigation of this

case," but that "[t]he officers have not responded to any of counsel's phone calls." (Ex. 6,

Amended Answer to Interrogatory No. 15).  In all, if the information in question is to be

discovered, it will have to have come through the MPD and they clearly have it.  This factor strongly

favors disclosure.

**(10)    The importance of the information sought to the litigant's case.**

The University's need for the information at issue cannot be overstated.  The Plaintiffs in

this case are asserting – in no uncertain terms– that the University is responsible for Ranjit

Singh's death and are seeking in excess of *six million dollars* in damages.[12]  It is crucial that the

---

[12]    This, notwithstanding Gurpal Singh's apparent statement in April of 2005 that he
would not consider taking legal action against the University or others and that his only hope is
that the perpetrators would be quickly brought to justice. (Ex. 7, Newspaper Account 4/4/05).

University obtain the names and any contemporaneous witness statements given to police in this case, as this and the other information identified by the MPD may shed considerable light on exactly what transpired on the night in question and who ultimately should be held to account for Mr. Singh's death.

Since this civil case sounds in negligence, it should not be lost on the Court that Plaintiffs are asserting that the actual killer – for obvious reasons– caused or contributed to the stabbing, making his identity, involvement, and motivations very much at issue.  In terms of a negligence defense, to the extent that any information suggests that Mr. Singh was drinking (he was underage), provoked the attack, or left the Old Post Office Pavilion through an unauthorized exit may give rise to assumption of the risk and other defenses.  Moreover, this Court may recall that the actual location of the stabbing is very much at issue in this case.  While it is undisputed that the stabbing took place on the streets of the District of Columbia, Plaintiffs are asserting that the assault took place approximately ten feet from the steps at the Old Post Office Pavilion, which by itself should be fatal to Plaintiffs claims.  However, to the extent that any of the crime scene photographs, diagrams and other information possessed by the MPD show an even greater distance, the defendants will have an even stronger basis to assert that they owed no non-delegable duty of care to Mr. Singh.   In short, the documents and information identified by the MPD are absolutely critical for the parties in this case and go to the central elements and defenses at issue.  This factor strongly favors disclosure.

D.    <u>Lack of Harm</u>

Most, if not all of the relevant factors weigh strongly in favor of disclosure.  The University's need for the information is great and the MPD has not demonstrated that serious harm could result from the disclosure.  It is axiomatic that a party moving for protective relief under Federal Rule 26(c) must show that a "clearly defined and serious injury will result from the discovery sought," and that "conclusory or speculative" statements about the need for protective relief and harm to be suffered are insufficient. 6-26 Moore's Federal Practice– Civil § 26.102[1].

In this case, the MPD has illustrated no such harm or injury which would result from disclosure.  While the MPD cites <u>In re United Telecommunications, Inc.</u>, 799 F.Supp. 1206 (D.D.C. 1992) for the proposition that harm could result from the department having to divert it's attention "from its investigation to document production in a private civil action," this point is largely moot as the MPD in filing it's motion has already compiled, reviewed and identified the forty-six categories of documents at issue.  This, together with the fact that the University will pay for costs of copying, undercuts any such claim of harm.

## POINT IV

## ALTERNATIVELY, THE COURT CAN CONSIDER
## ANOTHER COURSE OF ACTION TO ADDRESS THE
## CONCERNS RAISED BY THE MPD

Alternatively, even if the Court is ultimately unpersuaded by the various arguments and points set forth in Opposition, the University maintains that there are other options short of granting the MPD's motion that may protect the interests of all parties involved. It has long been recognized that in evaluating a challenge under Rule 26, a court should only grant as narrow a protective order as is necessary under the facts. 6-26 Moore's Federal Practice– Civil § 26.102[1]. Given this, the University is compelled to note that the issuance of a comprehensive protective Order by this Court could address most – if not all– of the MPD's concerns in this case. Such an Order may require disclosure but note that if any of the documents produced are to be filed in a Court pleading, then they must be filed "under seal." Alternatively, if the Court is so inclined – it could also require the MPD to produce the forty-six categories of documents for an *in camera* review to determine which, if any, documents could meaningfully jeopardize the completion of the MPD's investigation in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the University respectfully requests that the Motion of Chief Charles H. Ramsey for Protective Order be **DENIED**.

Respectfully submitted,

**KHAN ROMBERGER PLLC**

/s/

By:_____

    Karen A. Khan
    D.C. Bar No. 455297
    1025 Connecticut Ave., N.W.
    Suite 1000
    Washington, D.C. 20036
    (202) 828-1243
    ATTORNEYS FOR DEFENDANTS
    THE GEORGE WASHINGTON UNIVERSITY
    SOUTH ASIAN SOCIETY

Date:   December 19, 2006

23