LEXSEE 2006 US DIST LEXIS 68168

**TRI-STATE HOSPITAL SUPPLY CORPORATION, Plaintiff, v. UNITED STATES OF AMERICA, Defendant.**

Civil Action No. 00-1463 (HHK/JMF)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2006 U.S. Dist. LEXIS 68168*

**September 25, 2006, Decided**

**PRIOR HISTORY:** *Tri-State Hosp. Supply Corp. v. United States, 2005 U.S. Dist. LEXIS 33157 (D.D.C., Dec. 16, 2005)*

**COUNSEL:** [*1] For TRI-STATE HOSPITAL SUPPLY CORPORATION, Plaintiff: John Maguire Dowd, Joseph P. Esposito, Terence Joseph Lynam, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washington, DC.

For UNITED STATES OF AMERICA, Defendant: Lisa Sheri Goldfluss, UNITED STATES ATTORNEY'S OFFICE, Washington, DC; Michael Joseph Salem, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

**JUDGES:** JOHN M. FACCIOLA, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JOHN M. FACCIOLA

**OPINION:**

### MEMORANDUM OPINION

This case was referred to me by Judge Kennedy for resolution of all non-dispositive motions. Currently pending before me are the following three motions: (1) Plaintiff Tri-State Hospital Supply Corporation's Motion Requesting Magistrate Judge Facciola to Reconsider Portions of the December 16, 2005 Order Regarding Plaintiff's Motion to Compel; (2) Plaintiff Tri-State Hospital Supply Corporation's Motion to Compel a Complete Response to Plaintiff's Third Request for Production of Documents; and (3) Plaintiff's Motion to Compel Discovery Regarding Audits by the Internal Revenue Service. For the reasons stated herein, plaintiff's motion for reconsideration will be denied, its motion to compel a complete response to [*2] its third request for production of documents will be granted in part and denied in part, and its motion to compel discovery relating to Internal Revenue Service ("IRS") audits will be granted in part and denied in part.

### BACKGROUND

Tri-State Hospital Supply Corporation ("Tri-State") is a corporation that sells hospital supplies in the United States. In the past, Tri-State imported surgical equipment from suppliers in Pakistan and received rebates on those purchases. In reporting its receipt of those purchases to the United States Customs Service, now called the United States Customs and Border Protection ("Customs"), Tri-State declared the price reflected on the purchase invoices, not the price it paid after taking into account the rebates.

In the 1990s, Customs investigated Tri-State, both criminally and civilly, for allegedly falsifying forms submitted to Customs. As a result, Customs issued civil penalty notices against Tri-State and referred the matter to the Department of Justice ("DOJ") for collection of those penalties. In 1996, DOJ brought a collection suit against Tri-State in the United States Court of International Trade, alleging fraud, negligence, and gross negligence. [*3] The fraud count was dropped by DOJ during trial; the gross negligence count was dismissed pursuant to Tri-State's motion for judgment as a matter of law; and the ordinary negligence count went to the jury, which returned a verdict in Tri-State's favor. Subsequently, Tri-State filed the present civil action against the government, alleging abuse of process and malicious prosecution.

### DISCUSSION

**A. Motion for Reconsideration of December 16, 2005 Order**

On August 31, 2004, Tri-State filed a Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions seeking, among other things, the production of documents for which the government had asserted the attorney-client, work product, deliberative process, and law enforcement privileges. In relevant part, plaintiff

argued that the attorney-client privilege and the work product doctrine did not apply because the documents were created in furtherance of a crime or fraud. Upon consideration of Tri-State's motion and the related filings, I granted the motion in part and denied the motion in part, ordering [*4] the government to submit the documents it claimed to be privileged for *in camera* review. *Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 133-40 (D.D.C. 2005)*. In response to my order, the government submitted two sets of documents with corresponding privilege logs: twenty-three documents from Customs and 224 documents from DOJ. *Tri-State Hosp. Supply Corp. v. United States, 2005 U.S. Dist. LEXIS 33157, No. 00-1463, 2005 WL 3447890, at *1 (D.D.C. Dec. 16, 2005)*. After reviewing the Customs and DOJ documents *in camera*, I sustained the government's claim of privilege for some of the documents and overruled it for others. Id. With regard to the "crime-fraud" exception to the attorney-client privilege and the work product doctrine, I found that there was nothing in the documents that tended to show that they were made or used in furtherance of a crime or fraud. *Tri-State Hosp. Supply Corp., 2005 U.S. Dist. LEXIS 33157, 2005 WL 3447890, at *5-7*. Tri-State now moves me to reconsider my "crime-fraud" determination.

