# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH, | ) ) ) |
| Plaintiff, | ) Civil Action No. 06-00574 (RMC) ) |
| vs. | ) ) |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, THE GEORGE WASHINGTON UNIVERSITY, FALCON SECURITY CORPORATION, UNITED STATES OF AMERICA, HILL PARTNERS, INC., and SECTEK, INC., | ) ) Next Scheduled Event: None ) ) ) ) ) |
| Defendants. | ) |

## MOTION TO COMPEL ENFORCEMENT OF A SUBPOENA DUCES TECUM SERVED ON U.S. DEPARTMENT OF HOMELAND SECURITY

COMES NOW, Defendant, The George Washington University (the "University"), and hereby moves to enforce a subpoena served upon the U.S. Department of Homeland Security which was issued under the authority of this Court.

Respectfully submitted,

**KHAN ROMBERGER PLLC**

By: /s/ _____
Karen A. Khan
D.C. Bar No. 455297
1025 Connecticut Ave., N.W.
Suite 1000
Washington, D.C. 20036
(202) 828-1243
ATTORNEYS FOR DEFENDANT
GEORGE WASHINGTON UNIVERSITY

Date: December 19, 2006

## CERTIFICATE REGARDING CONSULTATION

  I certify that attempts were made to the DHS to inform them of the anticipated filing of this motion.  No response has been made to date and the motion is presumed to be opposed, particularly since the decision of the DHS is final agency action.

/s/

_____
Karen A. Khan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 06-00574 (RMC) |
| vs. ) ) | |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, THE GEORGE WASHINGTON UNIVERSITY, FALCON SECURITY CORPORATION, UNITED STATES OF AMERICA, HILL PARTNERS, INC., and SECTEK, INC., ) ) ) ) ) ) ) ) | Next Scheduled Event: None |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO ENFORCE SUBPOENA**

**BACKGROUND**

On or about February 23, 2006, the parents of decedent Ranjit Singh, acting as Administrator Ad Prosequendum for his estate, initiated the instant lawsuit alleging several counts of negligence and wrongful death against The George Washington University and one of it's student groups pertaining to the death of their son on March 27, 2005.[1] On this date, Ranjit Singh was killed on the streets of the District of Columbia stemming from a criminal attack by an unknown assailant who approached him after he left an event known as the "Bhangra Blowout," an annual Indian festival held hosted by the University on the grounds of the Old Post Office

---

[1] Plaintiffs have since twice amended the complaint to add several additional party defendants to this lawsuit, including Falcon Security Corporation, Hill Partners, Inc., SecTek, Inc., and the United States government. (*See* Docket Nos., 14, 27: motions for leave to file First and Second Amended Complaints, respectively).

3

Pavilion, a property owned by the federal government. Upon information and belief, the Old Post Office Pavilion is policed by agents of the U.S. Department of Homeland Security. (hereinafter "DHS").

Discovery in this case commenced on August 2, 2006. (Docket No. 13, Scheduling Order). Given that the parties have little to no relevant information of any kind concerning the Old Post Office Pavilion's security measures and personnel on the night in question, the University propounded a subpoena to DHS on or about September 21, 2006, requesting ten (10) separate categories of documents seeking various information, such as the identify of federal security guards at the function, security measures, incident reports and investigatory files, duties and responsibilities of the security guards, and site and premises plans. (Ex. 1, Subpoena to DHS and Ex. A to the Subpoena). In accordance with DHS regulations set forth at 6 C.F.R. §§ 5.41 and 5.42 (a/k/a the *Touhy* regulations), the University also submitted a comprehensive declaration together with exhibits supporting the subpoena and setting forth the need for the documents sought. (Ex. 2, Declaration to DHS).

The subpoena required the DHS to produce the requested information not later than October 21, 2006. Id. On or about October 20, 2006, the DHS – through its Immigration and Customs Enforcement ("ICE") division– forwarded a letter indicating that it would not produce documents responsive to enumerated categories 1-7 of the subpoena on the basis of the law

enforcement privilege. (Ex. 3, Ltr. 10/20/06).[2]  The October 20, 2006, letter constitutes final agency action and thus confers jurisdiction on this Court to consider the instant motion to compel.  Yousuf v. Mohamed Ali Samantar, 451 F.3d 248 (D.C. Cir. 2006)(an agency's denial of a request for documents by subpoena is 'final agency action' under the Administrative Procedure Act) .

