## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-cv-0574 (RMC) |
| vs. | ) ) | |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, THE GEORGE WASHINGTON UNIVERSITY, and FALCON SECURITY CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION IN SUPPORT OF SUPOENA DUCES TECUM

## INTRODUCTION

My name is Timothy W. Romberger, and I am over twenty-one (21) years of age, have never been convicted of a felony, and am otherwise fully competent to make this declaration and to testify in any court of law. I am currently engaged as counsel of record for The George Washington University, and the South Asian Society of the George Washington University, Defendants in the above captioned matter. I have read and familiarized myself with the Department of Homeland Security's regulations – set forth at 6 C.F.R. 5 *et seq.*– governing subpoenas and requests for documents from the Department of Homeland Security (DHS), and now submit this declaration together with the subpoena *duces tecum* which is being served upon the Office of the General Counsel, Department of Homeland Security, Washington, D.C. 20258, in accordance with 6 C.F.R. §§5.41 and 5.42. I declare and state as follows:

## NATURE OF PROCEEDINGS

The George Washington University and one of its' student groups, the South Asian Society (hereinafter "The University"), have recently been sued as party defendants in that matter styled Singh v. The George Washington University, et al., Case No. 06-cv-0574 (hereinafter "the Lawsuit"), which is presently pending in the United States District Court for the District of Columbia before the Honorable Rosemary M. Collyer. The Lawsuit was filed on or about February 23, 2006 by the parents and administrator of the estate of Ranjit Singh (hereinafter "Singh"), an individual who was stabbed and assaulted outside of the Old Post Office Pavilion on March 27, 2005, following an event hosted the Defendants known as the Bhangra Blowout After-Hours Celebration (hereinafter "the Event") which took place on property leased from the General Services Administration at the Old Post Office Pavilion. Ranjit Singh died following the attack and the crime received considerable media attention.

The Lawsuit filed by Singh alleges various theories of negligence, together with a wrongful death claim.  More specifically, the Lawsuit alleges that The University negligently failed to provide reasonable security at the Event, negligently failed to station security guards at the exits at the Old Post Office Pavilion, and negligently selected, retained, and supervised the entity whom it engaged to provide security at the Event– Falcon Security Corporation. (*See* Decl. Ex. 1, Amended Complaint, Counts 1-2).

Factually, the Lawsuit further alleges that "there had been a number of assaults at this event in previous years," that "[t]he lighting was poor" near the exits at the Old Post Office Pavilion, making it easy for persons to lay in wait.  The Lawsuit also suggests that it was irresponsible to allow the service of alcohol at the Event. (*See* Decl. Ex. 1, Amended Complaint, ¶¶ 7-9).

Discovery in this case commenced on August 2, 2006, and is set to close on November 1, 2006. (*See* Decl. Ex. 2, Scheduling Order).

The University previously issued a subpoena *duces tecum* to the General Services Administration, who owns and controls the Old Post Office Pavilion. The subpoena sought a great deal of information concerning site plans, drawings, agreements, and documents pertaining to security and the incident at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.  By letter dated September 18, 2006, the GSA's Regional Counsel– Sharon Roach– provided much of the information sought, but noted on several occasions that "law enforcement authority for the protection of federal buildings was transferred to the Department of Homeland Security ("DHS").... and that such requests "...should be made directly to DHS" (*See* Decl. Ex. 3, GSA Response Letter, p. 2, 3).  It is against this background that the University now seeks the following documents and information.

## DOCUMENTS AND INFORMATION SOUGHT

The subpoena *duces tecum* propounded to DHS seeks the right to inspect and copy numerous documents and information which The University maintains is essential to the defense of this case.  The documents and information are listed below, together with a proffer as to the relevance of this information to the defense of this case.

1.    **A list of all federal security guards and agents who engaged in any type of security function at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance:  The relevance of this request is self-evident.  At this time, the University is aware that Falcon Security Corporation provided security guards at the event.  To the extent that any other individual performed some type of security function at the Old Post Office Pavilion on the night in question, The University is entitled to their identity as they may be individuals with

knowledge concerning the incident in question, any may have knowledge regarding the security measures at the property and/or at the Event, amongst other information. As such, this request is reasonably calculated to lead to the discovery of admissible evidence.

