UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GURPAL SINGH, Administrator of decedent | ) | |
| RANJIT SINGH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number 06-0574 (RMC) |
| | ) | |
| SOUTH ASIAN SOCIETY OF THE | ) | |
| GEORGE WASHINGTON UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**CHIEF CHARLES H. RAMSEY'S REPLY TO GEORGE WASHINGTON
UNIVERSITY'S OPPOSITION TO
MOTION FOR PROTECTIVE ORDER [1]**

I.      Summary

In the underlying action, plaintiff Gurpal Singh, as Administrator for decedent Ranjit

Singh, filed a wrongful death and negligence lawsuit against, among others, GWU. The claims

arise out of the apparent murder of Ranjit Singh on March 27, 2005 who was attending a

function hosted by GWU. Since that date, the Metropolitan Police Department has initiated a

homicide investigation concerning the death of Ranjit Singh. This investigation remains

ongoing.

On August 10, 2006, GWU served a subpoena upon Chief Charles Ramsey. The

subpoena broadly requests that Chief Ramsey produce "[t]he entire police file relative to the

investigation surrounding the assault and death of Ranjit Singh…" and "[a]ll incident reports and

police files for any crime alleged to have been committed at the Old Post Office Pavilion or

within two blocks of the Old Post Office Pavilion from March of 2000 though March of 2005."

(Exhibit A, Chief Ramsey's Motion for Protective Order, Docket # 30). The subpoena

commands Chief Ramsey to produce the requested documentation by August 24, 2006.

      On November 30, 2006, Chief Charles Ramsey filed a Motion to Quash GWU's

subpoena. Attached to this motion was a declaration by Metropolitan Police Department

Commander Michael Anzollo which described a basis for the assertion of the law enforcement

privilege. On December 19, 2006, GWU filed its Opposition to Chief Ramsey's Motion to

Quash. GWU states in its Opposition that starting early in September of 2006, counsel for GWU

began communicating with MPD's Office of the General Counsel and sought production of the

requested documents without seeking the Court's assistance. Counsel for GWU states that both

MPD's General Counsel's office and the Office of the Attorney General repeatedly refused to

produce the information sought by GWU. (Opposition, Page 3, Docket entry 39.)


II.   <u>Argument</u>

      A) GWU first argues that the Metropolitan Police Department (MPD) waived the right to

invoke the law enforcement privilege by failing to raise it in a timely manner in accordance with

Fed.R..Civ. P. 45(c)(2)(B) and Fed.R.Civ.P.45(d)(2). GWU notes in its Opposition that it sought

production of the subpoenaed documents prior to the filing of Chief Ramsey's Motion for

Protective order from both the Office of the MPD General Counsel and the Office of the

Attorney General and that both offices refused to produce the requested information. However,

during this period GWU never availed itself of its right to bring this matter before the Court in

the form of a motion to compel.

---

[1] Since this issue has been before the Court, Mayor Adrian M. Fenty has appointed Cathy L. Lanier to serve as Chief of Police for the Metropolitan Police Department.

Fed.R..Civ. P. 45(c)(2)(B) requires that "…[i]f objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production." GWU argues that Chief Ramsey's failure to provide written objections with 14 days of service of the subpoena alone provides a basis for the Court to deny the Chief's Motion for Protective Order.

Attorneys from the MPD General Counsel's office and the Office to the Attorney General expressed to Counsel for GWU their refusal to turn over the subpoenaed documents during the time period after service of the subpeana, and prior to the filing to Chief Ramsey's Motion for Protective Order. GWU concedes this fact. Nevertheless, GWU has yet to file a Motion to Compel.

GWU relies heavily on *Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996) as authority for its argument that Chief Ramsey's failure to provide written objections within 14 days is fatal to the Chief's Motion for Protective Order. However, the facts of that case are distinguishable from the facts now before the Court. In that case, the parties who had severed the subpoena *had* filed a motion to compel subsequent to objections to the subpoena being raised by Attorneys for the government. *Id* at 1415.

