## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator )<br>of decedent RANJIT SINGH )<br><br>Plaintiff, )<br>v. )<br><br>SOUTH ASIAN SOCIETY )<br>OF THE GEORGE WASHINGTON )<br>UNIVERSITY, )<br>    et. al. )<br><br>Defendants. ) | Case No: 06-0574 (RMC) |

## UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S RESPONSE TO MOTION TO COMPEL ENFORCEMENT OF SUBPOENA

On September 28, 2006, the United States Department of Homeland Security, at the time, a non-party to the underlying action,[1] received a subpoena duces tecum from George Washington University ("GWU").[2] The subpoena broadly requested that DHS provide ten categories of documents related to DHS' role, if any, in providing security for a March 26-27, 2005 event at the Old Post Office Pavilion, sponsored by GWU and a GWU student organization (i.e. the South Asian Society). *Docket Entry 40, Ex. 1, Ex. A.* Specifically, the subpoena requested such documents as: (1) information regarding federal security guards working during this event (i.e. names, training, background, experience); (2) security measures, including written security plans

---

[1] On or around November 2, 2006, Plaintiff filed a second amended complaint, naming the United States as an additional defendant in the underlying action. *Docket Entry 32.* Presently, the United States' answer is due by March 5, 2007. *Minute Entry Order (February 5, 2007).*

[2] It is not entirely clear when GWU actually served the subpoena upon DHS. However, the cover letter for the subpoena reflects a date stamp of September 28, 2006.

or security assessments, in effect for the event; (3) any incident reports and investigatory files relative to any incidents that occurred during the event; (4) any sites plans, premises plans, and drawings depicting where security guards were assigned during the event, and (5) any incident reports and related documentation regarding any violence or crime at the Old Post Office Pavilion or within a two block radius in the last five years. Id. The subpoena commanded DHS to provide the requested documents by October 21, 2006. Id.

On October 20, 2006, within the time frame set by GWU, DHS responded to the subpoena, advising GWU that it "would not be appropriate to provide documents responsive to numbers 1-7 of Exhibit "A" of the subpoena." *Docket Entry 40, Ex. 3.* DHS explained that the information being sought is "law enforcement sensitive and subject to the law enforcement/investigatory files privilege." Id. With regard to GWU's requests 8-10, DHS explained that it would "attempt to locate responsive documents in order to determine if they should be made available." Id.

On December 19, 2006, GWU filed a motion to compel enforcement of the subpoena duces tecum ("motion to compel"). *Docket Entry 40.* In pertinent part, GWU makes three arguments: (1) that DHS has waived the "law enforcement" privilege; (2) that DHS cannot establish its burden that the requested documents are subject to the law enforcement privilege; and (3) that even if the law enforcement privilege applied, disclosure is still favored in this case. Id.

As discussed more fully below, DHS respectfully requests that the Court deny GWU's motion to compel.

**ARGUMENT**

## A.    THIS COURT HAS DISCRETION TO CONSIDER DEPARTMENT OF HOMELAND SECURITY'S LAW ENFORCEMENT PRIVILEGE CLAIM

GWU first argues that the Court should not even consider DHS' assertion of the law enforcement privilege. *Docket Entry 40 at 7-9.* In support of this argument, GWU relies upon Tuite v. Henry, 98 F.3d 1411 (D.C. Cir. 1996) for the proposition that the failure to raise claims of privilege within fourteen days is "fatal to the Agency's position." *Docket Entry 40 at 7.* Though DHS does not disagree that the D.C. Circuit Court in Tuite stated that "a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege within fourteen days of service...," Id. at 1416, DHS respectfully submits that GWU's motion overstates the Court's decision. In fact, far from finding that the failure to timely raise privilege claims constitutes a "fatal" waiver, this same court in Yousuf v. Mohamed Ali Samantar, 451 F.3d 248 (D.C. Cir. 2006) noted a good cause exception to this fourteen day rule.

In Yousuf, the Court held that a "district court may, 'in unusual circumstances and for good cause,' consider an untimely objection to a subpoena." Id. at 252 (citing Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996); see also Fed. R. Civ. P. 6(b) (the court for cause shown may at any time in its discretion... upon motion after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect...). The Court set forth a non-exhaustive list of factors that may guide a district court's discretion, including "whether (1) the subpoena is 'overbroad on its face and exceeds the bounds of fair discovery;' (2) the subpoenaed witness is a nonparty acting in good faith; and (3) counsel for the witness was in contact with counsel for the party issuing the subpoena prior to filing its

formal objection." <u>Yousuf</u> at 252.

