UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH <br><br> Plaintiff, <br><br> v. <br><br> SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY <br> et. al. <br><br> Defendants. | Case No. 06-0574 (RMC) |

## DECLARATION OF JOHN P. CLARK

I, John P. Clark, state as follows:

1.     I am the Deputy Assistant Secretary for Operations of U.S. Immigration and Customs Enforcement (ICE or Agency), a component of the Department of Homeland Security. Following the enactment of the Homeland Security Act of 2002, ICE was created from elements of several legacy agencies, including the Federal Protective Service (FPS), formerly part of the General Services Administration. FPS is currently a division of ICE. As the Deputy Assistant Secretary for Operations of ICE, I have supervisory authority over FPS. ICE is the second largest investigative agency in the

1

Federal Government. The ICE mission is to secure the homeland through the enforcement of immigration and customs laws and the protection of federal facilities.

2. FPS is responsible for policing, securing and ensuring a safe environment in which federal agencies can conduct their business. FPS does this by investigating threats posed against the more than 8,800 federal facilities nationwide. FPS' work focuses directly on the interior security of the United States and the reduction of crimes and potential threats to federal facilities throughout the United States. Uniformed FPS officers and special agents respond to calls for assistance, conduct investigations and provide crime prevention tips, as well as assist in occupant emergency planning. Furthermore, FPS enters into contracts with private companies for guard services at federal facilities. As a result, FPS provides oversight of, approximately 10,000 armed contract guards.

3. I have been informed and understand that a defendant, George Washington University (GWU), in the above-captioned case, has filed a motion to compel enforcement of a subpoena that has been served on ICE. The subpoena seeks various ICE records and information relating to the security provided at the Old Post Office Pavilion in Washington, DC, and events that occurred there on March 26, 2005, and March 27, 2005. I submit this declaration to assert a formal claim of law enforcement investigative files privilege (hereinafter "law enforcement privilege") for law enforcement materials contained in those documents in order to protect sensitive information concerning ICE security mechanisms, investigative techniques, procedures, methods, guidance, and policies, the disclosure of which is sought by defendant, GWU. I make the following statements based on my personal review of documents within each category of information described herein, the factual background of this particular case,

and upon information conveyed to me by my advisors in the course of performing my official duties. I have been delegated the authority and responsibility by the Assistant Secretary of ICE to assert a formal claim of law enforcement privilege.

4. I have been informed and understand that the GWU subpoena requests a list of "all federal security guards and agents who engaged in any type of security functions at the Old Post Office Pavilion on March 26, 2005, and March 27, 2005." See Attachment "A" of the subpoena, request number 1. ICE maintains contract guard duty registers that document the names of contract security guards acting in a law enforcement capacity and the dates and times on which they perform guard duties. ICE asserts that these duty registers, or any similar type of list, is subject to the law enforcement privilege because it would identify contract guards who have been involved in law enforcement activities relating to the protection of federal facilities. Disclosure of the identity of these contract guards would expose them to significant risks of inappropriate contact from, and threats or attempts to influence by, suspects and potential violators of the law, or others who may be attempting to circumvent the law. In this way, ICE's law enforcement processes would be compromised by the disclosure of the identity of contract security guards, many of whom may continue to work in a law enforcement capacity pursuant to contracts with ICE or other law enforcement entities. Moreover, these logs contain information that describes the arrivals and departures of guards as well as supervisory assistance available at the facility at any given time. Such information could assist someone intent on engaging in criminal activity to deduce the distribution and number of resources employed during specific time periods to provide security at the Old Post Office Pavilion.

5. I have been informed and understand that the GWU subpoena requests "documents showing, depicting, listing, or explaining security measures in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005, and March 27, 2005, including . . . any written security plan or assessment which may have been in place" as well as "site plans, premises plans, and drawings depicting the exact area that" ICE was responsible for security at the Old Post Office Pavilion on March 26, 2005, and March 27, 2005. See Attachment "A" of the subpoena, request numbers 2 and 7. ICE has conducted a building security assessment of the Old Post Office Pavilion, which was memorialized in a report that was completed prior to March 26, 2005, and March 27, 2005. The purpose of the report was to evaluate existing security and, if warranted, offer recommendations to improve security at the facility. ICE asserts that this information is subject to the law enforcement privilege because it details vulnerabilities, threats and threat identification, and existing and recommended countermeasures relating to security at the Old Post Office Pavilion – a public place that could very well be the target of terrorist attacks or other criminal activity. Disclosure of this information would provide persons intent on violating the law or engaging in terrorist activity a virtual blueprint for circumventing security mechanisms in place, and exploiting vulnerabilities at the Old Post Office Pavilion as well as other federal facilities for whom FPS may have developed similar security mechanisms based on similarities between the layout, locale and surroundings of the facilities. Accordingly, such disclosure could place members of the public, law enforcement personnel, and property in danger.

