IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH, | ) ) ) |
| Plaintiff, | ) Civil Action No. 06-00574 (RMC) ) |
| vs. | ) ) |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, THE GEORGE WASHINGTON UNIVERSITY, FALCON SECURITY CORPORATION, UNITED STATES OF AMERICA, HILL PARTNERS, INC., and SECTEK, INC., | ) ) Next Scheduled Event: None ) ) ) ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF
THE GEORGE WASHINGTON UNIVERSITY'S
MOTION TO COMPEL ENFORCEMENT OF DHS SUBPOENA**

Defendant, The George Washington University, by and through their undersigned attorneys, hereby files this reply in support of the pending motion to compel enforcement of the subpoena served upon the U.S. Department of Homeland Security ("DHS"), by stating as follows:

**REPLY ARGUMENT**

**POINT I**

**NO "UNUSUAL CIRCUMSTANCES" OR "GOOD CAUSE"
EXISTS FOR FAILURE TO TIMELY RAISE
THE LAW ENFORCEMENT PRIVILEGE**

In Opposition, DHS now concedes that it did not – in fact – properly raise the "law enforcement privilege" by timely asserting it within the fourteen day time frame mandated by the

1

federal rules and this Circuit in <u>Tuite v. Henry</u>, 98 F.3d 1411 (D.C. Cir. 1996)(*See* Opp, p. 4, "..DHS did not raise its law enforcement privilege claim within fourteen days...").  DHS also does not contest that the failure to timely raise the privilege operates as a waiver.  Nevertheless, DHS asks that this Court exercise discretion and make a finding of what it deems "excusable neglect" on the part of the Agency for failing to timely raise the privilege. (Opp., pp. 3-4).  Relying on <u>Yousuf v. Mohamed Ali Samantar</u>, 451 F.3d 248 (D.C. Cir. 2006), DHS notes that there is a 'good cause' exception to the waiver rule, and states that this Court should overlook the waiver in this case.  The circumstances in <u>Yousuf</u>, however, are markedly different than those that are presently before the Court.

    In <u>Yousuf</u>, a group of Somali nationals instituted suit under the Torture Victims Protection Act against officials in the Somali government.  During discovery, the plaintiffs issued a subpoena to the State Department which was clearly overbroad and overreaching, seeking such information as "human rights abuses" by the Somali government, documents which demonstrated the "interaction" between the U.S. government and the Somali regime, and information pertaining to the "structure and organization" of the entire Somali government, it's political system and armed forces. <u>Id</u>. at 251.  In addition, the plaintiffs' served the subpoena to the State Department in the midst of the holiday season on December 22, 2004, and it was not received until January 13, 2005.  Immediately after receiving the subpoena, counsel for the State Department had a telephone conversation with plaintiffs counsel and filed written objections on January 14, 2005, one day later. <u>Id</u>.  Plaintiffs thereafter moved to compel which was denied by

the District Court. On appeal, plaintiffs argued – *inter alia*– that the State Department had forfeited their objections to the subpoena by failing to raise them timely, which was not in dispute. The Court of Appeals for the District of Columbia Circuit ultimately upheld the lower court's decision.

In it's ruling, the Court of Appeals acknowledged that the State Department had failed to file timely objections to the subpoena within fourteen days, but nevertheless upheld the lower Court's decision to set-aside the waiver. In so ruling, the Court of Appeals noted that "in unusual circumstances and for good cause shown," a District Court can consider an untimely objection to a subpoena. Id. at 252. When such an issue arises, the Court of Appeals noted that certain factors can assist a Court in exercising discretion on the waiver issue, such as (1) whether the subpoena is overbroad on its face and exceeds the fair bounds of discovery, (2) whether the subpoenaed witness is a non-party acting in good faith, and (3) whether the subpoenaed witness was in contact with the party issuing the subpoena prior to filing objections. Id. at 253. Given that counsel for the State Department acted in good faith by contacting plaintiffs immediately after receiving the subpoena, filed objections the next day, and considering the apparent "overbreadth" of the subpoena itself, the Court of Appeals upheld the lower court's decision to consider the objections even though untimely. Id.

