UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GURPAL SINGH, Administrator<br>of decedent RANJIT SINGH<br><br>Plaintiff,<br>v.<br><br>SOUTH ASIAN SOCIETY<br>OF THE GEORGE WASHINGTON<br>UNIVERSITY,<br>et. al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 06-0574 (RMC) |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant United States, through counsel, respectfully moves this Court to dismiss Plaintiff's second amended complaint as to Defendant United States. In support of this motion, Defendant respectfully refers the Court to the attached Memorandum of Points and Authorities. Defendant also includes a proposed Order providing the relief sought. Because this is a dispositive motion, the undersigned has not sought Plaintiffs' consent before filing it. LCvR 7 (m).

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG

Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GURPAL SINGH, Administrator of decedent RANJIT SINGH<br><br>Plaintiff,<br><br>v.<br><br>SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, et. al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No: 06-0574 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

### INTRODUCTION

In March, 2005, the South Asian Society ("SAS"), a student organization of the George Washington University ("GWU") sponsored its annual "Banghra Blowout" after-party at the Old Post Office Pavilion in Washington, D.C. *Second Amended Compl.* at ¶9. Twenty-year old Ranjit Singh of Phillipsburg, New Jersey attended this event with several of his friends. *Second Amended Compl.* at ¶13. Sometime after the event ended at 2:00AM on Saturday, March 27, 2005, Mr. Singh and his friends exited the Old Post Office Pavilion where they were confronted by an individual. Id. As they proceeded down the sidewalk, Mr. Singh and two friends were stabbed by this individual. Id. Mr. Singh was taken to GWU Hospital where he was pronounced dead at 3:20AM. Id.

Plaintiffs Gurpal Singh as administrator of decedent Ranjit Singh, Gurpal Singh as father of Ranjit Singh, and Kulwinder Kaur as mother of Ranjit Singh, bring this action against GWU,

SAS, Falcon Security Corp., Hill Partners, Inc, SecTek, Inc., and the United States. *Second Amended Comp.* at ¶¶ 2-8. In pertinent part, Plaintiffs allege negligence and wrongful death claims against the named defendants for failing to provide a "reasonable level of security to persons exiting the event" and for "negligently select[ing], retain[ing] and supervis[ing] Sec Tec Inc," a private security company that provided security guards during the event. Id. at ¶¶ 16-18, 20-21, 27-28.[1] Among other things, Plaintiffs allege that they suffered the loss of Ranjit Singh's "future earnings, services and assistance, and other pecuniary benefit which they would have derived had the decedent survived." Id. at ¶ 28. Plaintiffs seek compensatory damages in the amount of $2,000,000.00, costs, and other appropriate relief.

As set forth below, Plaintiffs' FTCA claims against the United States are barred by the independent contractor and discretionary function exceptions and must be dismissed for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6). Also, to the extent that Plaintiffs' complaint seeks any relief on behalf of Plaintiffs Gurpal Singh and Kulwinder Kaur as the parents of Ranjit Singh, their complaint must be dismissed for failure to exhaust administrative remedies. Finally, Plaintiffs' claim of negligent selection, retention, and supervision must also be dismissed for failure to exhaust administrative remedies.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power

---

[1] Defendant United States believes that it is undisputed that GWU and/or SAS hired Falcon Security Corp. and that Plaintiffs are not alleging any negligence against the United States with regards to any security decisions made by Falcon or for the selection, retention, and supervision of Falcon. *See Second Amended Compl. at ¶20.*

2

authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. Of Am</u>, 511 U.S. 375, 377 (1994). To carry its burden of establishing jurisdiction, a plaintiff must "establish the Court's subject matter jurisdiction by a preponderance of the evidence." <u>Asemani v. United States</u>, 2005 WL 975635, *2 (D.D.C. Apr. 21, 2005); <u>Malewicz v. City of Amsterdam</u>, 362 F.Supp.2d 298, 305 (D.D.C. 2005).