Although the attorney-client privilege is usually absolute, the privilege cannot be used to shield communications made for the purpose of committing a crime [*5] or fraud. This exception, known as the crime-fraud exception, applies when the following two conditions are satisfied: (1) the client made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act, and (2) the client has carried out the crime or fraud. *In re Sealed Case, 323 U.S. App. D.C. 233, 107 F.3d 46, 49 (D.C. Cir. 1997)* (citations omitted). "To invoke the 'crime-fraud' exception to the privilege . . . more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in the litigation." *Coleman v. Am. Broad. Co., Inc., 106 F.R.D. 201, 207 (D.D.C. 1985)*. "To drive the privilege away, there must be 'something to give colour to the charge;' there must be '*prima facie* evidence that it has some foundation in fact.'" *Id. at 203* (quoting *Clark v. United States, 289 U.S. 1, 15, 53 S. Ct. 465, 77 L. Ed. 993 (1933))*. This burden does not have to be established entirely with independent evidence - the documents themselves are commonly the best evidence available. *United States v. Zolin, 491 U.S. 554, 567, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989)*. [*6]

In limited situations, courts have expanded the crime-fraud exception to include communications made in furtherance of an intentional tort or other misconduct. See, e.g., *In re Sealed Case, 244 U.S. App. D.C. 11, 754 F.2d 395, 399 (D.C. Cir. 1985)* (characterizing the exception as applying to "crime, fraud or other misconduct"); *Diamond v. Stratton, 95 F.R.D. 503, 505 (S.D.N.Y. 1982)* (expanding the crime-fraud exception to communications in furtherance of the intentional infliction of emotional distress). Tri-State does not argue that the government committed a crime or fraud, but rather that the communications were made in furtherance of its abuse of the civil litigation process and malicious prosecution.

With regard to the work product doctrine, work product protection can be overcome by a showing that the client used the attorney to further a crime or fraud. *In re Sealed Case, 323 U.S. App. D.C. 233, 107 F.3d 46, 51 (D.C. Cir. 1997)* (citing *In re Sealed Case, 219 U.S. App. D.C. 195, 676 F.2d 793, 811-12 (D.C. Cir. 1982))*. Unlike the attorney-client privilege, the focus of the work produce doctrine is on the [*7] client's general intent in consulting with the lawyer or in using the materials the lawyer prepared, not on the client's intent with regard to an individual communication. *In re Sealed Case, 107 F.3d at 51*. In determining whether the exception applies, courts make a two-step inquiry: "First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product [at issue] and the prima facie violation." *In re Sealed Case, 676 F.2d at 814-15*. The relevant question is: "Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?" *In re Sealed Case, 107 F.3d at 51*. The crime-fraud exception to the work product privilege is not limited to criminal or fraudulent conduct, but may also encompass other "misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re Sealed Case, 676 F.2d at 812*.

Tri-State's argument in moving me to reconsider my crime-fraud determination can be summed up in the following passage from its reply brief: [*8]

> [A]lthough the documents at issue may not explicitly show wrongdoing by the government on their face, the omission of critical facts in those documents demonstrates the government's misconduct. Internal government documents that ostensibly provide a candid evaluation of Tri-State's liability but omit exculpatory facts known to Customs are compelling evidence of government misconduct. Such documents show that the government was maliciously prosecuting Tri-State without regard for the facts.