## DOCUMENTS SOUGHT BY SUBPOENA

The University's subpoena sought the following documents which the agency has objected to on the basis of the law enforcement privilege:

1. A list of all federal security guards and agents who engaged in any type of security function at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

2. All documents showing, depicting, listing, or explaining all security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, including but not limited to any written security plan or assessment which may have been in place;

3. All DHS and Federal Protective Services incident reports and investigatory files relative to the events at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

4. The personnel files for all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

5. All documents showing the training, background, and/or experience of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

---

[2]  While the letter indicates that DHS would attempt to locate documents responsive to categories 8-10 of the subpoena, none have been produced to date. (See Ex. 3, p. 2).

6. All documents showing the duties and responsibilities of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005, including documents showing where these individuals were deployed on these dates.

7. All site plans, premises plans, and drawings depicting the exact area at the Old Post Office Pavilion (including entrances and exits, if any) that DHS security guards (or agents thereof) were responsible for at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

In addition, the University's subpoena sought the following additional documents which the agency has not yet produced:[3]

8. Any agreements, authorizations, and other documents authorizing SecTek, Inc., or any other entity to provide security at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

9. Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding the events of March 26, 2005 and March 27, 2005;

10. Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding any violence or crime at the Old Post Office Pavilion or within two blocks of the Old Post Office Pavilion in the last five years.

(Source: Exhibit 1, Subpoena and Exhibit A to DHS).

---

[3] The Agency's letter only indicates that it "will attempt to locate responsive documents in order to determine if they should be made available." (*See* Ex. 3, p. 2). However, nearly three months have now passed since service of the subpoena, and the Agency has made no further attempt to identify or produce these documents.

# ARGUMENT

## POINT I

### THE DHS HAS WAIVED THE "LAW ENFORCEMENT PRIVILEGE" BY FAILING TO FILE TIMELY OBJECTIONS TO THE SUBPOENA

A.  Introduction

This Court need not even address the many factors and considerations governing the Agency's attempted invocation of the qualified law enforcement privilege in this case in order to grant the motion to compel. The fact remains that DHS has waived any such privilege by failing to raise it in a timely manner. The University in this case propounded and served the subpoena at issue to the MPD on or about September 21, 2006. The DHS did not file written objections to the subpoena or assert privilege within the time frames mandated by the Federal Rules, and this is fatal to the Agency's position. Based on the clear and unambiguous provisions in the Federal Rules and the laws of this jurisdiction, the Agency's assertion of privilege has not been preserved.

B.  Requirements of the Federal Rules of Civil Procedure
    in Preserving a Challenge to a Subpoena on the Basis of Privilege

In June of this year, the Court of Appeals for the District of Columbia Circuit unequivocally held – in the context of subpoena enforcement proceedings – that the federal government (and agencies thereof) is a "person" which is subject to the provisions and obligations of Federal Rule of Civil Procedure 45 in responding to subpoenas. Yousuf v. Mohamed Ali Samantar, 451 F.3d 248 (D.C. Cir. 2006)(rejecting State Department's assertion

that Rule 45 does not apply to the federal government as 'illogical and anachronistic.'").

With that in mind, the proper starting point with regard to the issue of timing is the actual text of the Federal Rules of Civil Procedure. More specifically, two provisions contained within Federal Rule of Civil Procedure 45 govern the procedures for timely raising claims of privilege in response to a properly served subpoena. With respect to timing, the Rule provides, in relevant part, that:

> "... a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials..."

Fed.R.Civ.P. 45(c)(2)(B).

Moreover, when the subpoenaed party's objection is based on an asserted privilege – as in this case– the Rules contain additional obligations on the responding party to specifically file objections in a manner which allows the demanding party to evaluate the nature of the privilege. Specifically, the Rule provides in relevant part, that:

> "...When information subject to a subpoena is withheld on a claim that it is privileged... the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."