>    **2.    All documents showing, depicting, listing, or explaining all security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, including but not limited to any written security plan or assessment which may have been in place.**

Relevance:   Singh's primary theory of negligence in this case is that reasonable security measures were not in place at the Event. While the University did engage an outside security vendor to provide security, any other security measures or functions provided at the property by DHS or agents thereof may bolster the University's showing that there was reasonable security at the Old Post Office Pavilion. This relevance of this request is further bolstered by the fact that the Amended Complaint alleges 'poor lighting' at the Old Post Office Pavilion may have contributed to the ultimate assault on Singh. Additionally, in responding to a subpoena issued by the University, the GSA produced a memorandum dated March 29, 2005 which appears to be a summary of the GSA's preliminary investigation into the Event and death of Ranjit Singh. (*See* Decl. Ex. 4, Memo dated March 29, 2005). The memorandum notes that: *"For each event, GSA works with DHS to conduct as an assessment of how much security will be required..."* Id. p. 3. For these reasons, the requests are reasonably calculated to lead to the discovery of admissible evidence.

>    **3.    All DHS and Federal Protective Services incident reports and investigatory files relative to the events at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance:   In responding to a subpoena issued by the University, the GSA produced a memorandum dated March 29, 2005 which appears to be a summary of the GSA's preliminary investigation into the Event and death of Ranjit Singh. (*See* Decl. Ex. 4, Memo dated March 29, 2005). The memorandum repeatedly references a "FPS police report for the incident." Hence, to the extent that DHS is in possession of any investigatory files, incident reports or the like, the University's request is reasonably calculated to lead to the discovery of admissible evidence.

>    **4.    The personnel files for all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance: *See below.*

>    **5.    All documents showing the training, background, and/or experience of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance: *See below.*

6.    **All documents showing the duties and responsibilities of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005, including documents showing where these individuals were deployed on these dates.**

Relevance (Requests 4, 5, 6):  The relevance of these requests are self-evident. The personnel files of security guards, together with documents demonstrating background, training, and experience may be a major factor in determining the overall reasonableness of the security at the Event at the night in question.  The same is true for documents indicating deployment of the guards at the Event.   Hence, requests are reasonably calculated to lead to the discovery of admissible evidence.

7.    **All site plans, premises plans, and drawings depicting the exact area at the Old Post Office Pavilion (including entrances and exits, if any) that DHS security guards (or agents thereof) were responsible for at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance: The University seeks all site plans, premises plans, drawings or other documents which depict or specifically delineate the areas at which the DHS security guards (or agents thereof) were responsible for protecting at the Event, which is central to this litigation and is reasonably calculated to lead to the discovery of admissible evidence.

8.    **Any agreements, authorizations, and other documents authorizing SecTek, Inc., or any other entity to provide security at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.**

Relevance: To the extent that the DHS specifically authorized, permitted or directly coordinated with SecTek, Inc., or other entities to provide security at the Event, the University is entitled to such documents which are reasonably calculated to lead to the discovery of admissible evidence.

9.    **Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding the events of March 26, 2005 and March 27, 2005.**

Relevance:  To the extent that DHS or its agents are in possession of any incident reports or other documents relative to the Event and the assault on Ranjit Singh on the evening in question, these clearly go to the central issues of fact in this case and may lead to the discovery of

4

admissible evidence.

**10.    Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding any violence or crime at the Old Post Office Pavilion or within two blocks of the Old Post Office Pavilion in the last five years.**

Relevance:  The University in this case intends to take the position that the assault on Ranjit Singh outside the Old Post Office Pavilion was not "forseeable."  To test this theory, the University needs any documents concerning other crimes or violence at or near the property, or a certification that none took place.  In an attempt to be reasonable and narrowly limit the scope of the information sought, the University has limited this request to a five year window.  Given that this information goes to a central element in a negligence analysis, this request is reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, in responding to a subpoena issued by the University, the GSA indicated that a subpoena requesting "crime-related statistics and information regarding a federal building... should be made directly to DHS" (*See* Decl. Ex. 3, p. 3).