Here, however, after the District of Columbia Government expressed it objections to GWU, the University did not move this Court to compel the Government to produce the privileged documents. Now the University is attempting to hold the District accountable for not filing written objections to the subpoena when it too did not file a pleading with the Court seeking to enforce this Court's subpoena. Because both the District and GWU appeared to have wanted to resolve this dispute informally and without Court intervention, the District should not

be penalized for not filing written objections to the subpoena when it clearly express its

objections to the subpoena.

Since the Court has broad discretion with regard to the time limitation concerning its

rules, *see* Federal Rule of Civil Procedure 6 (b), it would be unfair to fault and penalize Chief

Ramsey in this matter by ordering him to produce the requested documents because he failed to

provide written objections within 14 days while likewise ignoring GWU's failure to move to

compel. *See* Fed.R..Civ. P. 45(c)(2)(B).  As argued below, Chief Ramsey has asserted a

legitimate reason to justify nondisclosure to the requested documents.


B)  GWU then argues that Chief Ramsey has failed to properly assert the law

enforcement privileged.   Assertion of the law enforcement privilege requires: "(1) a formal

claim of privilege by the 'head of the department' having control over the requested information;

(2) assertion of the privilege based on actual personal consideration by that official; and (3) a

detailed specification of the information for which the privilege is claimed, with an explanation

why it properly falls within the scope of the privilege." *Landry v. FDIC,* 204 F.3d 1125, 1135

(D.C. Cir. 2000), citing *In re Sealed Case*, 856 F.2d 268 at 271.

In its Opposition to the Chief Ramsey's Motion for Protective Order, GWU does not

dispute that Commander Anzallo, the individual asserting the privilege, satisfies the first

requirement that the formal claim must come from the head of the department having control

over the requested information. Nor does GWU contest, that Commander Anzollo's assertion of

the privilege is based on his actual personal consideration. (See Opposition, Page 7-8, Docket

entry # 39).

GWU does, however, argue that Chief Ramsey has failed to satisfy the third element of the above described test.  Namely, GWU argues that Chief Ramsey has failed to meet his burden to explain with sufficient detail why each category of document described in Commander Anzollo's Declaration is subject to the law enforcement privilege. In an effort to more clearly explain with sufficient detail why each category of document described in Commander Anzollo's Declaration falls properly within the preview of the law enforcement privilege, Commander Anzollo has prepared and executed a Supplemental Declaration, which provides more information about each of the forty-six listed documents than did his original Declaration, while also not revealing those facts which the law enforcement is intended to protect. (Attached as Exhibit A, and reference below.)

GWU also argues that, even if the Court determines that Chief Ramsey has met the three part test, because of the "qualified" nature of the law enforcement privilege, the Court can nevertheless order disclosure based on a weighing of factors enumerated in *In re Sealed Case*, 856 F.2d 268.  In preparing his Supplemental Declaration, Commander Anzallo has indicated which of these factors is relevant in invoking the law enforcement privilege with regard to each listed document.  Commander Anzallo has concluded that a consideration of whether the police investigation has been completed (factor #6) applies to *all* of the documents listed below because of the ongoing nature of the criminal investigation.  Other factors that should weigh in favor of non-disclosure are:

Factor # 1.  The extent to which discloser will thwart governmental processes by discouraging citizens from giving the government information.

Factor # 2.  The impact upon persons who have given information of having their identities disclosed.

Factor # 3.  The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure.

Factor # 4. Whether the information sought is factual data or evaluative summary.

Factor # 9  Whether the information sought is available through other discovery or form other sources.

Commander Anzallo has applied these factors to the listed documents as follows:

1.  **Family Contact Record.**  This record contains information about family members and other information concerning this investigation, which if disclosed prematurely, could impede the ability of law enforcement officials to gain cooperation in the future.