In the instant case, at the time this subpoena was served and responded to, DHS was a nonparty to the underlying litigation and there is no indication that it has acted in bad faith. <u>See</u> fn 1. Though DHS did not raise its law enforcement privilege claim within fourteen days, it did respond to GWU's subpoena within the time frame commanded by GWU and it advised them of its privilege claim at that time. It also bears mentioning that GWU's subpoena was served upon the DHS's Office of General Counsel and then forwarded for processing to the U.S. Immigration and Customs Enforcement (ICE) office, a bureau within DHS, since the subpoena requested ICE records. It is believed that this transmittal of the subpoena may have also contributed to DHS's excusable neglect in timely responding and raising its privilege claim. Finally, a cursory examination of GWU's subpoena reveals that it is "broad enough at least to raise a question of overbreadth." <u>Yousuf</u> at 252.

Contrary to GWU's argument, this Court has discretion to consider DHS' law enforcement privilege claim. In light of the Court's broad discretion with regard to its time frames, DHS' excusable neglect in raising its privilege claims, and its legitimate reasons for withholding the requested documents, as discussed below, DHS submits that it would be unfair to grant GWU's motion to compel based solely upon the fact that DHS did not raise its law enforcement privilege claim within fourteen days.

**B.    THE REQUESTED DOCUMENTS ARE PROTECTED FROM DISCLOSURE BY THE LAW ENFORCEMENT PRIVILEGE**

**1.    DHS has met its burden in demonstrating the applicability of the law enforcement privilege claim**

To sustain a law enforcement privilege claim, the following three requirements must be

met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified. In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1998). Attached to this response is a declaration by John Clark, the Deputy Assistant Secretary for Operations at ICE. See attached Clark Declaration ("Clark Decl"). DHS submits that Mr. Clark's declaration satisfies its burden in demonstrating the applicability of the law enforcement privilege claim.

First, in his position as the Deputy Assistant Secretary, Mr. Clark supervises the Federal Protective Service ("FPS"), the DHS/ICE division to which the subpoena at issue relates. Clark Decl at 1-2. Mr. Clark has also been delegated the authority and responsibility by the Assistant Secretary of ICE to assert the formal claim of privilege in this case. Id. at 3. Thus, DHS has satisfied the first prong of its burden.

Second, as set forth in the declaration, Mr. Clark indicates this his statements are based on his "personal review of documents within each category of information." Clark Decl at 2-3. As such, DHS demonstrates that the assertion of the law enforcement privilege is based on his actual personal consideration and thus satisfies the second prong of its burden.

Finally, Mr. Clark's declaration sets forth in detail the specific documents that are being withheld and the applicability of the law enforcement privilege with regard to these documents. For example, regarding GWU's request for "documents showing, depicting, listing, or explaining all security measures" in place for the event, "including but not limited to any written security plan or assessment which may have been in place," as well as "[a]ll site plans, premises plans, and drawings depicting the exact area" that DHS was responsible for during the event, Mr. Clark

advises that DHS has a building security assessment of the Old Post Office Pavilion and documents detailing "post hours and location" for contracted guards at the Old Post Office Pavilion for the event.  Clark Decl at 4,7.

Regarding the building security assessment, Mr. Clark explains that the purpose of the assessment was to evaluate and if warranted, offer recommendations to improve security at the facility.  Clark Decl at 4.  He further explains that this information is privileged because it details vulnerabilities, threats, and threat identification, and existing and recommended countermeasures relating to security at the Old Post Office Pavilion.  Id.  He also expresses concern that disclosure of this information would allow persons intent on violating the law a blueprint for how to circumvent the security measures in place or exploit vulnerabilities in the facility.  Id.

Regarding the "post hours and location" documents, Mr. Clark advises that these documents describe guard post locations, times when the posts are occupied by guards, whether guards at these posts are armed, communication equipment requirements, and patrol vehicle requirements.  Clark Decl at 7.  He explains that this information is privileged because it reflects how ICE distributes its protective resources and that disclosure of this information would again allow persons to circumvent the security measures in place or exploit vulnerabilities in the facility.  Id.  He further notes that this could put both the facility in danger, as well as law enforcement personnel, and members of the public.  Id.

To highlight another example, Mr. Clark addresses GWU's request for "DHS and Federal Protective Service incident reports and investigatory files relative to the events... on March 26, 2005 and March 27, 2005."  In his declaration, Mr. Clark advises that the current status of the case is "inactive" because a current circumstance prevents further investigation at this time.

Clark Decl at 4-5. However, he notes with a change in circumstance, the investigation could be resumed. Id. He also notes that another law enforcement agency has the lead in this investigation and that it believes that agency considers the case to be an active, on-going investigation. Id.

Mr. Clark advises that this "file contains information concerning individuals who are under investigation, or who were investigated by ICE in the past, or who are suspected of violating the law; information describing the status and outcomes of checks concerning subjects in law enforcement and other databases; investigative issues; identifying information relating to law enforcement officers assigned to the case and third party witnesses; investigative plans; law enforcement database prints and codes, including records containing names, aliases, dates of birth, addresses, physical descriptions, identification numbers; investigative techniques not generally known to the public; and investigative notes from law enforcement officers." Clark Decl at 5.