6. I have been informed and understand that the GWU subpoena requests "DHS and Federal Protective Service incident reports and investigatory files relative to the events at

4

the Old Post Office Pavilion on March 26, 2005, and March 27, 2005." See Attachment "A" of the subpoena, request number 3. ICE maintains an investigatory file regarding an incident that occurred nearby the Old Post Office Pavilion on March 27, 2005. The case status of the file is currently "inactive," from the ICE perspective. This means that a current circumstance in the matter prevents further investigation at this particular time, but that with a change in that circumstance, the investigation could be resumed. In addition, another law enforcement agency has the lead in this investigation. To the best of ICE's knowledge that agency considers this case to be "active." ICE asserts that this file is privileged because the file contains information concerning individuals who are under investigation, or who were investigated by ICE in the past, or who are suspected of violating the law; information describing the status and outcomes of checks concerning subjects in law enforcement and other databases; investigative issues; identifying information relating to law enforcement officers assigned to the case and third party witnesses; investigative plans; law enforcement database prints and codes, including records containing including names, aliases, dates of birth, addresses, physical descriptions, identification numbers; investigative techniques not generally known to the public; and investigative notes from law enforcement officers.

7.      Disclosure of this information would display the mental impressions of investigators conducting investigations of the subjects and other officers involved in law enforcement operations and the current stage of such investigations and operations. Disclosure could undermine the investigators' efforts in uncovering all relevant information, which could devalue the results of the investigation and negatively affect the ability of ICE or any other law enforcement entity involved to take appropriate

administrative or law enforcement actions. Likewise, disclosure of this information could render existing leads useless by exposing them prematurely. Furthermore, law enforcement operations cannot be effective if conducted in full public view. The disclosure of investigative techniques described in the investigative file could provide guidance to suspects and potential violators concerning how to modify their behavior in order to avoid detection and to circumvent the law. Such notice and guidance could disrupt this and other ongoing investigations and compromise or negate the very objectives of the ICE enforcement mission. If these investigative techniques and methods are revealed to the public, the techniques and methods would have limited value in future investigations. Moreover, because of the similarities of investigative techniques and methods among federal investigative agencies and other law enforcement entities, and because of the sharing of information through these law enforcement databases among federal law enforcement agencies, disclosure could potentially threaten other federal and non-federal law enforcement operations outside of ICE.

8. I have been informed and understand that the GWU subpoena requests "documents showing the training, background, and/or experience of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005, and March 27, 2005." See Attachment "A" of the subpoena, request number 5. ICE maintains records indicating whether contract guards received certification in various training areas and the dates of the certification and the expiration of such certifications. ICE has withheld this information because it contains names, and other identifying information relating to contract guards acting in a law enforcement capacity. For reasons

described in paragraph 4, above, this information is subject to the law enforcement privilege.

9. I have been informed and understand that the GWU subpoena requests "documents showing the duties and responsibilities of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005, and March 27, 2005, including documents showing where these individuals were deployed on these dates." See Attachment "A" of the subpoena, request number 6. ICE and SecTek, Inc., entered into a contract for guard services at the Old Post Office Pavilion. The contract contains information detailing the "post hours and location" of guards at the Old Post Office Pavilion, and other "productive requirements." Among other things, these documents describe guard post locations, the times in which the posts are occupied by guards, whether the guards at these posts are armed, communication equipment requirements, and patrol vehicle requirements. ICE asserts that this information is subject to the law enforcement privilege because it shows how ICE distributes its protective resources and the security mechanisms in place at the Old Post Office Pavilion. Disclosure of this information would allow persons intent on violating the law to circumvent the security measures employed at the Old Post Office Pavilion and disrupt communications between security personnel. This would place in danger, not only the facility itself, but law enforcement personnel and members of the public. Information contained in the contract that is not privileged or otherwise protected, will be provided to GWU.