In the instant case, no such "unusual circumstances" exist. The University in this case served a subpoena to the DHS Office of General Counsel on September 22, 2006. (Reply Ex. 1). Unlike the State Department in Yousuf, the DHS has never served written objections or

attempted to call counsel for the University until it took final agency action by letter dated October 20, 2006, nearly a month later.[1] In an attempt to establish 'unusual circumstances' and 'good cause' for failing to timely raise objections, DHS notes in Opposition that the subpoena was served upon the "DHS's Office of General Counsel" instead of the Immigrations and Customs Enforcement (ICE), notwithstanding the fact that ICE is an internal bureau within DHS. (Opp., p. 4). This excuse, however, is not well founded, particularly since the Agency's own regulations require service upon the Office of General Counsel. DHS regulations provide, in no uncertain terms, that:

> "Only the Office of the General Counsel is authorized to receive and accept on behalf of the Department summons or complaints sought to be served upon the Department... All such documents should be delivered or addressed to the Office of the General Counsel, Department of Homeland Security, Washington, DC, 20258."

6 C.F.R. § 5.42(a).

For obvious reasons, it is disingenuous for DHS to complain about service of the subpoena as grounds for 'excusable neglect' where the University complied with the Agency's *own* specific regulations in this regard.

---

[1] In fact, the University's first notice that DHS was even raising the law enforcement privilege as a basis to deny production was in its letter of October 20, 2006, which constituted final agency action. (*See* Def's Mot., Ex. 3).

DHS alternatively asserts that the Court should consider the untimely objections because the University's subpoena is 'broad enough to raise a question of overbreadth.' (Opp., p. 4). The question, however, is whether the University's subpoena is so overbroad on its face as to "exceed the bounds of fair discovery." <u>Yousuf</u>, 451 F.3d at 252. This is decided not the case. Even a cursory review of the University's subpoena demonstrates that the documents sought of the Agency are narrowly tailored in scope and time frame, highly relevant, and pertain primarily to the events of March 26, 2005 and March 27, 2005. (Def's Mot., Ex. 1). And as more thoroughly discussed in the University's motion to compel, the information sought pertains to the central issues in this case. As this Court is aware, Plaintiffs primary theory of recovery against the University and all other Defendants is that of negligence based on allegations of inadequate security measures and supervision of security at the Old Post Office Pavilion on the night in question. DHS has confirmed in Opposition that it did employ security guards during the event and undertook other security measures. Hence, the University's request for the identification, duties and experience of those guards, documents detailing security on the night in question, incident reports, and site plans showing where the DHS guards were responsible for providing security on the night of the event are by no means so overbroad as to exceed the bounds of fair discovery.

In all, DHS has not advanced "unusual circumstances" or "good cause" for failing to file timely objections and raise the alleged law enforcement privilege. The motion to compel should be granted on this basis alone.

## POINT II

## DHS HAS FAILED TO ESTABLISH THAT THE LAW ENFORCEMENT PRIVILEGE APPLIES TO ALL DOCUMENTS IN THE AGENCY'S POSSESSION

A.   Documents at Issue

In its Opposition and supporting declaration of John P. Clark, DHS has confirmed that it is in possession of the following documents responsive to the University's subpoena:

1. <u>Contract Guard Duty Registers</u>– Contains names of contract security guards and dates and times duties are performed. (Decl. Clark, ¶ 4);

2. <u>Building Security Assessment</u>- A building security assessment of the Old Post Office Pavilion done prior to March 26, 2005 which evaluates security and gives recommendations to improve security. (Decl Clark, ¶ 5);

3. <u>Investigatory File</u>– Mr. Clark confirms that there is an investigatory file pertaining to the events of March 26, 2005 which is currently "inactive." (Decl. Clark, ¶ 6);

4. <u>Training Certifications</u>– Contract guard certifications exist denoting the types of training given to guards, and the dates of certification and expiration of such certifications. (Decl. Clark, ¶ 8);