      <u>Fed. R. Civ. P. 12(b)(1)</u>: A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. <u>Herbert v. National Academy of Science</u>, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. <u>Id</u>.

      <u>Fed. R. Civ. P. 12(b)(6)</u>: In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. <u>Sullivan-Obst v. Powell, Secretary, Department of State</u>, 300 F.Supp.2d 85, 91 (D.D.C. 2004). Therefore, the complaint will be dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. <u>Id.</u> Finally, while "many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." <u>Id</u>.

## BACKGROUND FACTS

**I.    Hill Partners Manages the Old Post Office Pavilion as an Independent Contractor**

      The Old Post Office Pavilion is a building owned by the General Services Administration

3

("GSA"). In 2001, at the time that GSA purchased the building, the facility was managed

pursuant to a property management agreement (PMA) between the previous owner, Collins

Equities, Inc., and Hill Partners, Inc. ("Hill Partners"), a private company hired to independently

manage the facility. When GSA purchased the facility, it also assumed the PMA with Hill

Partners. *Attachment 1.*

This PMA clearly establishes Hill Partners as an independent contractor. For example,

the Recitals section of the PMA states that, "Owner desires to have available to it the real estate

management services of the Manager as a common law independent contractor." *Attachment 1.*

Furthermore, the PMA states that "Manager shall not be an agent or employee of Owner..."

*Attachment 1* at ¶ 1. In discussing Hill Partner's employees, the PMA states that, "Since this

Agreement is not one of agency by Manager for Owner but one with Manager engaged

independently in the business of managing properties on its own behalf, all employment

arrangements are therefore solely Manager's concern..." *Attachment 1* at ¶ 4(k). Lastly, the

PMA states that, "Notwithstanding anything to the contrary, which may be contained herein,

Manager is and shall be construed for all purposes as an independent contractor and not as an

employee of Owner." *Attachment 1* at ¶ 13.

Under the PMA, Hill Partners is required to provide certain "Customary Services,"

including security and guard services. *Attachment 1* at ¶ 4(h). When contracting for such

services, the PMA authorizes Hill Partners to "contract in the name of the Property or [sic] upon

the prior written consent of Owner, in the name of Owner, and pay for all services..."

*Attachment 1* at ¶ 4(h). Furthermore, as part of its "Management Functions," Hill Partners is

required to "[s]upervise the persons or entities providing Customary Services pursuant to

Paragraph 4(h) hereto." *Attachment 1* at ¶ 4(f)(iv). Thus, the PMA requires Hill Partners to

4

provide security and to supervise those personnel.

## II.  Security for the GWU/SAS Bhangra Blowout Event was Provided by GWU, SAS, Falcon Security, Inc., Hill Partners, Inc., and SecTek, Inc.

On March 15, 2005, GSA as the Licensor entered into a Special Event License Agreement ("Licensing Agreement") with GWU as the Licensee that permitted GWU and SAS to use the Old Post Office Pavilion for a special event on March 26–27, 2005. *Attachment 2*. The event was entitled the Bhangra Blowout after party and would be held at the Old Post Office Pavilion from 9:00PM through 2:00AM, outside of the facility's normal operational hours.

With regards to security for this GWU/SAS Bhangra Blowout event, the Licensing Agreement required the following:

> The Licensed Area shall be clearly marked off by Property Manager and barriers to the other areas of the Center shall be installed and maintained by the Property Manager during each Special Event, and Licensor shall, at the expense of Licensee, to the extent deemed appropriate by Property Manager, monitor said barriers with guards to prevent unauthorized persons from entering areas of the Center not included within the Licensed Area and provide other security measures deemed appropriate by the Property Manager.

*Attachment 2* at ¶ 8.C. Thus, consistent with the PMA between GSA and Hill Partners, the Licensing Agreement for the GWU/SAS Bhangra Blowout event conferred responsibility and discretion for determining the appropriate security measures for the event upon the property manager Hill Partners.