Plaintiff Tri-State Hospital Supply Corporation's Reply in Support of its Motion Requesting Magistrate Judge Facciola to Reconsider Portions of the December 16,

2005 Order Regarding Plaintiff's Motion to Compel at 1-2. In its motion to compel, Tri-State discussed several examples of facts that the omission of which would suggest a fraudulent intent on the part of the government. With these examples in mind, Tri-State asked that I re-review the documents for which I sustained the government's assertion of attorney-client privilege and work product protection.

In response to Tri-State's request, I have re-reviewed the documents, this time in light of Tri-State's argument that the [*9] omission of certain information would evidence misconduct warranting the application of the crime-fraud exception. Again, I find nothing in the documents to support the application of the crime-fraud exception. Tri-State's assumption that the documents for which I sustained attorney-client privilege and work product protection provide such thorough descriptions of the basis for Customs' and the Department of Justice's initiation of proceedings against Tri-State that the omission of certain information would evidence a fraudulent intent is wrong. Rather, most of the documents at issue simply constitute discrete communications between the attorney and client regarding issues such as how to respond to discovery requests and the exchanging of draft briefs. These are hardly documents that would be expected to contain the allegedly exculpatory evidence that Tri-State relies on in moving me to reconsider my prior order. Moreover, my review of the documents revealed exactly the opposite of what Tri-State contends. Specifically, I did not find any indication on this record that any such exculpatory evidence exists. Even assuming the existence of this evidence, nothing in my review indicates [*10] the government's awareness of it or, moreover, a deliberate omission of such evidence in the government's consideration of Tri-State.

### B. Motion to Compel Complete Response to Third Request for Production of Documents

In October 2005, Tri-State served on the government its Third Request for Production of Documents in which Tri-State requested personnel documents relating to Customs Special Agent Jennifer Gibbs. Plaintiff Tri-State Hospital Supply Corporation's Memorandum in Support of its Motion to Compel a Complete Response to Plaintiff's Third Request for Production of Documents ("Pls. Mem.") at 3. Specifically, Tri-State requested the following:

> All documents relating to the employment of Jennifer Gibbs-Crandall by any agency of the United States, including but not limited to any documents relating to personnel or human resources files, disciplinary actions, rewards, bonuses, evaluations, suspensions, and criminal or civil complaints involving her.

Id.

Despite this broad request, the present dispute involves a single document - a "Report of Investigation" relating to the "alleged misconduct by Jennifer Gibbs-Crandall during off-duty hours." Id [*11] . The government withheld the production of this report under a claim of the law enforcement investigatory privilege. Id.

Plaintiff charges that in her deposition in the Court of International Trade case, Gibbs testified that the government was aware of Tri-State's alleged misconduct by 1991, meaning, according to Tri-State, that most of the government's claims would have been barred by the statute of limitations. Pls. Mem. at 2. After Tri-State moved for summary judgment, Gibbs recanted that portion of her testimony. This occurred, according to Tri-State, only because a Customs attorney told her that her earlier testimony jeopardized some of the government's claims against Tri-State. Id.

On April 25, 2005, Gibbs pleaded guilty to obtaining money under false pretenses in General District Court, Fairfax County. Id. Notably, she entered an "Alford" plea; she wrote the word "Alford" in the caption of the document she signed. Pls. Mem., Exhibit 1. In the paragraph of the form used by that court to take the defendant's plea, in which she was to admit that she committed the offense charged, she crossed out the words that would have constituted her admission of guilty and wrote [*12] instead: "I understand that by pleading guilty I am acknowledging that were the matter to to go to trial the Commonwealth would prove its case against me beyond a reasonable doubt." Pls. Mem., Exhibit 1, P 6.

In responding to Tri-State's third request for production of documents, the government learned that the Immigration and Customs Enforcement Office of Professional Responsibility was in the process of conducting an investigation for the purpose of determining what action, if any, the agency should take in response to Gibbs' conviction. Defendant United States' Opposition to Plaintiff's Motion to Compel Draft Report of Investigation ("Defs. Opp'n") at 2.