Fed.R.Civ.P.45(d)(2).

The Court of Appeals for the District of Columbia Circuit addressed these very provisions in <u>Tuite v. Henry</u>, 98 F.3d 1411 (D.C. Cir. 1996). In <u>Tuite</u>, the Court of Appeals

considered an appeal brought by several criminal defense attorneys who claimed that the Department of Justice had illegally taped their conversations while they were engaged in defending their clients against criminal rackeeting charges. During the course of the civil case, the plaintiff-attorneys issued subpoenas to the Department of Justice pertaining to these activities. The Department of Justice – like the DHS in this case– raised the issue of the law enforcement privilege in an attempt to avoid complying with the subpoena. However, unlike the DHS in this case, the Department of Justice followed the constricts of Rule 45 and filed objections within fourteen (14) days accompanied by a detailed description of the documents withheld.[4] In upholding the District Court on the issue of timing, the Court of Appeals agreed that the Department of Justice did not waive the privilege and asserted it timely. Addressing ambiguities over the timely assertion of a privilege, the Court addressed the twin provisions contained in Rule 45(c)(2)(B) and Rule 45(d)(2) and concluded that: "In our view, a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege within fourteen days of service...." Id. at 1416. This remains the state of the law in this jurisdiction and is fatal to the Agency's position, since the DHS never filed timely written objections to the University's subpoena.

For this reason alone, the Court should grant the University's Motion to Enforce and compel production of all requested documents.

---

[4] Although the Department of Justice timely filed objections on the basis of privilege, the detailed description of the documents for which privilege was claimed was not initially submitted, which prompted the timeliness challenge.

# POINT II

## THE DHS CANNOT ESTABLISH ITS BURDEN THAT THE DOCUMENTS SOUGHT BY THE UNIVERSITY ARE SUBJECT TO THE LAW ENFORCEMENT PRIVILEGE

A. The DHS Failed to Demonstrate
that the Law Enforcement Privilege Applies

It is well established that the proponent of a privilege bears the burden of demonstrating *facts* sufficient to establish the applicability of a privilege. In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006). That a claim of privilege arises in subpoena enforcement proceedings as opposed to civil litigation does not alter this requirement. Id.  For the DHS to satisfy this burden, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1998).

At this time, there is no evidence of any kind upon which the Court can find that the DHS has discharged it's burden of proof with respect to the privilege on any of these elements. Nothing in the Agency's letter of October 20, 2006 even explains which documents do or do not exist, let alone how the documents may be subject to the law enforcement privilege. (*See* Ex. 3, Letter 10/20/06).   While the Agency's letter states in the most conculsory of fashion that "[r]evealing such information would have a detrimental effect on agency operations and investigations," this unsupported statement in and of itself is wholly insufficient to establish that

the law enforcement privilege even applies in this case. In all, the DHS final agency action is completely devoid of any documents, facts, or detailed explanation which would establish that the law enforcement privilege applies with "reasonable certainty," or that would allow the University to evaluate the claimed privilege. In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006). Without limitation, the Agency has failed to set forth such information in it's decision, and the University's motion should be granted on this basis alone.

## POINT III

### A BALANCING OF THE FACTORS GOVERNING THE QUALIFIED LAW ENFORCEMENT PRIVILEGE STRONGLY FAVORS DISCLOSURE

    A.    Absolute vs. Qualified Privilege

Even if the DHS had made a showing that the law enforcement privilege applies in this case, that does not end the inquiry, since the law enforcement privilege is not absolute. To the contrary, the law enforcement privilege is "qualified" in nature, meaning that the Court can nevertheless order disclosure based on a weighing of factors even if the asserted privilege applies. Tri-State Hosp. Supply Corp. v. U.S., 2006 U.S. Dist. Lexis 68168 (D.D.C. Sept. 25, 2006)(copy attached as Ex. 4).

    B.    A Balancing of the Ten-Factor Test
           Strongly Favors Disclosure

The assertion of the qualified privilege requires the Court to consider whether the societal interest in preserving the confidentiality of the records outweighs the litigant's needs for access to the information. Waters v. U.S. Capitol Police Bd., 218 F.R.D. 323 (D.D.C. 2003); Tuite v.