## OTHER CONSIDERATIONS

In determining the appropriateness of the documents and information sought herein, The University further addresses the factors as set forth in 6 C.F.R. § 5.48(a)(1) through (8), by stating as follows.

(1)  Disclosure, inspection and copying of the documents and information sought herein is permissible under Federal Rules of Civil Procedure 26, 34 and 45.  The federal judge assigned to this case – the Hon. Rosemary M. Collyer– has recently issued a Scheduling Order authorizing discovery in this case. (*See* Decl. Ex. 2, Scheduling Order).

(2)  The documents and information sought are highly relevant to these proceedings for the reasons set forth above and permissible under the substantive rules of discovery applicable to the pending lawsuit.

(3)  The University believes that the public interest would be served by disclosure of this information, particularly given the existence of a federal lawsuit which contains a jury demand. The prospective jurors – and the public at large– would be served by having all relevant documents to consider in reaching a determination on the merits.

(4)  The University is willing to minimize the potential burden on the time of the Department by working with the agency in any reasonable way, including accepting authenticated copies of material sought.  The University is further willing to consider any other suggestions the Agency may have in this regard.

(5)  The University will agree to pay a reasonable retrieval and copying fee.

(6)  The University posits that production of the information would not affect the standing of either litigant in this lawsuit.

(7)  The University believes that the limited scope of information and documents sought will by no means affect the underlying mission and goals of DHS, let alone have an adverse effect on the performance of any employee.

(8)  The pending lawsuit and documents sought herein do not present any novel or controversial issues for consideration, but are standard document requests pertaining to the central core issues in the case.

## TIME FOR COMPLIANCE

The University requests compliance with the subpoena duces tecum within thirty days (30) after service.  The University believes this request to be reasonable under the circumstances.

## WRITTEN ASSURANCE OF PAYMENT

The University hereby provides written assurance that it will pay reasonable fees for the search, review, and reproduction of the documents and information sought.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed pursuant to 28 U.S.C. §1746.

Date: 9-21-06

Timothy W. Romberger

6

**DECLARATION  EX. 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA.

Gurpal Singh, as                          :
Administrator Ad Prosequendum   :
of decedent Ranjit  Singh.             :
And Gurpal Singh and Kulwinder :
Kaur as Parents of Ranjit Singh   :
319 Mercer St.,                           :
Phillipsburg, N.J.        08865        :
                                                 :
        Plaintiffs                          :
                                                 :         Civil Action No.  06-0574(RMC)
                v.                            :
                                                 :
South Asian Society of The George:
Washington University               :
2121 Eye Street, N.W.                 :
Washington, D.C. 20052             :
                                                 :
                                                 :
                                                 :
And,                                          :
                                                 :
George Washington University    :
2121 Eye Street, N.W.                 :
Washington, D.C. 20052             :
                                                 :
                                                 :
                And                        :
                                                 :
Falcon Security Corp.                  :
3123 82nd Ave.                            :
Landover Md.                             :
20785                                        :
                                                 :
        Defendants.                       :

## FIRST AMENDED COMPLAINT

### I. Jurisdiction

1.    This action is brought pursuant to the common law of the District of Columbia. Jurisdiction is founded upon the D.C. Code §11-921, 12-101 and 16-2701.

### II. Parties

3.    Plaintiff, Gurpal Singh is the father and the duly appointed Administrator Ad Prosequendum of Ranjit Singh, having been appointed by the Surrogate's Court of Warren County in the state of New Jersey on December 13, 2005. As such he authorized by New Jersey law to bring this action on behalf of the Estate of Ranjit Singh.

4.    Defendant, South Asian Society of the George Washington University (hereinafter, "SAS") is a non-profit organization of George Washington University students, that was established to maintain and promote South Asian culture.

5    Defendant, George Washington University (hereinafter, "GWU") is a private university which operates in the District of Columbia

6.    Defendant, Falcon Security Corp.(hereinafter "Falcon") is a security services company which operated in the District of Columbia on or about March 27, 2005.