2.  **Death Report (Form PD 120).**  This record describes the scene, as well as evidence within the scene, which if disclosed prior to criminal trial could impede the prosecution.

3.  **Washington Area Criminal Information and Intelligence System (WACIIS) Investigative Reports (PD 854W).**  This record contains names of persons who cooperated in this investigation and information about the case which, if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Further, some of the information contained in this record is evaluative in nature.

4.  **Running Resume entries.**  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature**.**

5.  **Report of Investigation Continuation entries.**  This report contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Further, some of the information contained in this record is evaluative in nature.

6.  **PD 252s Supplemental Reports**.  These reports contain names of persons who cooperated in this investigation and information about the

case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.

7. **General Service Administration Reports.** These reports contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Further, this information could be obtained from the General Service Administration.

8. **Witness Statements Metropolitan Police Department PD 119s.** This information about the case which if disclosed prior to criminal trial could impede the ability of law enforcement officials to gain cooperation in the future. Further, this information could be obtained from the United States Attorney's Office.

9. **Phone Records and subscriber information.** These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Further, this information could be obtained from the phone company.

10. **Affidavits of the Superior Court Regarding Extradition.** These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Further, this information could be obtained from the United States Attorney's Office.

11. **Metropolitan Police Department Supplementary Evidence Report (Form PD 698).** This document describes evidence and activities performed by crime scene search technicians, which could impede the prosecution if disclosed prior to criminal trial.

12. **Metropolitan Police Department Evidence Report (Form PD 668)** Describes evidence and activities of crime scene search technicians, which if disclosed prior to criminal trial could impede the prosecution.

13. **All crime scene photographs.** Generally, the photos depict the crime scene and anything that may be contained within the crime scene or related to the crime, which if disclosed prior to criminal trial could impede the prosecution. I have not seen the photos personally because they are not within the homicide file, although the file has information in it that photographs of the crime scene were taken.

14. **Diagram with location information.**  Depicts the crime scene and anything contained within the crime scene, which if disclosed prior to criminal trial could impede the prosecution.

15.   **Department of Justice forms from the Department of Immigration and Naturalization.**  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, this information could be obtained from the Department of Immigration and Naturalization.

16. **Superior Court of the District of Columbia Criminal Division Subpoenas.**  These records contain names of persons who cooperated in this investigation and information about the case which if disclosed prior to criminal trial could impede the ability of law enforcement officials to gain cooperation in the future.  Further, this information could be obtained from the United States Attorney's Office.

17. **Metropolitan Police Department Photo Viewing Sheet**.  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.

18. **All photos used for identification procedures.**  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.

19. **All documents from Choicepoint searches.**  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, this information could be obtained by running an independent data base search.

20. **Washington Area Law Enforcement System (WALES) records.**  These documents contain law enforcement information about criminal warrant and motor vehicle status.  These records list names of persons involved or may be involved in the case.

21.   **Witness Lists**.  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement

officials to gain cooperation of these witnesses in the future.  Further, this information could be obtained from the United States Attorney's Office.

22.    **Notes from Detective investigating case.**  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

23.    **Metropolitan Police Department Property Release (Form PD 81-C).**  This form was erroneously identified.  The document that we are trying to protect is a Metropolitan Police Department Property Record (Form PD 81).  This form lists items of evidence taken in the case which if disclosed prior to criminal trial could impede the prosecution.

24.    **Typewritten contact information.**  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

25.    **Notes on telephone messages and telephone phone numbers**.  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

26.    **Handwritten notes and business cards.**  These documents contain confidential, investigative information and/or identities, which if disclosed prior to criminal trial, could impede the prosecution.

27.    **All documents relating to Mapquest.**  These documents provide directions to the location of a search warrant, which if disclosed prior to criminal trial, could impede the prosecution.

28.    **Typewritten Event Chronology.**  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

29.    **Handwritten notes in notebook.**  This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law

enforcement officials to gain cooperation in the future. Further, some of the information contained in this record is evaluative in nature.