He explains that the "[d]isclosure of this information would display the mental impressions of investigators conducting investigations of the subjects and other officers involved in law enforcement operations and the current stage of such investigations and operations. Clark Decl at 5. He further explains:

> Disclosure could undermine the officer's efforts in uncovering all relevant information, which would devalue the results of the investigation and negatively affect ICE's ability to take appropriate administrative or law enforcement actions." Furthermore, law enforcement operations cannot be effective if conducted in full public view. The disclosure of investigative techniques could provide guidance to suspects and potential violators concerning how to modify their behavior in order to avoid detection and to circumvent the law. Such notice and guidance could disrupt ongoing investigations and compromise or negate the very objectives of the ICE enforcement mission. If these investigative techniques and methods are revealed to the public, the techniques and

-7-

methods would have limited value in future investigations. Moreover, because of the similarities of investigative techniques and methods among federal investigative agencies, and because of the sharing of information through these law enforcement databases among federal law enforcement agencies, disclosure could potentially threaten other federal law enforcement operations outside of ICE.

Id. at 5-6.

Rather than repeat ad naseum the remaining information and explanations set forth by Mr. Clark with regard to GWU's other document requests, DHS respectfully refers the Court to Mr. Clark's attached declaration.

By and through the attached declaration, DHS submits that it has met its burden in demonstrating the applicability of the law enforcement privilege.[3]

### 2. Balancing of the competing interests militates against disclosure

GWU also argues that even if the Court were to find that the law enforcement privilege applied, the qualified nature of the privilege and a balancing of the competing interests still favors disclosure. *Docket Entry 40 at 11-18*; see In re Sealed Case at 272 (district court, in assessing the qualified law enforcement privilege, must balance the public interest in disclosure against the need of a particular litigant for access to the privileged information; district court should consider the ten factors set forth in Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973). DHS strongly disagrees with GWU's assessment of these factors and advises that the following factors in particular militate against disclosure.[4]

---

[3]As noted in the Clark declaration, DHS will shortly be providing GWU with some documents responsive to the subpoena that are not covered by the law enforcement privilege. See, e.g. Clark Decl at 8-9. In some instances, however, DHS will redact information on other grounds, such as relevance and privacy interests.

[4]DHS does not believe that factors 5, 7, and 8 are applicable in this case.

**a.    Factor 1 – The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information**

To the extent that GWU seeks documents and information that may reflect witness statements or information related to the March 27, 2005 incident at the Old Post Office Pavilion, it is not unreasonable to presume that the disclosure of such information will likely discourage citizens from giving the government such information in the future. This factor weighs against disclosure.

**b.    Factor 2 – The impact upon persons who have given information of having their identities disclosed**

Contrary to GWU's claim that this will not have any significant impact, disclosure of such information as the identities of contract security guards could expose these individuals to significant risks. See Clark Decl at 3-4. This factor weighs against disclosure.

**c.    Factor 3 – The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure**

Disclosing the type of information sought by GWU, particularly information dealing with DHS's security measures/plans and its security assessments, will have a seriously chilling effect upon DHS' ability to evaluate the effectiveness of its security personnel and program and consequently, will negatively impact any improvements in this program area. This factor strongly weighs against disclosure

**d.    Factor 6 – Whether the police investigation has been completed**

As discussed in the attached Clark declaration, though DHS currently considers this matter to be inactive, it does not consider it to be completed, noting that a change in circumstance could easily result in the investigation being resumed. Clark Decl at 4-6. DHS

also notes that another law enforcement agency has the lead in the investigation and believes that the agency considers this to be an ongoing investigation. Id. In light of the fact that the investigation for which the subpoena seeks documents is not considered closed or completed, this factor disfavors disclosure.

      e.      **Factor 9 – Whether the information sought is available through other discovery or from other sources**

See below arguments concerning this factor.

## C.    GWU'S SUBPOENA CONSTITUTES A PREMATURE DISCOVERY REQUEST

At the time that GWU issued this third party subpoena, on September 21, 2006, neither DHS nor the United States was a party to the underlying action. However, on or around November 2, 2006, the plaintiff in this matter filed a second amended complaint, naming the United States as an additional defendant. *Docket Entry 32.* In the second amended complaint, plaintiff specifically names DHS as an actor for which liability against the United States can attach. *Docket Entry 30 at ¶9.* Presently, the United States' answer to the second amended complaint is due by March 5, 2007. *Minute Entry Order (February 5, 2007).*

To the extent that the United States is now a defendant in this action, DHS respectfully argues that it should not have to respond to GWU's subpoena before the United States has even had an opportunity to file its answer to the second amended complaint. In effect, GWU's subpoena represents a premature discovery request and it has not established any basis for initiating discovery against the United States at this stage of the complaint. Moreover, based upon an initial review of plaintiff's second amended complaint, the United States believes that a dispositive motion will likely resolve any further participation by DHS and the United States in

-10-

this complaint. As such, it is not in the interests of judicial economy to compel DHS or the United States to engage in discovery at this time.

## CONCLUSION

For the foregoing reasons, DHS respectfully requests that the Court deny or quash the motion to compel.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

-11-