10. I have been informed and understand that the GWU subpoena seeks "any agreements, authorizations, and other documents authorizing SecTek, Inc., or any other

entity to provide security at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005, and March 27, 2005." See Attachment "A" of the subpoena, request number 8. As discussed in paragraph 9, above, ICE entered into a contract with SecTek, Inc., for guard services at the Old Post Office Pavilion. ICE asserts that, in addition to the information described in paragraph 8, above, the contract contains other information subject to the law enforcement privilege. ICE asserts that this information is privileged because it describes resource distribution and sets forth the number of guards dedicated to security services at the Old Post Office Pavilion at specified time periods. In addition, the contract file contains an internal DHS policy that provides specific instructions on identifying items that are prohibited from being brought onto the facility and courses of action to be taken in the event a member of the public attempts to enter the facility carrying such an item. Disclosure of this information would allow persons intent on violating the law to circumvent the security measures employed at the Old Post Office Pavilion in order to smuggle prohibited items into the facility. This would place in danger, not only the facility itself, but law enforcement personnel and members of the public. Information contained in the contract that is not privileged or otherwise protected, will be provided to GWU.

11. I have been informed and understand that the GWU subpoena requests reports "regarding any violence or crime at the Old Post Office Pavilion within two blocks of the Old Post Office Pavilion in the last five years." See Attachment "A" of the subpoena, request number 10. ICE maintains documents known as "Offense/Incident Reports." Among other things, these reports contain the names, badge numbers, and other identifying information of law enforcement officers and contract guards acting in a law

enforcement capacity. ICE asserts that such information is subject to the law enforcement privilege and has redacted that information from the reports because this information would identify law enforcement officers who have been involved in investigative, protective, or other law enforcement activities. Disclosure of the identity of the names and other identifying information of law enforcement officers would expose them to significant risks of inappropriate contact from and threats or attempts to influence by suspects and potential violators, or others who may be attempting to circumvent the law. In this way, ICE law enforcement processes would be compromised by the disclosure of this information. Information contained in the reports that is not privileged, or otherwise protected, will be provided to GWU.

12. A protective order allowing ICE to reveal this information to GWU is not acceptable for the reasons outlined above and for the following additional reasons. Possible sanctions for a party's violation of a protective order in this case are not nearly commensurate with the damage to ICE's law enforcement mission if this information were revealed beyond this case. The safety of the law enforcement officers involved in ICE's investigations and implementation of security measures, as well as the safety of the general public served by ICE, would be placed in jeopardy as a result of such a disclosure, even if under a protective order. A sanction from this Court for a violation by the plaintiffs of the protective order would not remedy the disruption and serious injury to ongoing investigations and serious injury to the results of prior investigations, and compromise of security measures, caused by the disclosure of ICE's use of these investigative techniques, methods, and security measures. Likewise, with respect to the security assessment and documents detailing the post hours and location of guard at that

9

site of the Old Post Office Pavilion, it is important to note that the Old Post Office Building, a federal property that serves as both a shopping center and a tourist attraction, is frequented by members of the public and could be the target of a terrorist attack or other criminal activity. For reasons described above, the disclosure of this information could result, not only in the destruction of federal property, but would also endanger law enforcement personnel and members of the public.

13.     Moreover, even the inadvertent disclosure of such privileged information by the defendant, GWU, creates the risk of compromising investigative techniques, security methods, and ongoing and future investigations. This defendant, a university, may not have the expertise and knowledge of law enforcement and investigative processes, techniques, and methods to enable it to understand and identify the sensitive nature of the information claimed herein as protected by the law enforcement privilege. This defendant, most likely, would want to share this information with its experts, consultants, employees, and potential witnesses in preparation for this case. Without having the expertise to understand and identify the privilege information, the defendant or the defendant's witnesses, consultants or employees could inadvertently disclose material that would be covered by a protective order without realizing that they had improperly disclosed information. This risk of disruption and serious injury to ongoing investigations and serious injury to the results of prior investigations that would be caused by the even inadvertent revelation of ICE's use of these investigative techniques and methods is unacceptable for the reasons stated above.

14. Having personally reviewed documents within each category of information described above, and for the reasons stated above, I hereby assert the law enforcement privilege, for all documents described in this declaration.

15. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED at Washington, D.C. this 16th day of February, 2007.

_[signature]_
John P. Clark, Deputy Assistant Secretary
U.S. Immigration and Customs Enforcement
United States Department of Homeland Security
425 I St., N.W.
Washington, D.C. 20536