5. <u>Contract with SecTek</u>- There exists a contract for security guard services between DHS (through Immigration and Customs Enforcement) and SecTek, Inc., which is a co-Defendant in this lawsuit.  The contract denotes post hours and locations of contract guards, and other information such as communication and patrol vehicle requirements. (Decl. Clark, ¶ 9);

6. <u>Internal DHS Policy</u>– The contract with SecTek contains an internal DHS policy containing prohibitions on items which may not be brought onto the Old Post Office Pavilion and procedures to deal with them. (Decl. Clark, ¶ 10);

7. <u>Offense/Incident Reports</u>– Contains names of law enforcement officers and contract guards who have been involved in other violent incidents at or around the Old Post Office Pavilion in the last five years. (Decl. Clark, ¶ 11).

B.  The DHS Failed to Demonstrate
    that the Law Enforcement Privilege Applies

All parties agree that the proponent of a privilege bears the burden of demonstrating *facts* sufficient to establish the applicability of a privilege. In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006). DHS apparently does not dispute that its final agency action – which is the subject of this motion– is insufficient to support invocation of the law enforcement privilege in this case. In fact, nothing in the Agency's letter of October 20, 2006 even explains which documents do or do not exist, let alone how the documents may be subject to the law enforcement privilege. (*See* Def's Mot., Ex. 3, Letter 10/20/06). In what is best described as an attempt to cure these deficiencies, DHS has appended the declaration of John P. Clark, a Deputy Assistant Secretary, which identifies various documents that the Agency possesses along with Mr. Clark's unsupported beliefs of how the law enforcement privilege applies and the risks attendant with the production of the documents at issue.

DHS correctly notes that to establish the applicability of the privilege, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1998). As to the first two factors, absent discovery, the University has no information to challenge the assertion by DHS that John Clark has "been delegated the authority and responsibility... to assert the formal claim of privilege in this case," or

that he personally reviewed the documents at issue. (Opp., p. 5).[2]  With regard to the last factor, however, the University maintains that the declaration of Mr. Clark setting forth his conclusory assertions that the law enforcement privilege applies is insufficient to discharge the DHS's burden.

Without limitation, the attempt by DHS to invoke the law enforcement privilege as blanket coverage over all the documents at issue is overreaching, to say the least.  By design, the law enforcement investigatory privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement" and to "preserve the integrity of law enforcement techniques." Tri-State Hosp. Supply Corp. v. U.S., 2006 U.S. Dist. Lexis 68168 (D.D.C. Sept. 25, 2006)(*See* Def's Mot. to Compel, Ex. 2). Whether a document is factual or evaluative in nature is an important consideration in the applicability of this privilege. Waters v. U.S. Capitol Police Bd., 218 F.R.D. 323 (D.D.C. 2003).  Furthermore, the deliberative process privilege does not apply to documents that speak to a particular investigation, but rather a policy that applies to all cases of a particular nature. Id.

While it is conceivable that the law enforcement privilege would cover evaluative items such as the building security assessment (Item 2) and the internal DHS policy (Item 6), DHS has no good faith basis for attempting to assert privilege over the names of the contract guards who worked on March 26, 2005 and March 27, 2005, let alone the past investigatory files, other

---

[2]  However, it remains an open question as to whether Mr. Clark, is, in fact, the head of the department having control over the requested information.  The Opposition states only that he is a Deputy Assistant Secretary who supervises the Federal Protective Service. (Opp., p. 5).

offense and incident reports, and the contract with SecTek in this case. Furthermore, it is far from certain that DHS can even attempt to invoke this privilege, particularly in light of the admissions from Mr. Clark that another agency is taking the lead on the investigation into the crime at issue in this case[3], and that the Agency's file is currently "inactive." (Decl. Clark, ¶ 6). In all, DHS has failed to establish that the privilege applies to all documents with the "reasonable certainty" requirement set forth in In re Subpoena Duces Tecum, 439 F.3d 740 (D.C. Cir. 2006), and the assertion of privilege must additionally fail on this basis.

## POINT III

### A BALANCING OF THE FACTORS GOVERNING THE QUALIFIED LAW ENFORCEMENT PRIVILEGE STRONGLY FAVORS DISCLOSURE

Even if the Court is satisfied that DHS has made a showing that the law enforcement privilege covers the information at issue, a balancing of the equities still strongly favors disclosure of the documents. In Opposition, DHS attempts to put its own unique spin on the weight and applicability of the ten-factor test espoused in In Re Sealed Case, 856 F.2d 286 (D.C. Cir. 1988)(See Opp., pp. 9-10). Notably, however, DHS does not even contest that at least half of the factors weigh strongly in favor of disclosure. Id. DHS therefore concedes that the information in its possession is more factual than evaluative in nature (Factor 4); that the party seeking discovery is not a potential defendant in a criminal inquiry (Factor 5); that no interdepartmental disciplinary proceedings are at issue (Factor 7); that Plaintiffs have certified

---

[3] The "other" agency is presumed to be the District of Columbia Metropolitan Police Department.

under Rule 11 that the instant suit is non-frivolous (Factor 8); and – *most importantly*– that the information sought is highly important and probative to the claims and defenses in this case (Factor 10).   This, in and of itself, favors disclosure.

In Opposition, DHS relies upon the declaration of Mr. Clark to again assert in conclusory fashion that the disclosure of the documents at issue could expose the security guards who worked at the event in question to considerable risk if their identities are revealed, and further could have a chilling effect on the Agency's ability to evaluate the effectiveness of its security personnel. (Opp., p. 9). Mr. Clark's declaration also resorts to the hyperbole of a potential "terrorist attack" as grounds for withholding disclosure of the documents at issue.  (Decl. Clark, ¶ 12).  At the risk of stating the obvious, DHS is taking great liberty in terms of the threat posed to the public which would result from disclosure of documents which do little more than give the identity and training background of security guards who may be witnesses in this case, as well as other incident and investigatory summaries which are factual in nature and would shed considerable light on the evening of March 26, 2005.

In all, a balancing of the equities and weighing of the factors strongly favors disclosure. The University's motion to compel must be granted.

## POINT IV

### THE RECENT ADDITION OF THE U.S. GOVERNMENT AS A DEFENDANT DOES NOT INVALIDATE THE SUBPOENA

Finally, the University takes issue with the suggestion by DHS that the subpoena in question is now tantamount to a premature discovery request.  By way of background, the

University served the instant subpoena to DHS on September 22, 2006. No objections were filed, nor did the Agency at any time seek protective relief, prompting the University to file a motion to compel on December 19, 2006. In the interim, the United States government was added as a party defendant to this matter, and DHS obtained two separate extensions to oppose the motion to compel before finally filing an Opposition on February 16, 2007. Although DHS has not been specifically named as a party defendant in this case, it nevertheless takes the disingenuous position that the addition of the United States government means that it should not have to comply with a properly served subpoena. This Court need not be swayed. DHS has not asserted a single authority as to why the late inclusion of the United States government would absolve them of the responsibility to comply with a subpoena properly served last September.

Whether or not DHS ultimately believes that a dispositive motion will resolve their further participation in this case is further irrelevant. (Opp., pp. 10-11). It is worth noting, however, that if DHS could avoid complying with a subpoena on this basis, the issue would likely nevertheless come before the Court again once written discovery commenced following the entry of a new scheduling order. In the interim, the United States government would be the only party with access to these records. These delaying tactics are completely irrelevant to the present motion.

**CONCLUSION**

For the foregoing reasons, the University respectfully requests that it's Motion to Compel and Enforce the Subpoena Served Upon the Department of Homeland Security be **GRANTED**.

Respectfully submitted,

**HAMILTON, ALTMAN, CANALE & DILLON, LLC**

BY: /s/
_____
Steven Hamilton, Esquire
Bar No. 953539
4600 East West Highway
Suite 201
Bethesda, MD  20814
(301) 652-7332
**ATTORNEYS FOR DEFENDANTS**
The George Washington University
South Asian Society

And

/s/
_____
Timothy W. Romberger, Esq.
D.C. Bar No. 458225
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C.  20036
(202) 248-5053
**ATTORNEY FOR DEFENDANTS**
The George Washington University
South Asian Society

Dated:   February 23, 2007