On March 14, 2005, Rodney Dyer, Hill Partners' on-site general manager at the Old Post Office Pavilion for the past fifteen years, sent an e-mail to Lieutenant Louis Gross of Sec Tek, Inc. (a private security company with a GSA schedule contract) asking him to "review the following security request and make any changes before [ ] forward[ing] to DHS." *Attachment 3*. In the e-mail, Mr. Dyer identified the following security needs for the GWU/SAS Bhangra Blowout event:

5

Penn. Ave. Entrance – 3 guards, 9:00pm to 2:30am = 16.5 hrs.
12 Street/South Plaza – 3 guards, 9:00pm to 2:30am = 16.5 hrs.
Roaming Security – 7 guards, 9:00pm to 2:30am = 38.5 hrs.
Load Out – 1 guard, 12 midnight to 6:00am = 6 hrs.

The following day, Mr. Dyer then forwarded the March 14, 2005 e-mail to Linda Jackson with

the Department of Homeland Security ("DHS") with a message requesting "an RWA for the

event at the Old Post Office Pavilion." *Attachment* 3. DHS processed the RWA on March 18,

2005.[2] *Attachment* 4.

On the night of the GWU/SAS Bhangra Blowout event, SecTek, Inc. provided the

fourteen, armed security personnel requested by Hill Partners. GWU paid for an additional

thirty, unarmed security personnel comprised of private contract guards from Falcon Security

and GWU employees. *Attachment 5.* SecTek, Inc. personnel operated the metal detectors and x-

ray machines, the Falcon Security personnel patrolled the floors and stairs, and GWU personnel

checked identification at the 11th and 12th Street plazas. Id.

As discussed above and in Plaintiffs' second amended complaint, Ranjit Singh, one of

the attendees at this event and the Plaintiffs' son, was stabbed by an assailant after he and his

friends exited the Old Post Office Pavilion after the event ended. *Second Amended Compl. at*

¶17. According to one witness, the stabbing of Mr. Singh occurred at 11th and Pennsylvania,

NW. *Attachment 5.* Mr. Singh was taken to GWU Hospital where he was pronounced dead at

3:20AM. Id.

---

[2]RWA is an acronym for reimbursable work authorization. SecTek, Inc. is a private security
company that was contracted by DHS in 2003 to provide security services at the Old Office
Pavilion during normal operational hours. However, SecTek guards are available to Hill
Partners for special events such as the Bhangra Blowout, subject to an approved RWA through
DHS.

III.    **Plaintiffs' Administrative Tort Claim**

On or around March 26, 2006, Gurpal Singh as representative of Ranjit Singh ("Claimant") filed an administrative tort claim with the GSA, recounting the stabbing incident outside the Old Post Office Pavilion and alleging that the "GSA is responsible for security practices on their property and was negligent." *Attachment 6.* The tort claim did not indicate that it was being brought on behalf of Gurpal Singh or Kulwinder Kaur as the father and mother, respectively, of Ranjit Singh. Id.

In a letter from counsel, Claimant Singh later supplemented the administrative tort claim with some additional information. *Attachment 7.* Specifically, he alleged that it was the duty of GSA "to supply a security detail at all the exits the night that the murder took place" and that the "lack of security was negligent." Id. He also included a copy of the first amended complaint, however, the complaint did not name the United States or any federal Agency as a party, nor did it set forth any allegations against the United States or any federal employees. *See Docket Entry 20.* Notably, at no point during the administrative tort claim process did Claimant Singh raise any claim against the GSA alleging negligent selection, retention, or supervision of security company SecTek, Inc. *Attachments 6 and 7.* On September 27, 2006, GSA denied the claim, advising that there "is no evidence that any employee of the General Services Administration [ ] was negligent." *Attachment 8.*

## ARGUMENT

I.    **Plaintiffs' Claims Against the United States are Barred by the "Independent Contractor" Exception**

Subject matter jurisdiction has not been established against the United States because it cannot be sued for the tortious acts of its contractors. The United States, as sovereign, is

immune from suit except as it consents to be sued. FDIC v. Meyer, 510 U.S. 471, 474 (1994); United States v. Sherwood, 312 U.S. 584 (1971). Through Congress, it may define the terms and conditions upon which it may be sued. Honda v. Clark, 386 U.S. 484, 501 (1967); Soriano v. United States, 352 U.S. 270 (1957). In enacting the FTCA, Congress granted a limited surrender of the sovereign immunity of the United States. United States v. Orleans, 425 U.S. 807, 813 (1976).

The FTCA grants district courts jurisdiction over claims against the United States for damages for personal injury, property damage or death caused by the negligent or wrongful act or omission of a *government employee* acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346 (b). The waiver of sovereign immunity is strictly construed and is limited by the terms and conditions attached to the waiver. If a plaintiff does not comply with the conditions attached to the waiver, sovereign immunity is not waived, and the claim is barred. United States v. Kubrick, 444 U.S. 111, 117-18, n. 10 (1979).

By its own terms, the FTCA waives the sovereign immunity of the United States only for claims resulting from the negligent or wrongful omissions of federal agencies or "employees of the government." 28 U.S.C. §§ 1346(b) and 2671. See Orleans, 425 U.S. at 814-15. The FTCA does not waive liability for torts committed by contractors with the United States. The FTCA, in fact, defines the terms "federal agency" and "employee" to exclude "any contractor with the United States." 28 U.S.C. § 2671.

The issue of whether a contractor relationship exists, thereby barring liability under the FTCA, is a matter of federal law. Orleans, 425 U.S. at 814. This determination turns, at least in

8

part, upon the right of the United States "to control the detailed physical performance of the

contractor," Logue v. United States, 412 U.S. 521, 528 (1971), and on "whether [the

contractor's] day-to-day operations are supervised by the Federal government." Orleans, 425

U.S. at 815.  See also Cannon v. United States, 645 F.2d 1128, 1132-35 (D.C. Cir. 1981).

Although the United States may enter into a contract to obtain or ensure compliance with federal

goals, that contractual relationship does *not* transform the acts of contractor into federal acts for

which liability may be imposed against the United States under the FTCA.  See Orleans, 425

U.S. at 815-16.  If that were not the case, the established concepts of master and servant

relationships would be distorted and federal liability under the FTCA would be extended beyond

Congress' intended waiver of sovereign immunity.  Id. at 819.

    Allegations that a contractor was required to comply with detailed regulations,

specifications or standards in performing the work do not establish that the United States

supervised the contractor's day-to-day operations or controlled the detailed physical

performance of the contractor's work, and do not, standing alone, vitiate the contractor

exclusion.  Logue, 412 U.S. at 529-30; Orleans, 425 U.S. at 817-18; Macharia v. United States,

334 F.3d 61 (D.C. Cir. 2003).  See also Cooper v. United States, 225 F. Supp.2d 1, 4 (D.D.C.

2002) ("[C]ourts have allowed the government extensive flexibility in the amount of supervision

it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the

United States.").  Absent a showing of day-to-day supervision or a right of control by the United

States, the United States is not liable for the torts committed by the contractor or its employees.

    In the instant case, the Plaintiffs' complaint centers around their claim that the party or

parties responsible for providing security during the GWU/SAS Bhangra Blowout event were

negligent in failing "to station security guards at the exits to help ensure that the persons leaving

the event were able to do so in an orderly and peaceful manner." *Second Amended Compl.* at

¶16. Plaintiffs also claim that the party or parties responsible for the selection, retention, and

supervision of security services companies Falcon Security, Inc. and SecTek, Inc. for this event

were also negligent.[3] *Second Amended Compl.* at ¶20. In their complaint, Plaintiffs aver that

Hill Partners was responsible for providing security services during event:

> Hill Partners Inc. upon information and belief, pursuant to a contract with the building owners, provided property management services at the Old Post Office Pavilion on March 26-27, 2005. Included in these services, was the provision of security at the building on these dates. Hill Partners, Inc made decisions regarding the number and type of security officers to be employed at the event and their deployment.

> *Second Amended Compl.* at ¶11.

Plaintiffs also aver that SecTek "had security responsibilities at the Old Post Office Pavilion,"

including providing "security guards for the event" and "participat[ing] in decisions regarding

the number and type of guards and their deployment during the event." *Second Amended Compl.*

at ¶12. Notably, though, Plaintiffs do not allege that any federal employee had any involvement

with the security measures and decisions that were made in relation to the event. Plaintiffs do

not allege that any federal employees served as security guards during the event, nor do they

allege that any federal employees made decisions related to the number of security guards or

where to deploy such guards.

As discussed above, the plain wording of the PMA between GSA and Hill Partners sets

forth Hill Partners' status as an independent contractor. Furthermore, the Licensing Agreement

between GSA and GWU left the details of the security measures for the GWU/SAS Bhangra

---

[3] Plaintiffs state that "The United States *and/or* Hill Partners, Inc negligently selected, retained and supervised SecTec." *Second Amended Compl.* at ¶11 (emphasis added). Thus, Plaintiffs do not even appear to know who was responsible for hiring and supervising SecTek.

Blowout event in the hands of Hill Partners. Plaintiffs do not allege, and there is no indication,

that GSA or any federal employee had the power to control the detailed performance of Hill

Partners and/or the SecTek, Inc. security guards with regards to the Bhangra Blowout event.

Therefore, because Hill Partners is clearly an independent contractor and because Plaintiff

cannot point to any alleged negligence by a federal government employee with regards to any

security measures and decisions for the Bhangra Blowout event, the United States cannot be

liable for the allegedly tortious conduct, if any, of its contractor. See United States v. Orleans,

425 U.S. 807, 815-16 (1976); Logue v. United States, 412 U.S. 521, 529-30 (1973); and see

Cannon v. United States, 645 F.2d 1128, 1139-40 (D.C. Cir. 1981). Thus, the United States must

be dismissed as a defendant in this matter.

**II.    Plaintiffs' Claims Against the United States are also Barred by the Discretionary
         Function Exception**

This Court also lacks jurisdiction to hear claims brought under the FTCA that are "based

upon the exercise or performance or the failure to exercise or perform a discretionary function or

duty on the part of a federal agency or an employee of the Government, whether or not the

discretion involved be abused." 28 U.S.C. §2680(a). The purpose of this discretionary function

exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action in tort."

Callahan v. United States, 329 F.Supp.2d 404, 407 (S.D.N.Y. 2004) (quoting United States v.

Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)) (quoting United States v.

Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, the Supreme Court established

a two-part test for determining whether the discretionary function exception applies. First, the

11

court must determine whether any "federal statute, regulation, or policy specifically prescribes the course of action for an employee to follow." Id. If one exists, "the employee has no rightful option but to adhere to the directive." Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). The second step, which only applies when there is no "federal statute, regulation, or policy" and when the "challenged conduct involves an element of judgment," the court must decide "whether th[e] judgment is one of the kind that the discretionary function exemption was designed to shield." Id.

    Numerous federal courts have concluded that security related decisions, including decisions on how much security to provide and the manner in which to provide it, are the types of public policy judgments that fall squarely within the discretionary function exception. See, e.g., Callahan, 329 F.Supp.2d 404 (holding that decisions made by Marshals Service regarding protection of federal judge fell under discretionary function exemption); Macharia, 334 F.3d at 63-64 (holding that security-related decisions made when protecting an embassy involved social, political, and economic considerations); Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997) (holding that the discretionary function exception applies to the manner in which security was provided to post offices); Zielinski v. United States, No. 95-2160, 1996 WL 329492 at *16 (4th Cir. 1996) (decisions involving the scope of security protection at federal buildings "are grounded in economic, social, and political considerations"); Bergmann v. United States, 689 F.2d 789, 793-94 (8th Cir. 1982) (Marshals Service's selection of, and manner of supervising, participants in the witness protection program fell within the discretionary function exception); Fanoele v. United States, 975 F.Supp. 1394 (D.Kan. 1997) (applying the discretionary function exception to the manner in which Marshals Service secured federal courthouse); Haygan v. United States, 627 F.Supp. 749 (D.D.C. 1986) (decision by Government Printing Office to

12

assign only one officer to patrol parking lots on weekends was an executive decision and, thus, discretionary); Turner v. United States, 473 F.Supp. 317 (D.D.C. 1979) (decision to maintain two security guards and to lower the lights due to energy crisis were discretionary acts).

In Marcharia, 334 F.3d at 65, the court found that the plaintiff failed to establish the existence of a "federal statute, regulation or policy" that applied to any of the government's allegedly negligent conduct. Instead, the court determined that the Secretary of State has the authority to "develop and implement... policies and programs, including funding levels and standards, to provide for the security of United States Government operations of a diplomatic nature." Id. at 65 (quoting 22 U.S.C. §4802(a)(1). Under this authority, the Secretary vested discretion of security to the foreign service officers at various embassies. See id.

In Fanoele, 975 F.Supp. 1394, a bystander who was wounded during a shooting rampage at a federal courthouse brought an action under the FTCA alleging negligence on the part of the Marshals Service and the private security firm in providing security services at the courthouse. The court used the Gaubert two-part test in finding that the discretionary function exception applied to the provision of security services. In particular, under the first step, the court found that the security guidelines did not impose a specific course of conduct on GSA regarding security at federal buildings. See id. at 1398. Instead, security decisions are left to the discretion of the person responsible for security at each federal building. See id. As to the second step, the Fanoele court found that "[d]ecisions involving the scope of security protection at federal buildings generally 'are grounded in economic, social, and political considerations.'" Id. at 1401 (quoting Zielinski, 1996 WL 329492 at *16). The court noted that GSA and the Marshals Service had to determine how to allocate resources to best serve the tenants and visitors and that GSA's actions while serving as landlord of the federal building were related directly to public

13

policy considerations regarding federal oversight of government buildings. Id. at 1401. Therefore, the court found that because both prongs of the discretionary function test were met, the government was insulated from liability on plaintiff's FTCA claims. See id. at 1404.

Law enforcement and related security functions regarding federal buildings were transferred to the Department of Homeland Security upon its establishment in 2002. Homeland Security Act of 2002, Pub. L. No. 107-296, § 1706, 116 Stat. 2135 (codified as 40 U.S.C. § 1315(a) (the Secretary "shall protect" federal property and the persons on the property). Pursuant to 40 U.S.C. § 1315(c)(1), the "Secretary [of Homeland Security], in consultation with the Administrator of General Services may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." Thus, much like the Secretary of State in Macharia, GSA and DHS have discretion in developing regulations for providing security at federal buildings. Yet, as stated in Hall, the regulations do not specifically prescribe a course of action.

In the present instance, Plaintiff does not allege that there is any federal statute, regulation, or policy that specifically prescribed the course of action that Hill Partners was required to follow in arranging the security measures for the GWU/SAS Bhangra Blowout event. Instead, the security related decisions were left to Hill Partners' discretion in consultation with SecTek, Inc. Thus, even assuming arguendo that Hill Partners or SecTek, Inc. were agents of the United States government, the security decisions that they or any federal employee may have made regarding the number of security personnel required for the event, the placement of those personnel, etc. fall squarely within the discretionary function exception of the FTCA.

## III.    Plaintiffs Failed To Exhaust Their Administrative Remedies

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671- 80 ("FTCA"), provides the

14

exclusive avenue of relief for parties asserting tort claims against the United States. The FTCA requires that before a claimant may initiate an action against the United States, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a). This presentment requirement "requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." GAF Corp. v. United States, 818 F.2d 901, 919 (D.C.Cir.1987). Because the FTCA is a limited waiver of the United States' sovereign immunity, the exhaustion of administrative remedies under the statute is a jurisdictional prerequisite, so that the Court lacks subject matter jurisdiction over common law tort claims against the United States for which a plaintiff has not exhausted her administrative remedies. See Simpkins v. District of Columbia, 108 F.3d 366, 371 (D.C.Cir.1997) (citing Odin v. United States, 656 F.2d 798, 802 (D.C.Cir.1981)). See also McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (FTCA suits are jurisdictionally barred absent exhaustion of administrative remedies).

### A.    Plaintiffs Gurpal Singh and Kulwinder Kaur as parents of Ranjit Singh failed to file an administrative tort claim

In the instant case, Plaintiffs' complaint appears to be brought by the following individuals: (1) Gurpal Singh as administrator of decedent Ranjit Singh; (2) Gurpal Singh as parent of Ranjit Singh; and (3) Kulwinder Kaur as parent of Ranjit Singh. *Second Amended Compl.* at pg 1. Consistent with Plaintiffs' intention to bring suit in their status as Ranjit Singh's parents, Plaintiffs allege that "mother, Kulwinder Kaur, and [  ] father, Gurpal Singh, suffered the loss of the decedent's future earnings, services and assistance, and other pecuniary benefit which they would have derived had the decedent survived." *Second Amended Compl.* at ¶28.

15

While Plaintiffs claim in conclusory fashion that they have "exhausted their administrative remedies," *Second Amended Compl.* at ¶9, Plaintiffs do not specifically allege that an administrative claim was ever filed with respect to Gurpal Singh or Kulwinder Kaur as the parents of Ranjit Singh. As reflected in the attached "Claim for Damage, Injury, or Death," an administrative tort claim was filed only by "Gurpal Singh (as rep of Ranjit Singh)." *Attachment 6, pg 2.* Therefore, neither Mr. Singh nor Ms. Kaur can plead compliance with the statutory requirements of the FTCA because neither ever filed an administrative claim with the appropriate federal agency. Because they failed to exhaust their administrative remedies under the FTCA, to the extent that this complaint seeks relief on behalf of Mr. Singh or Ms. Kaur as the parents of Ranjit Singh, their complaint and any relief that they are requesting as parents of the decedent should be dismissed for failure to exhaust administrative remedies.

**B.    Plaintiff did not raise a negligent selection, retention, and supervision claim during the administrative process**

Plaintiffs' negligent selection, retention, and supervision claim against the United States must also be dismissed for failure to exhaust administrative remedies. *See Second Amended Compl. ¶ 20.* As demonstrated by the administrative record, the only claim raised by Claimant Singh in the administrative process concerned allegations that the "lack of security" was negligent. *Attachment 7; see also Attachment 6.* Thus, the United States does not dispute that count one of Plaintiffs' complaint, failure to provide security, was appropriately raised, however, nothing in the administrative record indicates that Claimant Singh ever raised any claim that the United States or Hill Partners was negligent in selecting, retaining, and supervising SecTek, Inc. *Id.* As such, count two of Plaintiff's complaint should also be dismissed for failure to exhaust administrative remedies.

16

## CONCLUSION

Based upon the foregoing, Defendant respectfully requests that Plaintiffs' claims against it be dismissed with prejudice and that the United States of America be dismissed as a party to this proceeding.

March 5, 2007                    Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


QUAN K. LUONG
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150

17