John Clark is the Acting Assistant Secretary of the U.S. Immigration and Customs Enforcement ("ICE") and is the highest ranking officer within ICE. He oversees all of ICE's operations, including investigations by its Office of Professional Responsibility ("OPR") into misconduct by ICE employees. Defs. Opp'n, Exhibit B, P 1. Clark indicates that the purpose of the investigation is to assist the agency in determining what administrative action to

take against Gibbs because of her plea of guilty. *Id. at P 3.* He cautions, [*13] however, that "there is the potential that during the course of this investigation, OPR will uncover "additional evidence that Special Agent Crandall engaged in other acts of criminal misconduct" that would be referred to the United States Attorney's Office. n1 Id.

> n1 Gibbs' full name is Jennifer Gibbs-Crandall; Clark calls her Crandall, while the parties in this case call her Gibbs.

The law enforcement investigatory privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement" and to "preserve the integrity of law enforcement techniques." *Tuite v. Henry, 181 F.R.D. 175, 176 (D.D.C. 1998).* The law enforcement privilege, however, is qualified. *In re Sealed Case, 272 U.S. App. D.C. 314, 856 F.2d 268, 272 (D.C. Cir. 1988).* In determining whether the privilege will shield a document from discovery, "[t]he public interest in nondisclosure must be balanced against the need of a particular [*14] litigant for access to the privileged information." Id. The importance of the information sought to plaintiff's case is a crucial and important factor. *Tuite, 181 F.R.D. at 183.*

Tri-State argues that "[d]ocuments evidencing [Gibbs'] dishonesty, such as the Report of Investigation that is being withheld, would further support Tri-State's claim that her recantation of her prior deposition testimony was disingenuous and would allow a more thorough evaluation of her credibility." Pls. Mem. at 7. In asserting that the Report of Investigation would have unique value, Tri-State argues that the report "may discuss Gibbs's misconduct as it impacts her continued retention as a federal law enforcement officer; may reflect on her performance of her official duties; and may disclose other examples of misconduct." Id.

Whether information sought in discovery is relevant to a claim or defense under *Rule 26(b)(1) of the Federal Rules of Civil Procedure* is a function of its admissibility. The information must itself be relevant to the claim or defense or, upon a showing of good cause, to the subject matter of the action. *Fed. R. Civ. Proc. 26(b)(1)* [*15] . If the information is itself not admissible, it must be reasonably calculated to lead to admissible evidence. Id.

Contrary to Tri-State's broad claims, n2 trials are not permitted to degenerate into broad explorations of a witness's character. The Federal Rules of Evidence limit the circumstances under which the cross-examiner can impeach the credibility of a witness with a prior bad act. First, the cross-examiner may inquire whether the witness has been convicted of a crime "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." *Fed. R. Evid. 609(a)(2).* n3 Second, the cross-examiner may inquire into specific instances of the witness's misconduct, if probative of the witness's character for untruthfulness, but inquiry is limited to the witness's answer; the cross-examiner cannot attempt to prove the specific instance of misconduct with extrinsic evidence. *Fed. R. Evid. 608(b).*

> n2 Tri-State claims, for example, that it should be permitted to explore whether Gibbs engaged in other misconduct to permit the inference that she is the kind of person who would lie to gain a cash award. Pls. Mem. at 6-7. That is the precise inference that a finder of fact can *never* draw. *Fed. R. Evid. 404(a) & (b).*

[*16]

> n3 Of course, the witness can be impeached with any felony (*Fed. R. Evid. 609(a)*), but Gibbs' Fairfax conviction was a misdemeanor.

It could first be argued that, since Tri-State knows the crime to which Gibbs pleaded guilty and that the crime involved a false statement, it has all it needs to impeach her with the conviction. But, there is at least dictum in a decision in this Circuit that, while cross-examination is usually limited to the essential facts rather than the surrounding details of the convictions, "[c]ourts have recognized, however, that under certain circumstances details concerning a conviction may be elicited, and the district court's determination as to the nature and extent of the inquiry is reviewed for abuse of discretion." *United States v. Baylor, 321 U.S. App. D.C. 85, 97 F.3d 542, 544-45 (D.C. Cir. 1997).* Thus, it would appear that Judge Kennedy, when he tries this case, will have discretion to permit a greater inquiry than the fact of conviction and therefore Tri-State has made a case for more information about the [*17] conviction that may be contained in the Report of Investigation ("ROI"). Additionally, entry of an Alford plea by a law enforcement officer is quite unusual and may warrant knowing more about the conviction. All of this is certainly enough for me to take the first step and to require the government to file the ROI report at issue and all subsequent versions of it *in camera* so that I can review it and make the necessary determinations after I see the actual document.

### C. Motion to Compel Discovery Regarding IRS Audits

Tri-State has also moved the Court to compel the government to provide discovery relating to various

Case 1:06-cv-00574-RMC   Document 39-3   Filed 12/19/2006   Page 5 of 7

Page 5
2006 U.S. Dist. LEXIS 68168, *

audits that the IRS conducted of Tri-State. Tri-State has explained that it is not seeking damages resulting from these audits but asserting that these audits were conducted at the prompting of Customs and constitute evidence of Customs' allegedly malicious conduct. n4 Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Compel Discovery Regarding Audits by the Internal Revenue Service ("Pls. Reply") at 2-3. In discovery, Tri-State requested the production of the following documents relating to the audits: (1) documents relating to any practice [*18] or policy of Customs to refer companies to the IRS for audit; (2) documents evidencing any communications between Customs and the Department of Justice relating to an audit of Tri-State; (3) documents relating to IRS's decision to audit Tri-State; and (4) documents relating to the actual audits of Tri-State. Plaintiff's Memorandum of Points and Authorities in Support of its Motion to Compel Discovery Regarding Audits by the Internal Revenue Service ("Pls. Mem.") at 1. By Interrogatory No. 14, Tri-State also sought "a description of all communications between Customs and the IRS regarding Tri-State, including particularly the audits of Tri-State." Id. at 2.

n4 Tri-State's claims are not directed at the IRS, but rather at Customs and the Department of Justice for malicious prosecution and abuse of process. Tri-State relies on the IRS audits only to the extent that they evidence Customs' and the Department of Justice's motion in taking and seeking civil and criminal action against Tri-State. Therefore, I find that it is unnecessary to address the government's argument that the Court lacks subject-matter jurisdiction over any claim arising in respect to the assessment or collection of a tax.

[*19]

In response to these discovery requests, the government explained that Tri-State would need to obtain the sought-after information from the IRS and advised Tri-State to submit an IRS Form 8821, known as a Tax Information Authorization form. Id. Accordingly, Tri-State submitted a Tax Information Authorization form requesting the sought-after information directly from the IRS. Id. Tri-State subsequently resubmitted the form with an accompanying letter indicating that it was making its request under the Freedom of Information Act ("FOIA"). Id. at 3. Tri-State later submitted an amended version of the form authorizing the IRS to disclose the requested information to designated attorneys at the United States Attorney's Office and the Tax Division of the Department of Justice. Id. at 4. Pursuant to these requests, Tri-State received the IRS's audit files for the 1994, 1996, 1998, and 1999 audits, as well as some documents from the 1988 to 1990 audits. Id. at 3.

In moving to compel, Tri-State argues that the information it was provided from the IRS is incomplete and requests that the Court compel the government to provide the following: (1) all documents that the IRS [*20] withheld under FOIA exemptions; (2) all documents relating to the 1988, 1989, and 1990 audits of Tri-State that the IRS stated it could not locate; (3) a complete response to Interrogatory No. 14, which sought a description of all communications between Customs and the IRS about Tri-State; and (4) a complete response to Document Request No. 55, which sought production of documents relating to communications between Customs and the Department of Justice about the audits. Id. at 4-5.

### 1. Documents withheld under FOIA exemptions

Tri-State argues that the Federal Rules of Civil Procedure, not FOIA, govern its requests for production of documents and, therefore, the IRS inappropriately withheld certain documents under the exemptions to FOIA. Id. at 5. Specifically, Tri-State argues that discovery in a Federal Tort Claim Act case, such as this one, is governed by the Federal Rules of Civil Procedure and that, although it completed the Tax Information Authorization form and cited FOIA in an accompanying letter to the IRS, it was totally unnecessary for it to do so. Id. Despite the fact that, at the prompting of the government's counsel and the IRS, Tri-State pursued [*21] this alternative means of obtaining the audit information, it never withdrew its discovery requests and argues that it is still entitled to a complete response to those requests. Pls. Reply at 3. Tri-State further explains that its suit is against the United States, not just Customs and the Department of Justice, and that the IRS is a part of the United States and, therefore, a party to this litigation. Pls. Mem. at 5.

In opposition, the government asserts that Tri-State has already received "nearly all" of the information that it now seeks. Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Discovery Regarding Audits by the Internal Revenue Service ("Defs. Opp'n") at 17. Specifically, the IRS has provided Tri-State with over 800 pages of responsive documents. Id. at 18. However, in responding to Tri-State's FOIA request, the IRS withheld approximately seventy pages from the administrative files on the ground that they revealed third-party tax return information and, therefore, 26 U.S.C. § 6103(a) prohibited their disclosure. Id. The IRS also withheld one document under 31 U.S.C. § 5319. Id.

In reply, [*22] Tri-State again argues that the Federal Rules of Civil Procedure govern its entitlement to these documents, not FOIA. Pls. Reply at 5. However, Tri-State offers the following compromise:

Case 1:06-cv-00574-RMC    Document 39-3    Filed 12/19/2006    Page 6 of 7

Page 6
2006 U.S. Dist. LEXIS 68168, *

> The government should be ordered to disclose the name of the other taxpayer whose tax return information was included in Tri-State's files. In that way, Tri-State can determine whether to obtain disclosure authorization from that person. The government should also be ordered to disclose the general subject matter of the withheld documents, similar to a privilege log asserting a privilege claim, so that Tri-State may assess whether the withheld information is pertinent to this case.

*Id.* at 5-6.

Unfortunately, that suggested resolution will not work. First, its premise, that the Federal Rules of Civil Procedure rather than the Freedom of Information applies, is incorrect. While the IRS may have insisted upon a FOIA request, its withholding of the seventy pages was premised on the explicit statutory command of another statute, *26 U.S.C. § 6103*, n5 not FOIA. That statute prohibits the disclosure of the return information Tri-State sought and it is established [*23] beyond question that "if there is a valid statutory privilege, then 'information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim.'" *In re England, 363 U.S. App. D.C. 29, 375 F.3d 1169, 1177 (D.C. Cir. 2004)* (quoting *Baldrige v. Shapiro, 455 U.S. 345, 360, 102 S. Ct. 1103, 71 L. Ed. 2d 199 (1982))*. Since the statute prohibits the disclosure it therefore trumps the discovery provisions of the Federal Rules of Civil Procedure. See id.

n5 All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

Tri-State's suggestion that the IRS disclose the names of the taxpayers in the withheld documents is no help; disclosure of a taxpayer's identity is prohibited by the same statute. *26 U.S.C. § 6103(b)(2)(A)*. Finally, a privilege log is submitted in order for a court to ascertain the application of a privilege to a particular document; if the privilege is overcome, the document [*24] has to be produced. Here, disclosure of the documents is absolutely prohibited and filing a privilege log is a waste of time.

### 2. Documents relating to the 1988, 1989, and 1990 audits

In response to Tri-State's requests to the IRS for copies of the audit files, the IRS provided only a spattering of documents relating to the 1998 through 1990 audits. See Pls. Mem. at 3. Supported by an affidavit attached to its opposition, the government explained that the IRS was unable to locate the audit files for those years, despite a diligent search. Defs. Opp'n at 18. The declaration of IRS Senior Disclosure Specialist Mark Huneke explained that the administrative files for the 1988 through 1990 tax years had been removed from storage by an employee in the Detroit Disclosure Office in 1999. Defs. Opp'n, Huneke Declaration at P 9. Huneke contacted the employee who had removed the files, who then searched the Detroit Disclosure Office for the files but could not locate them. Id. In a further effort to locate the missing files, Huneke submitted another request for the files, this time using different identifying information. Id. In response to this request, Huneke received [*25] the five pages that have been produced to Tri-State. Id. Huneke stated that he knows of no other offices to search nor of any other search methods to locate these files. *Id. at P 10*. Based on this information, I find that there is nothing more that I can order the IRS to do to try to locate these documents and there is nothing more that Tri-State can expect from the IRS.

Plaintiff argues, however, that the missing files are in the possession of Customs or the Department of Justice. Pls. Reply at 5. I have serious doubts that, if those documents were in either Customs' or the Department of Justice's possession, they would not have discovered them in the process of preparing this case or in responding to Tri-State's discovery requests. The most I can do is instruct Customs and the Department of Justice to revisit the documents that they have regarding Tri-State and, if they find the files for the 1988 through 1990 tax audits, they must supplement their response to Tri-State's discovery requests.

### 3. Interrogatory No. 14

Accordingly, to Tri-State, as of the date it filed the present motion to compel IRS audit discovery, the government had not yet provided an answer [*26] to Interrogatory No. 14, which asked for a description of communications between Customs and the IRS relating to Tri-State. Pls. Mem. at 7. In opposing Tri-State's motion, the government indicated that a supplemental response to Interrogatory No. 14 was forthcoming within fourteen days. Defs. Opp'n at 8 n.5. If the government has in fact provided a supplemental response, this aspect of Tri-State's motion is now moot.

If, however, the government has not responded, then I find that the government defendants must do so within ten business days of the entry of this memorandum opinion. In concluding that Tri-State is entitled to a complete response, I do not need to decide whether Tri-State is entitled to information from the IRS because Customs should have in its possession the information

Case 1:06-cv-00574-RMC   Document 39-3   Filed 12/19/2006   Page 7 of 7

Page 7
2006 U.S. Dist. LEXIS 68168, *

required to answer Interrogatory No. 14. To explain, Tri-State asks for a description of all communications between Customs and the IRS relating to Tri-State and, because Customs would have necessarily been a participant in any such communications, they should be able to provide a complete answer. Moreover, according to the IRS, any written communications between the IRS and either Customs or the Department [*27] of Justice, to the extent such communications existed, would have been included in the administrative files that the IRS produced. See Defs. Opp'n at 7. These documents have also been provided to the United States Attorney's Office and, therefore, would be available to the government in answering Interrogatory No. 14. See *id.* at 8 n.5.

### 4. Document Request No. 55

In Document Request No. 55, Tri-State sought the production of all documents relating to communications between Customs and the Department of Justice regarding the IRS audits of Tri-State. This request does not seek any IRS documents. Rather, it seeks documents that would have been created by either Customs or the Department of Justice. Moreover, in opposing Tri-State's motion to compel, the government does appear to have addressed this request. Accordingly, I see no reason why Customs and the Department of Justice should not be required to produce any such documents that are in its possession and, therefore, the government shall be ordered to do so within ten business days of this memorandum opinion.

### CONCLUSION

For the forgoing reasons, I deny plaintiff's motion for reconsideration, and I grant [*28] in part and deny in part plaintiff's motions to compel a complete response to its third request for production of documents and to compel discovery relating to IRS audits.

JOHN M. FACCIOLA

UNITED STATES MAGISTRATE JUDGE

### ORDER

In accordance with the accompanying memorandum opinion, it is, hereby, **ORDERED** that Plaintiff Tri-State Hospital Supply Corporation's Motion Requesting Magistrate Judge Facciola to Reconsider Portions of the December 16, 2005 Order Regarding Plaintiff's Motion to Compel [# 155] is **DENIED**; Plaintiff Tri-State Hospital Supply Corporation's Motion to Compel a Complete Response to Plaintiff's Third Request for Production of Documents [# 143] is **GRANTED in part** and **DENIED in part**; and Plaintiff's Motion to Compel Discovery Regarding Audits by the Internal Revenue Service [# 165] is **GRANTED in part** and **DENIED in part**.

**SO ORDERED.**

JOHN M. FACCIOLA

UNITED STATES MAGISTRATE JUDGE