11

Henry, 98 F.3d 1411 (D.C. Cir. 1996). The Court of Appeals for the District of Columbia Circuit requires the Court to balance and evaluate a ten-factor test. In Re Sealed Case, 856 F.2d 286 (D.C. Cir. 1988). While the DHS' decision altogether fails to discuss the various factors, the University will attempt to address these factors as best it can at this time.

> **(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;**

This factor does not weigh in favor of enforcing the privilege. While the DHS makes the unsupported allegation that "[r]evealing such information would have a detrimental effect on agency operations and investigations," the naked assertion of detriment – without a detailed background to substantiate it– is insufficient. Further, there has been no suggestion that disclosure will discourage citizens from giving the government information. Nor could there be. Upon information and belief, the DHS does not wield prosecutorial powers in connection with it's security at the Old Post Office Pavilion, even though it asserts a *law enforcement* privilege. This factor therefore weighs in favor of disclosure.

> **(2) The impact upon persons who have given information of having their identities disclosed;**

This factor does not weigh in favor of confidentiality. At this time, the Plaintiff has already disclosed in discovery the names of Ranjit Signh's friends who are potentially material witnesses in this case. (Ex. 5, Excerpts from Plaintiff's Answers and Supp. Answers to Interrogatories). It is almost a certainty that the University and other defendants in this lawsuit will seek to contact and possibly depose these individuals. Having the DHS provide documents

which may further disclose the identity of witnesses and those of security officers who worked on the evening in questions will not significantly "impact" these individuals in any way, let alone in a negative fashion, particularly in light of the importance of their testimony to the proceedings in this civil case. This factor weighs in favor of disclosure.

**(3)   The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;**

The University is not aware that this factor is at issue and the DHS did not address this in it's decision. This is a non-issue which does not implicate any interest which favors enforcement of the privilege.

**(4)   Whether the information sought is factual data or evaluative summary;**

Whether a document is factual as opposed to evaluative in nature is an important consideration in the applicability of this privilege. Waters v. U.S. Capitol Police Bd., 218 F.R.D. 323 (D.D.C. 2003). In reviewing the documents sought by the University's subpoena, the Court can take note that most – if not all– seek information of a factual nature. For example, the University's subpoena seeks a list of all security guards and agents who worked at the Old Post Office Pavilion on the night in question (factual); the personnel files and documents showing the training and experience of these guards, and their duties and deployment on the night in question (factual); incident reports (factual); documents depicting security measures in place on the evening in question (factual); and site plans, premises plans, and drawings depicting the areas at the Old Post Office Pavilion was responsible for during the Bhangra Blowout (factual). In short,

This factor strongly favors disclosure.

    **(5)    Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow form the incident in question;**

The party seeking discovery herein is the George Washington University, a private educational institution located in the District of Columbia. Neither the University nor any of the other corporate or governmental defendants are actual or potential defendants in any criminal proceeding. As the University is not an actual or potential defendant in a criminal proceeding relating to the incident in question, this factor weighs in favor of disclosure.

    **(6)    Whether the police investigation has been completed;**

That the Agency in this case is even attempting to assert a "law enforcement" privilege is itself curious as the University – and certainly all parties in this case– are heretofore unaware that the Department of Homeland Security is somehow seeking to prosecute the assailant who killed Ranjit Singh on the streets in the District of Columbia. The DHS has certainly not suggested as much in it's decision, and absent such a showing of an ongoing investigation, this factor strongly favors disclosure.

    **(7)    Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;**

The University is aware of no interdepartmental disciplinary proceedings at issue and the DHS has not identified this as a concern. This is a non-issue which does not implicate any interest which favors enforcement of the privilege, and therefore weighs in favor of disclosure.

> **(8) Whether the plaintiff's suit is non-frivolous and brought in good faith;**

By the filing of amended complaints in this Court naming other Defendants, Plaintiffs have certified under Rule 11 that the instant lawsuit is not frivolous, and is brought in good faith and with substantial justification. Fed.R.Civ.P. 11. This factor therefore weighs in favor of disclosure.

> **(9) Whether the information sought is available through other discovery or from other sources;**

Without limitation, the information sought by subpoena is not available through other sources. None of the parties in this case have access to the names of federal security guards and agents who worked at the Old Post Pavilion on the night in question, let alone the building's security measures and related information. In fact, it is important to note that the University initially propounded a similar subpoena to the General Services Administration – who owns and controls the Old Post Office Pavilion– in the belief that most of the information sought could be acquired through the GSA. However, in responding to the subpoena, the GSA repeatedly noted that pursuant to the Homeland Security Act, protection of federal buildings was transferred to the DHS. The GSA noted, in part, that: "**Accordingly, because the subpoena requests a list of...federal agents," such a request should be made directly to DHS**..." (Ex. 2, Declaration attachment No. 3– Letter dated 9/18/06). The GSA's response in this regard was the primary reason that the University even sought to propound a subpoena to DHS. Clearly, DHS is the Agency with responsive information, and this factor clearly favors disclosure.

### (10) The importance of the information sought to the litigant's case.

The University's need for the information at issue is great. This Court is well aware that the Plaintiffs in this case are asserting that the University is responsible for Ranjit Singh's death and are seeking in excess of *six million dollars* in damages. Plaintiffs primary theory of recovery against the University and all other Defendants is that of negligence based on allegations of inadequate security measures at the Old Post Office Pavilion on the night in question. While the University did engage an outside security vendor to provide security, any other security measures or functions provided at the property by DHS or it's agents thereof (including a list of where the agents were deployed) may bolster the University's showing that there was reasonable security at the Old Post Office Pavilion. Further, the disclosure of site plans, premises plans, and other drawings which delineate those areas which the DHS guards were responsible for at the event is important to a determination of which vendors or defendants were obligated to provide security.

Notably, in responding to a subpoena issued by the University, the GSA produced a memorandum dated March 29, 2005 which appears to be a summary of the GSA's preliminary investigation into the event and death of Ranjit Singh. (*See* Ex. 2, Declaration attachment No. 4– Memo dated March 29, 2005). The memorandum notes that: "*For each event, GSA works with DHS to conduct as an assessment of how much security will be required...*" Id. p. 3. Moreover, the GSA's memorandum repeatedly references a "FPS police report for the incident." Id. Hence, to the extent that DHS is in possession of any investigatory files, incident reports or the like, they go to the very heart of the issues in this case.

Next, Plaintiffs in this case are also alleging negligent hiring and supervision of security as an independent claim in this case. The personnel files of security guards, together with documents demonstrating background, training, and experience may be a major factor in determining whether there is are grounds for negligent hiring or supervision in terms of experience, qualifications, and competency. In terms of a negligence defense, to the extent that any information suggests that Mr. Singh was drinking (he was underage), provoked the attack, or left the Old Post Office Pavilion through an unauthorized exit may give rise to assumption of the risk and other defenses. In all, the documents and information sought of the DHS are critical for the parties in this case and go to the central elements and defenses at issue. This factor strongly favors disclosure.

## CONCLUSION

For the foregoing reasons, the University respectfully requests that it's Motion to Compel and Enforce the Subpoena Served Upon the Department of Homeland Security be **GRANTED**.

Respectfully submitted,

**KHAN ROMBERGER PLLC**

By: /s/
_____
Karen A. Khan
D.C. Bar No. 455297
1025 Connecticut Ave., N.W.
Suite 1000
Washington, D.C. 20036
(202) 828-1243
ATTORNEYS FOR DEFENDANTS
THE GEORGE WASHINGTON UNIVERSITY
SOUTH ASIAN SOCIETY

Date:   December 19, 2006

## CERTIFICATE OF SERVICE ON AGENCY

I certify that on this 19th day of December, 2006, a copy of the University's Motion to Compel and Enforce was served upon counsel for the Agency by first class mail, postage prepaid, to:

>Christopher M. Vetter
>Associate Legal Advisor
>U.S. Immigration and Customs Enforcement
>Office of the Principal Legal Advisor
>U.S. Dept. of Homeland Security
>425 I Street, N.W.
>Room 6100
>Washington, D.C.  20536

/s/
_____
Karen A. Khan