7.     SAS and GWU jointly organized, promoted and funded, an annual event known as the "Bhangra Blowout." Bhangra is is a traditional style of music and dance originating from the Indian sub-continent. The "Bhangra Blowout" is a festival in which top university teams from around the world take the stage each year to compete for cash prizes. I n 2005 it had several components, including a party at the end of the contest which was held at the Old Post Office pavilion located at 1100 Pennsylvania Ave NW, Washington, DC 20004.   This event was attended by approximately 1,250 persons.   Alcohol was served to patrons over the age of twenty one.  The event began at 7.00 p.m. on March 26, 2005 and was supposed to continue until 3.00 a.m. the next morning,  but it appears that the event was shut down at around 2.00 a.m. in the middle of a performance.  Falcon was hired to provide security services at the event.

8. Ranjit Singh and several of his friends traveled from the Phillipsburg, New Jersey area on March 27, 2005 to attend the party at the Post Office Pavilion. About forty five minutes before the event ended, a member of Ranjit Singh's group became involved in a dispute with another male patron. Some shoving and pushing may have occurred but eventually, the parties involved calmed down and actually shook hands.  No security guards intervened in this incident and  Ranjit Singh was not involved .  After the party was ended Ranjit Singh left the event through a side exit.  Several of his friends had already left through the same exit just before him. As Singh's friends were on the top of some  steps which led down to the sidewalk, but still on Post Office Pavilion property,   they were approached by an individual they had seen earlier inside the building and whom it is  believed was a friend of the other party involved in the dispute which had occurred inside the building.  He was talking unintelligibly,  had an unsteady gait  and was making fists and gesticulating  in an angry manner.  They  managed to disengage from him without incident and began to walk down the street.  As Ranjit Singh followed his

3

friends onto to the steps, the same individual approached him and again began to act in a very agitated manner. He was talking loudly and in an aggressive manner. Ranjit Singh walked down the steps and onto the sidewalk where he was attacked by this individual and suffered a stab wound to his chest which severed his left axillary artery. The attack occurred approximately ten feet from the bottom of the steps. Ranjit Singh was taken to George Washington University Hospital where he was pronounced dead at 3.20 a.m. on March 27, 2005. The identity of the assailant is unknown.

9. Upon information and belief, there had been a number of assaults at this event in previous years. In an effort to control the number of such incidents, attendance in 2005 was reduced and security was increased inside the building. However, no security guards were present at the exits after the event was shut down. The lighting was poor and the top of the steps where these events began, contained areas to the side of the steps, where it was easy to wait for persons leaving the event.

## COUNT ONE

### (Negligence - Failure To Provide Security)

10. Plaintiff hereby incorporates paragraphs 1 through 9, *supra*, by reference.

11. Defendants, failed to provide a reasonable level of security to persons exiting the event at the Old Office Pavillion on March 27, 2005. In particular, they failed to station security

4

guards at the exits to help ensure that the persons leaving the event were able to do so in an orderly and peaceful manner.

12. Defendants knew or should have known that, due to the lack of security measures, it was reasonably foreseeable that patrons leaving this event, including plaintiff could be assaulted and injured.

13. As a direct and proximate result of the above-described negligence, plaintiff was assaulted with a knife. He suffered grave bodily injury and death. He experienced bodily pain and mental anguish. He suffered pecuniary loss, including, but not limited to, hospital and medical expenses and loss of future earnings.

WHEREFORE, plaintiff prays for a judgment against defendants awarding compensatory damages in the amount of $2,000,000 (Two Million Dollars), costs of this suit, and any other relief deemed appropriate by the court.

## COUNT TWO

(Negligent Selection, Retention and Supervision of Security Provider)

14. Plaintiff hereby incorporates paragraphs 1 through 13, *supra*, by reference.

15. Defendants negligently selected, retained and supervised Falcon, which provided security services at this event.

16. As a direct and proximate result of the above-described negligence, plaintiff was assaulted with a knife He suffered grave bodily injury leading to death . He experienced bodily

5

pain and mental anguish, and he suffered pecuniary loss, including, but not limited to, hospital and medical expenses and loss of future earnings.

WHEREFORE, plaintiff prays for a judgment against defendants awarding compensatory damages in the amount of $2,000,000 (Two Million Dollars), costs of this suit, and any other relief deemed appropriate by the court.

## COUNT THREE

### (Wrongful Death)

17. Plaintiff hereby incorporates paragraphs 1 through 16, supra, by reference.

18. As a direct and proximate result of the above-described negligence, decedent Ranjit Singh died on March 27, 2004. There were no intervening or superseding causes contributing to his death.

34. As a direct and proximate result of the above-described negligence and the ensuing death of Sanjit Singh , his mother, Kulwinder Kaur, and his father, Gurpal Singh, suffered the loss of the decedent's future earnings, services and assistance, and other pecuniary benefit which they would have derived had the decedent survived.

WHEREFORE, plaintiff prays for a judgment against defendants awarding compensatory damages in the amount of $2,000,000 (Two Million Dollars), costs of this suit, and any other relief deemed appropriate by the court.

By:_____
    Geoffrey D. Allen
    D.C. Bar No. 288142
    1730 Rhode Island Ave. N.W.

6

Suite 206
Washington, DC  20009
(202) 778-1167
Attorney for Plaintiff


# JURY DEMAND

Plaintiff demands trial by jury as to all counts herein.


_____

Geoffrey D. Allen

7

**DECLARATION EX. 2**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GURPAL SINGH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00574 (RMC) |
| | ) | |
| SOUTH ASIAN SOCIETY OF THE | ) | |
| GEORGE WASHINGTON | ) | |
| UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### SCHEDULING ORDER

Upon consideration of the joint report of the parties submitted pursuant to LCvR 16.3(d), and after a scheduling conference held in open Court on August 2, 2006, it is hereby **ORDERED** that:

1. Plaintiff's designation of experts and reports pursuant to Fed. R. Civ. P. 26(a)(2) shall be made no later than September 1, 2006. Defendant's designation of experts and reports shall be made no later than October 2, 2006.

2. The parties shall exchange witness lists by September 1, 2006.

3. Interrogatories and document requests shall be served by September 1, 2006. Responses to all interrogatories and document requests shall be made thirty (30) days after service.

4. All discovery shall be completed no later than November 1, 2006.

5. Dispositive motions shall be filed no later than December 1, 2006; oppositions and replies shall be filed according to the Local Rules of this Court. A motion for extension of time to file a motion, opposition, or reply will be denied except upon a showing of good cause. The page limitations for briefs referenced in LCvR 7(e) are to be strictly followed by the parties.

6.    Discovery material shall not be filed with the Court unless so ordered. *See* LCvR 5.2(a).

7.    Counsel are expected to conduct themselves in a civil, polite, and professional manner at all times, particularly during discovery. Counsel are referred to LCvR 26.2 and expected to conform fully with its directives. Moreover, counsel are required, under both Fed. R. Civ. P. 26(f) and LCvR 7.1(m), to confer in good faith in an effort to resolve any discovery dispute before bringing it to the Court's attention. In the event that counsel are unable to resolve a dispute, counsel shall contact chambers to arrange for a telephone conference with the Court. Counsel shall not file discovery motions without a prior telephone conference with the Court and opposing counsel.

8.    A further status conference is scheduled for 11:00 a.m. on November 21, 2006, at which time a pretrial conference date and a trial date will be selected. Counsel shall be prepared at the status conference to advise the court of the expected length of trial and of the number of fact and expert witnesses each party will present. Trial counsel shall appear at all hearings, unless excused by the court in advance of the hearing date.

9.    Counsel are expected to evaluate their respective cases for settlement purposes. Submission to alternative dispute resolution, *e.g.*, mediation or neutral evaluation, is encouraged and available by request of the Court at any time, as is a settlement conference before a Magistrate Judge. If the case settles, in whole or in part, Plaintiff's counsel shall advise this Court by promptly filing a stipulation.

10.    This schedule shall not be modified, even where all parties consent, except upon a showing of good cause and by leave of the Court. *See* Fed. R. Civ. P. 16(b); LCvR 16.4(b).

2

**SO ORDERED.**

Date: August 2, 2006

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

**DECLARATION EX.3**

GSA

**GSA National Capital Region**

September 18, 2006

<u>Via Federal Express</u>

Timothy W. Romberger, Esq.
Khan & Romberger PLLC
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036

      Re:    Gurpal Singh, et al. v. George Washington University, et al.
              In the U.S. District Court for the District of Columbia
              <u>Civil Action No. 06-cv-05734</u>

Dear Mr. Romberger,

      Pursuant to 41 C.F.R. 105-60 *et seq.*, the General Services Administration ("GSA")
responds to the *subpoena duces tecum* (the "Subpoena") issued by The George Washington
University ("GW") as set forth below. The documents are organized to correspond with the
categories in the Subpoena. As stated in my letter to you dated September 5, 2006, the
applicable regulations only provide that GSA shall make a determination as expeditiously as
possible. *See* 41 C.F.R. 105-60.605(g). Accordingly, GSA is still in the process of gathering
documents that may be responsive to the Subpoena. To the extent that GSA's efforts uncover
additional responsive documents, GSA will supplement this response.

<u>Request No. 1</u>
The Services Agreement (a/k/a Operating Agreement) between the General Services
Administration and Hill Partners, Inc., that was in effect in March of 2005, governing all
operations and responsibilities at the Old Post Office Pavilion.

      <u>Response:</u>    Subject to and without withdrawing the reservation of rights as stated in
                    GSA's letter dated September 5, 2006, all non-privileged, responsive
                    documents are attached hereto as Exhibit 1.

<u>Request No. 2</u>
All site plans, premises plans, and drawings depicting the exact area within the Old Post Office
Pavilion (including entrances and exits, if any) that the George Washington University leased

Timothy W. Romberger, Esq.
September 18, 2006
Page 2

and was responsible for at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

> Response:   Subject to and without withdrawing the reservation of rights as stated in GSA's letter dated September 5, 2006, GSA has been unable to locate a copy of Exhibit A to the Special Event License Agreement. To the extent that GSA locates a copy, it will be produced as part of a supplemental production.

Request No. 3

Any agreements, authorizations, and other documents authorizing Falcon Security Corporation to provide security for The George Washington University at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

> Response:   GSA has not identified any responsive documents to this request.

Request No. 4

A list of all security guards, federal agents, and all other individuals who engaged in any type of security function at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005, including those provided by the General Services Administration, Hill Partners, Inc., and any other entity.

> Response:   Subject to and without withdrawing the reservation of rights as stated in GSA's letter dated September 5, 2006, all non-privileged, responsive documents are attached hereto as Exhibit 4. By way of further response, GSA notes that pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, law enforcement authority for the protection of federal buildings was transferred to the Department of Homeland Security ("DHS"). Accordingly, because the Subpoena requests a "list of...federal agents," such a request should be made directly to DHS. To the extent that GSA exercises custody and control over such a "list," it would be privileged and confidential.

Request No. 5

All documents showing, depicting, listing, or explaining all security measures that were in place at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005, including but not limited to any written security plan which may have been in place.

> Response:   GSA has not identified any responsive documents to this request.

Request No. 6

Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding the events of March 26, 2005 and March 27, 2005.

Timothy W. Romberger, Esq.
September 18, 2006
Page 3

> Response:    Subject to and without withdrawing the reservation of rights as stated in
> GSA's letter dated September 5, 2006, all non-privileged, responsive
> documents are attached hereto as Exhibit 6.

Request No. 7
Any and all non-privileged incident reports, correspondence, memorandum, emails, and other
documents regarding any violence or crime at the Old Post Office Pavilion or within a two
blocks of the Old Post Office Pavilion in the last five years.

> Response:    Subject to and without withdrawing the reservation of rights as stated in
> GSA's letter dated September 5, 2006, all non-privileged, responsive
> documents are attached hereto as Exhibit 7. By way of further response,
> GSA notes that pursuant to the Homeland Security Act of 2002, Pub. L.
> No. 107-296, 116 Stat. 2135, law enforcement authority for the protection
> of federal buildings was transferred to DHS. Accordingly, as the
> Subpoena requests crime-related statistics and information regarding a
> federal building, such a request should be made directly to DHS. To the
> extent that GSA exercises custody and control over such documents, they
> would be privileged and confidential.

Request No. 8
Any and all documents showing the type of lighting system in place for the exterior at the Old
Post Office Pavilion, including documents showing approval (governmental, regulatory, or
otherwise) of the lighting system.

> Response:    Subject to and without withdrawing the reservation of rights as stated in
> GSA's letter dated September 5, 2006, all non-privileged, responsive
> documents are attached hereto as Exhibit 8. By way of further response,
> GSA notes that the document in Exhibit 8 is dated June 2, 2003, and that
> GSA makes no representation that the lighting system as indicated in
> Exhibit 8 represents the lighting system currently "in place" or that was
> "in place" on March 26, 2005 and March 27, 2005. Furthermore, Exhibit
> 8 refers to the entire lighting system around the perimeter of the Old Post
> Office and not just the 11th and Pennsylvania area, which is the subject of
> the underlying lawsuit from which the Subpoena was issued.

Request No. 9
Permission to enter the Old Post Office Pavilion for the purposes of taking photographs of the
licensed area that The George Washington University leased both inside and outside the building
on March 26, 2005 and March 27, 2005.

> Response:    Subject to and without withdrawing the reservation of rights as stated in
> GSA's letter dated September 5, 2006, GSA's permission is not required
> to photograph the exterior of the Old Post Office Building. GSA will
> arrange a mutually convenient time for photographing the interior space,

Timothy W. Romberger, Esq.
September 18, 2006
Page 4

> subject to any security- or privacy-related concerns that may be raised by
> the Federal Protective Service, DHS, and/or the tenants of the Old Post
> Office Building.

Please feel free to call me at (202) 708-3880 if you have any questions.

Sincerely,

*Sharon A. Roach*

Sharon A. Roach

cc:    Paula J. DeMuth, Deputy Regional Counsel
       Timothy C. Tozer, Assistant Regional Counsel

**DECLARATION EX. 4**

TO:           LINDA GARVIN, BILL GUERIN

FROM:         MICHAEL MCGILL

SUBJECT:      PUBLIC EVENTS IN GSA BUILDINGS

Date:         March 29, 2005


As you know, there was a stabbing early Sunday morning outside the Old Post Office, resulting in one death and two injuries. Those who were attacked were attending a party at OPO sponsored by George Washington University. Subsequent to this event, GSA Administrator Donald Williams received a letter from Terry Lynch, executive director of the Downtown Cluster of Congregations, calling for an end to GSA using its buildings for "night club-like activities." He also issued a press release that got a lot of media play last night, and resulted in an editorial in this morning's *Post*.

The purpose of this memorandum is to summarize what we know at this point about the incident, the procedures we follow in renting event space under the Cooperative Use Act, possible responses we could provide to the press regarding this incident, and actions we might consider taking in the future to avoid such events from becoming a common occurrence. I have obtained documentation related to these topics, including the FPS police report for the incident, the application and license agreement for the specific event, a summary of past and future events scheduled to occur at both the OPO and Mellon Auditorium, and administrative regulations governing our implementation of the Cooperative Use Act.

**The Incident:** According to the FPS report, at approximately 2 a.m., a group of ten individuals left the event at OPO through the 11th St. entrance to the building. They encountered an individual in the plaza outside the entrance who, for some unknown reason, they accosted. This person ran off and then came back and proceeded to stab to death one of the people in the group. Two of the victim's friends chased the perpetrator, caught up with him on the other side of Pennsylvania Avenue, and were also stabbed, but not killed. The perpetrator then fled on foot up 11th St., tried unsuccessfully to hail a cab, and left the scene in a green car that was later recovered. He is described as a Hispanic or Indian individual, approximately 5'6" to 5'8" in height. He remains at large. It is not clear whether the perpetrator was attending the event.

**The Event:** The event at which this attack occurred was sponsored by The George Washington University on behalf of an undergraduate student group, The South Asian Society. Approximately 1000 to 1200 people attended, following the conclusion of a dance competition at Constitution Hall. This is the third such event GWU has sponsored at OPO in the past three years, although this year they initially were planning on holding it at the City Museum. They approached GSA only on March 15, explaining that they had discovered the City Museum was too small to meet their needs.

**Event Security:** Rodney Dyer of Hill Partners, the firm that manages our retail and restaurant space at OPO, has been managing the rental of OPO event space for the past 15 years. His standard procedure is to look at each applicant and the nature of the proposed event to ascertain the amount of security that will be required. He confers with the Department of Homeland Security and with the contract guard service they employ at OPO to determine the appropriate number of guards and then charges a security fee to cover these costs and provide additional collateral that is refunded if all goes well.

Last year, some minor problems arose at the event which prompted Mr. Dyer to impose additional conditions for this year. The number of people attending was reduced from 1500 to 1200, GWU was required to provide additional guard service at their own expense to supplement the DHS contract guards, the event was required to end at 2 a.m. instead of 3 a.m., no one was allowed to enter the event after 1 a.m., and liquor sales were halted at 1:30 a.m. In addition, because GSA had to utilize more guards, we increased the security fee to $7,000, of which $2,000 would be refundable.

Security consisted of 14 armed DHS contract guards from Sectek, and 30 unarmed security personnel paid for by GWU, comprising of contract guards from Falcon Security and GWU employees. Two doors to the event were open, each with three DHS guards, metal detectors, and x-ray machines. No DHS security guards were posted outside the building, because DHS prohibits armed guards from patrolling non-GSA property.

**Procedures for renting GSA event space:** Hill Partners staff are responsible for the initial contact with organizations seeking to rent GSA space for events under the Cooperative Use Act. They have no authority to confirm or deny that such a rental may occur. Instead, they make a recommendation to staff in GSA's Triangle Service Delivery division. Hill Partners staff believe that GSA has the authority to reject a request, but no such request has ever been rejected during the past 15 years. Cancellations that occurred were due either to a lack of funding on the part of the applicant, or, in the case of a proposed Inaugural event this past January, because security procedures were so restrictive along Pennsylvania Avenue that the event could not be held for logistic reasons.

According to NCR's General Counsel, the administrative regulations adopted to implement the Cooperative Use Act (41 CFR section 102-74.500) there are only size enumerated reasons for GSA to disapprove a permit application:
    a. failure to submit all required information, or falsifying same.
    b. the proposed use is a commercial activity.
    c. the proposed use impairs public access or government use of the bldg.
    d. the proposed use is intended to influence a pending judicial proceeding.
    e. the proposed use is obscene.
    f. the proposed use violates the prohibition against public solicitations.

**Possible Response to the Media:** There have been no further media inquiries today, although yesterday NCR was contacted by Channels 5 and 9 and by WTOP radio. I

recommend that we prepare a written statement that can be distributed to the press on request, attributed to "GSA." The statement should make the following points:

1. GSA regrets the tragic loss of life that occurred.

2. GSA rents event space at OPO under the terms of the Cooperative Use Act, passed by Congress in the 1970s, in part because Congress wanted to find ways to save OPO and use it to help revitalize Pennsylvania Avenue. This legislation serves as the basis throughout the country for GSA to make common space in its buildings available to the American public for various kinds of events. It also provides a valuable source of revenue for the Federal Buildings Fund, which GSA uses to repair and maintain its buildings.

3. For each event, GSA works with DHS to conduct an assessment of how much security will be required, and it charges the applicant a fee sufficient for this purpose. At this specific event,, involving 1200 people, GSA utilized 14 of its own contract guards and required the event sponsor, George Washington University, to provide an additional 30 security personnel.

4. There has never before been a fatality at events at OPO under GSA supervision. One fatality occurred outside the building at a DC-sponsored New Year's Eve event in the mid-1980s. Furthermore, OPO is already configured for public use on its lower floors, having been used for retail and restaurant purposes for more than two decades.

5. GSA has only very narrow grounds for rejecting an application for an event at OPO, under the regulations implementing the Cooperative Use Act. In addition, it would be difficult and raise issues of fairness for GSA to try to distinguish among events. A blanket prohibition would, for instance, eliminate the possible use of OPO for Inaugural events, as has occurred in the past.

6. GSA is currently researching its ability to impose additional conditions on public events in an effort to avoid future tragic events from occurring.