30. **Documents from the Federal Bureau of Investigation contained within the case file**. This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Additionally, this record was obtained by MPD from the Federal Bureau of Investigation (FBI). Disclosure of this information prior to resolution of this criminal matter could chill cooperative efforts between the FBI and MPD in future criminal investigations. Any efforts by a party in a civil matter to obtain such records should be addressed directly to the FBI.

31. **Documents from other police departments that assisted with this investigation.** These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future. Additionally, these record was obtained by MPD and other police agencies. Disclosure of these records prior to resolution of this criminal matter could chill cooperative efforts between these agencies and MPD in future criminal investigations.

32. **All documents from the Metropolitan Police Department e-team database.** These documents contain information provided by a caller reference to a suspect, which if disclosed prior to criminal trial could impede the prosecution.

33. **Metropolitan Police Department Tour of Duty Supervisor's Report (Form PD 150).** This document captures unusual or serious incidents occurring during a tour of duty. Upon further review and consideration, this document is releasable in a redacted form. The redactions pertain to information unrelated to the homicide.[2]

34. **Metropolitan Police Department PD 775 Daily Vehicle Inspection and Activity Report.** Provides time and location officer received the call for the crime which if disclosed prior to criminal trial could impede the prosecution.

35. **All COLUMBO database documents.** This record contains names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of

---

[2] On February 1, 2007, undersigned counsel provided counsel for GWU with this document and the PD 251.

law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

36. **All affidavits for arrest and search warrants.**  This information could be obtained from the United States Attorney's Office.

37. **Violent Criminal Apprehension Program (VICAP) form.**  A document that provides information on victim and suspect, which if disclosed prior to criminal trial, could impede the prosecution.

38. **All Department of Motor Vehicle records pertaining to this case.** These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, this information could be obtained from the Department of Motor Vehicles.

39. **All e-mails pertaining to this case.**  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

40. **All documents from Expedia.com.**  These records contain names of persons who cooperated in this investigation and information about the case, which if disclosed prior to criminal trial, could impede the ability of law enforcement officials to gain cooperation in the future.  Further, some of the information contained in this record is evaluative in nature.

41. **All documents from the United States Department of Defense.**  These records were obtained by MPD from the Federal Bureau of Investigation (FBI).  Disclosure of these documents prior to resolution of this criminal matter could chill cooperative efforts between the United States Department of Defense and MPD in future criminal investigations.  Any efforts by a party in a civil matter to obtain such records should be addressed directly to the United States Department of Defense.

42. **All DVDs contained within the case file.**  These two DVDs contain video footage of the "After Party at O.P.P Bhangra Blowout 12 (3/26/05) (aprx. 1hr 12 min)" which if disclosed prior to criminal trial could impede the prosecution.

43. **All documents from George Washington University contained within the case file.**  The George Washington University has access to copies of its own documents.

44. **Metropolitan Police Department Information Control Sheet.**
Document prepared by the Synchronized Operations Command Center.
The document provides information obtained from an anonymous source
about the suspect which if disclosed prior to criminal trial could impede
the prosecution.

45. **District of Columbia Alcoholic Beverage Regulation Administration
Case Report.** A case report prepared by employees of ABRA
documenting an event, which if disclosed prior to criminal trial, could
impede the prosecution.

46. **Summary Report for Homicide memorandum.** These records contain
names of persons who cooperated in this investigation and information
about the case, which if disclosed prior to criminal trial, could impede the
ability of law enforcement officials to gain cooperation in the future.
Further, some of the information contained in this record is evaluative in
nature.

As enumerated above, Chief Ramsey, through his designee, has explained with

particularity, why each category of documents requested by GWU meets the standards for

invocation of the law enforcement privileged. Therefore, GWU's arguments lack merit.

III.    Conclusion

For the foregoing reasons, the Chief Charles Ramsey respectfully requests that the Court

grant his Motion for Protective Order.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov