# PROPERTY MANAGEMENT AGREEMENT

## TABLE OF CONTENTS

### Section

1.    APPOINTMENT

2.    TERM

3.    MANAGEMENT FEE

4.    MANAGEMENT SERVICES

(a)   Rental Payments, Determination of Rent
      Increases and Escalation Charges
(b)   Records
(c)   Monthly Reports
(d)   Other Reports
(e)   Operating Budget
(f)   Management Functions
(g)   Repairs and Maintenance
(h)   Customary Services
(i)   Insurance
(j)   Government Rules
(k)   Employees
(l)   Rules and Regulations
(m)   Hiring Attorneys
(n)   Taxes and Assessments
(o)   Operating Account
(p)   Authorized Expenditures Reimbursement
(q)   Other Services
(r)   Lease Renewals and Expansions
(s)   Confidentiality

5.    INDEMNIFICATION

6.    AMENDMENTS

7.    NOTICES AND CONSENTS

8.    NONASSIGNABILITY

9.    APPLICABLE LAW

10.   ATTORNEYS' FEES

11.   WAIVER

12.   COMPETITION

13.   STATUS OF MANAGER

14.   ENTIRE AGREEMENT

15.   BINDING EFFECT

16.   COUNTERPARTS

17.   SEVERANCE

18.   LIMITATION OF LIABILITY

19.   OFFICE ON THE PROPERTY

20.   NO DISCRIMINATION

pop\mmmnbE.wpd

## TABLE OF CONTENTS (continued)

**EXHIBITS**

A.    Reports Due as of 10th of the Month

B.    Other Reports

C.    Commission Schedule

D.    Hold Harmless

**SCHEDULES**

A.    Cash Receipts

B.    Bank Reconciliation

C.    Tenant Rent Roll

D.    Tenant Delinquency Report

E.    Tenant Prepaid Report

F.    Tenant Billback Report

G.    Cash Disbursements

H.    Schedule of Compensation for Reimbursable Employees

I.    Subsidiaries and Affiliates

pophmmmhH.vpd

## PROPERTY MANAGEMENT AGREEMENT

This Property Management Agreement is entered into as of May 13, 1994 between Collin Equities, Inc., a Texas corporation ("Owner") and Hill Partners, Inc. ("Manager").

### RECITALS

A.  Owner owns that certain property described as a two-phased urban retail center, totalling approximately 101,018 square feet of net rentable area, (of which Phase I totals approximately 49,363 square feet of net rentable area and Phase II totals approximately 51,655 square feet of net rentable area) located at 1100 Pennsylvania Avenue, N.W. in Washington, D.C. and is commonly known as The Pavilion at the Old Post Office (the "Property").

B.  Manager is in the business of managing properties for owners thereof and is willing to render such services to Owner with respect to the Property.

C.  Owner desires to have available to it the real estate management services of the Manager as a common law independent contractor.

### AGREEMENT

NOW THEREFORE, in consideration of their mutual undertakings, Owner and Manager agree as follows:

1.  **APPOINTMENT.**  Owner hereby appoints Manager and Manager hereby accepts appointment on the terms and conditions hereinafter provided as an independent contractor within the meaning of Reg. # 1.856-4 of the Federal Income Tax Regulations, with exclusive authority to operate and manage the Property. Manager shall not be an agent or employee of Owner except that Manager shall be Owner's agent for the sole purpose of collecting rents from the Property. Manager represents and warrants that it has the full right, power and authority, including any required licenses or permits, to enter into this Agreement and to perform the services required as provided for herein, and upon the conditions and for the term and compensation set forth herein.

2.  **TERM.**

(a)  This Agreement shall commence as of _June 15_, 1994; and shall continue monthly thereafter. Notwithstanding the foregoing, Owner or Manager may terminate this Agreement without cause on thirty (30) days' written notice or at Owner's option, Owner may terminate this Agreement without cause on not less than five (5) days notice provided that: (i) Owner agrees to pay Manager $5,000 a termination fee equal to the Management Fee paid to Manager for the last full calendar month of the term of this Agreement, and (ii) Owner agrees to pay Manager a sum equal to the compensation $20,000 paid to Manager for the last full calendar month of the term of this Agreement pursuant to paragraph 4(k) hereof.  Any notice delivered by Owner to Manager pursuant to this provision shall designate a specific date (the "Termination Date") upon which this Agreement shall terminate.  In addition, in the event of a sale, exchange or transfer of the Property, or the termination of Owner's interest therein, Owner may terminate this Agreement by written notice to Manager, effective as of the date of such sale, exchange, transfer or termination.

(b)  No later than the Termination Date, Manager shall immediately deliver to Owner or Owner's designee: (i) all of the records in the possession of Manager and any personal property in Manager's possession or control belonging to Owner, or pertaining to the Property; (ii) any funds of any tenant or Owner including, without limitation, Security Deposits; (iii) any written lease, tenancy, occupancy agreement or rental agreement, for the rent or lease of space in the Property (collectively referred to herein as

1

"Tenant Leases"), receipts for deposits, insurance policies or unpaid bills which pertain to the Property; (iv) keys, garage cards, and parking permits and passes; and (v) any other documents (including, without limitation, notes of conversations with tenants or others, proposals, service agreements, construction bid documents, etc.), property or items relating to the Property in its possession or control. For each day after the Termination Date of this Agreement that Manager fails to turn over the documents listed above to Owner or Owner's designee, Manager shall pay Owner a penalty equal to the Management Fee payable for the last full calendar month of this Agreement divided by thirty (30).

(c)  Any rent checks or other funds, invoices or anything referred to in paragraph (b) above received by Manager after the Termination Date shall be delivered immediately upon receipt by Manager to Owner or Owner's designee.

(d)  Manager's obligations under this Agreement, except as specifically provided herein, shall cease upon the Termination Date except for the obligation to provide a monthly report as prescribed in paragraph 4(c) hereof for the last month (or part thereof) of operation and the reconciliation as of the Termination Date of any compensation due Manager pursuant to paragraph 3 hereof.

(e)  The rights of termination specifically provided herein shall be considered to be cumulative, and shall be in addition to the rights of termination of this Agreement, inuring to the parties by operation of law, or otherwise.

3.  **MANAGEMENT FEE.**

(a)  As compensation for Manager's services to the Property, Owner shall pay Manager the greater of: (i) Twelve Thousand Five Hundred Dollars ($12,500) monthly; or, (ii) four percent (4%) of the basic or minimum rents collected by Manager during the immediately preceding month and received by Owner from Tenant Leases, including percentage or additional rentals, reimbursements for real estate taxes, insurance premiums and operating expenses; excluding, however, promotional fund income, local rental taxes, any monies recovered from insurance claims, refundable security deposits, proceeds from loans or sale of the Property, and returned checks (the "Management Fee").  The Management Fee shall be prorated for any partial month during the term hereof by dividing the number of days services were provided by 30 and multiplying by the previous month's Management Fee. Manager shall not be entitled to any additional fees for services within or outside of the scope of this Agreement unless agreed to in writing by Owner prior to Manager performing such services. Manager is hereby authorized to pay itself the Management Fee on the first day of each calendar month during the term of this Agreement out of the Operating Account (as defined in paragraph 4.(o)).

(b)  Upon termination of this Agreement under the provisions specified in paragraph 2 above, Manager shall be entitled to any compensation or reimbursement which is due Manager for any approved expenditures made or approved services performed on or before the time of such termination. Manager's right to compensation hereunder shall immediately cease upon termination, and neither party shall have any rights, duties or obligations hereunder, except such duties specified herein as surviving the termination hereof.  Any compensation to be paid to Manager for services rendered after termination of this Agreement will be at the same rate of compensation, but will be subject to the prior approval of Owner.

(c)  If this Agreement is terminated due to a sale of the Property by Owner, Owner agrees to pay Manager a bonus equal to the Management Fee paid to Manager for the last full calendar month of the term of this Agreement, as compensation to Manager for services rendered by Manager which are outside the scope of this Agreement and are occasioned by the sale of the Property.  Manager shall submit an invoice to Owner for payment of this bonus at the same

time Manager submits to Owner the Monthly Report as required by paragraph 4(c) for the final month of the term of this Agreement.

4.   **MANAGEMENT SERVICES.** Manager accepts its appointment and agrees to perform all services necessary for the care, protection and maintenance of the Property, including, but not limited to the following:

(a)  Rental Payments. Determination of Rent Increases and Escalation Charges.

(i)  Manager is responsible to collect all rentals and other monies due or to become due from the Property or its use or possession, provided that nothing herein contained shall constitute a guarantee by Manager of the payment of rent by any tenant.  All rental payments shall be made payable to the name of the Property and not in the name of Owner or Manager.  No second party checks shall be accepted by Manager and no checks shall be cashed as a courtesy to tenants.  Checks with limiting endorsements shall only be deposited after Owner's approval for each and every such check.

(ii)  Manager shall determine in a timely manner the amount of any rent increase or escalation charge covering base rent, security deposits, real estate/ad valorem taxes and operating expenses as provided for under any of the leases of the Property.  Prior to submittal of any billings for such increases to any tenant, Manager shall submit to Owner for approval copies of proposed statements indicating the amounts and method of calculation for such increases.  Upon receipt by Owner of such statements and any information necessary to verify the accuracy of such statements and the proportionate share due by such tenant, Owner shall have no less than fifteen (15) working days to review such statements before Manager is obligated under the provisions of the Tenant Leases to deliver same to tenants.  If Manager submits incorrect statements to tenants or fails to deliver same to tenants in a timely manner, Owner shall have the right to deduct from the compensation due Manager hereunder as a penalty for such failure the amount of income lost due to Manager's failure to bill tenants properly.  In no event shall the penalty exceed the amount due Manager as monthly compensation hereunder.  Notwithstanding the foregoing, if Manager's failure to deliver a statement to tenant in a timely manner is due to Owner's delay in approving same, provided such statement was received by Owner in a timely manner, or if an incorrect statement was approved by Owner in error and delivered to tenant, no such penalty shall be assessed against Manager.  Prior to any deduction, Manager will be given reasonable opportunity to collect the income lost, however, such opportunity shall not exceed a period of sixty (60) days from the time that such lost income was discovered by either Manager or Owner.  If Manager is able to recover such lost income from tenant, the amount of the penalty assessed to Manager shall be adjusted based upon the amount of such recovery.

(b)  Records.  Manager shall maintain complete and accurate records of all transactions relating to the Property and its supervision, management and operation, including, without limitation, invoices, receipts, bids, warranties, and all correspondence and data relating thereto; shall make such records available at any time for inspection by Owner and shall duplicate and remit copies thereof to Owner promptly upon request.  Manager shall maintain the Property's records on a cash-basis using the Owner's prescribed Chart of Accounts except for property taxes and insurance costs and other significant expenses as approved by Owner.  The originals of all records and all documents pertaining to the same shall be kept by Manager at the Property or at Manager's principal place of business and the originals of such records shall remain the property of Owner.

(c)  Monthly Reports.  Manager shall prepare monthly and forward to Owner at Manager's expense, for receipt by Owner on or before the tenth (10th) day of the succeeding month, a complete monthly accounting of all transactions relating to the Property, which accounting shall contain, in Owner's prescribed forms, the

3

information set forth on Exhibit "A" attached hereto and incorporated herein by reference.

(d) *Other Reports*. Manager also shall provide to Owner immediately upon the completion thereof, the reports or documents described on Exhibit "B" attached hereto and incorporated herein by reference, which shall be prepared by Manager at the times indicated on Exhibit "B". In addition, Manager shall provide Owner additional reports, records and documents relating to the Property as Owner may reasonably request from time to time, and shall comply promptly with such instructions as may be given to it by Owner.

(e) *Operating Budget*. Manager shall review the current budget for the Property no later than thirty (30) days from the commencement date of this Agreement and make recommendations to Owner regarding the same. In succeeding years, Manager shall submit to Owner by October 1st a pro-forma budget for the following fiscal year ending November 30th, in accordance with Owner's then current budget format and in accordance with instructions that may be issued from time to time. On or before June 30th of each year Manager shall submit an updated forecast for the remaining months in such year and a preliminary budget for the following fiscal year. A written explanation of the budget describing all assumptions made by Manager in preparing the budget shall accompany the pro-forma budget. Each proposed budget shall contain Manager's recommendations with respect to rental rates and discretionary expense items including, without limitation, advertising, capital improvements and on-site staffing including an updated Schedule H in the form of Schedule H attached hereto. Owner shall review, revise as it believes necessary in its sole discretion, and Owner shall use its best efforts to approve in writing the final budget no later than ninety (90) days after delivery of the proposed budget to Owner (hereafter described as the "Budget"). In the event Manager does not receive such notice from Owner, then Manager shall place Owner on notice that Manager is operating under the subject budget which shall be deemed approved by Owner as of the first day of the related budget year until the date Owner notifies Manager of its disapproval. Thereafter, any changes in rents or any other discretionary or capital items set forth in the Budget, shall be made only with the prior written consent of Owner.

(f) *Management Functions*. The Manager, in addition to the above stated responsibilities, shall also provide services with the prior approval of Owner and at the expense of the Property, as follows:

(i) Coordinate with new tenants at the Property to facilitate their occupancy of their leased premises; provided, however, Manager shall not allow any new tenant to occupy any portion of the Property nor deliver to any new tenant keys allowing access to any portion of the Property without Owner's prior written approval unless Owner and the new tenant have both executed a lease or other rental agreement providing for the proposed tenant's occupancy of such portion of the Property.

(ii) Perform and fulfill, on behalf of Owner, the obligations, covenants, agreements and promises of "Landlord" under all Tenant Leases of the Property or any part thereof;

(iii) Terminate tenancies and sign and serve such notices as are deemed necessary by Manager in conjunction with the approval of Owner and in accordance with the lease provisions and applicable laws; and

(iv) Supervise the persons or entities providing Customary Services pursuant to Paragraph 4(h) hereto.

(g) *Repairs and Maintenance*. Manager shall make or cause to be made and shall supervise all repairs, replacements, alterations, additions, improvements, decorations and maintenance (collectively, "Repairs") on the Property, including Repairs to any personal property located thereon in which Owner has an ownership or security interest, and shall purchase supplies and equipment for the maintenance and operation of the Property as it deems advisable or necessary. Any rebate or discount obtained by Manager for any of the foregoing expenditures shall become the property of Owner. Manager shall not make nor incur extraordinary expenditures for any

peplemenhill.wpd

4

Repairs with respect to the Property without the prior approval of Owner except in those cases where, in the reasonable opinion of Manager, an emergency necessitates so doing before such approval can reasonably be obtained. In such cases, Manager shall report the same to Owner with all reasonable promptness. The term "extraordinary expenditures," as used in this paragraph, shall mean expenditures in excess of Two Thousand Dollars ($2,000) for any individual Repair or any group of related Repairs.

(h) Customary Services. Manager shall contract in the name of the Property or upon the prior written consent of Owner, in the name of Owner, and pay for all services which are customarily rendered in connection with the mere rental of real property with reference to the type of property involved and the area in which the Property is located (hereinafter referred to as "Customary Services"); provided, however, that (i) Manager shall receive the prior written consent of Owner for all such contracts, (ii) all such contracts shall permit the cancellation thereof by Manager or Owner upon thirty (30) days' prior notice, and (iii) Manager shall obtain a minimum of three (3) competitive bids for all such contracts with a cumulative liability in excess of Two Thousand Dollars ($2,000) and shall submit all bids to Owner for review, together with Manager's recommendation with respect thereto. Manager shall use its best efforts to have all such contracts expire at the end of the fiscal year in order that they may be rebid annually in conjunction with the preparation of the Budget. Customary Services shall include such services as parking management, security and guard services, janitorial maintenance, trash collection, elevator, sprinkler systems, and HVAC maintenance, storage and warehousing services, snow removal, ground care, and other building and equipment repair services as required by the Property.

Owner is not permitted to obtain income from services to tenants which are not usually or customarily furnished or rendered in connection with the mere rental of real property, with reference to the type of property involved and the area in which the Property is located (hereinafter referred to as "Non-Customary Services"). Therefor, Manager shall submit to Owner for Owner's approval any services which Manager believes could be Non-Customary Services. Non-Customary Services will be provided by Owner only if approved by Owner in advance and in writing. Non-Customary Services would include, for example, maid service, car washing, or food delivery service. If such Non-Customary Services are approved by Owner, they shall be contracted for in Manager's name only and paid for by Manager, and Manager shall not include in the amount paid as rent by the tenants of the Property any charge for Non-Customary Services, but must make a separate charge therefor, and the amount of such separate charge shall be received and retained by Manager.

Manager shall disclose to Owner any controlling ownership interest of manager, any officer or employee of Manager, or any immediately family member (parent or parent-in-law, spouse, child, brother or sister, brother-in-law or sister-in-law, or step-parent) of an officer or employee of Manager in any corporation, partnership, joint venture or other business which provides materials, products, or services, directly or indirectly, for the Property. Such disclosure shall be made to Owner, in writing, at least ten (10) days prior to entering into any contract or agreement with such business for the provision of such products, materials or services.

Furthermore, Owner acknowledges that Manager will, from time to time, purchase consumer marketing, graphic design, computer aided architectural design, and other related design and print services from Info Graphics, Inc., a subsidiary of Manager. All such expenditures must be competitive and for design services used in leasing, marketing and promotion, and Owner's approval is subject to the approved Budget.

(i) Insurance.

(1) Owner shall obtain the insurance coverages pertaining to the Property, including liability, elevator, boiler and machinery, property and D.I.C. coverages in amounts that are determined by Owner. Manager will be named as an additional

p:\poljanaki2k.wpd

5

insured on Owner's liability insurance policy for Manager's interests at the Property.

In support of the Owner's insurance, Manager is responsible for the following:

(i) Manager shall notify Owner immediately of any fire or other casualty affecting the Property;

(ii) Manager shall notify owner in writing as soon as practicable after notice of an injury or claim is received;

(iii) Manager shall cooperate completely with Owner and/or its insurers in the defense of such injury or claim;

(iv) Manager shall provide Owner with a copy of any summons, supoena, or other legal documents served upon Manager relating to the Property;

(v) Manager shall take no steps (such as admission of liability) which will prejudice the defense or otherwise prevent Owner from protecting itself; and

(vi) Manager is prohibited from settling any insurance claims which pertain to the Property without prior written consent of the Owner.

(2) Manager at its own expense shall obtain the following insurance and provide Owner original Certificates of Insurance addressed to Owner evidencing this coverage prior to the execution of this contract. All insurance carriers used to provide this coverage must have a BEST rating of A - V or better.

(i) Commercial General Liability insurance in the amount of not less than $1,000,000 per occurrence. Coverage is to include owned and non-owned vehicles, personal injury and contractual liability and provide to Owner and Manager a thirty (30) day prior notice of cancellation.

(ii) Fidelity Bond (blanket position) in an amount not less than the total of three month's anticipated gross rents for the Property, insuring against acts of omissions, negligence, or dishonest acts of Manager or Manager's employees, contractors or agents. Such bond shall require that both Owner and Manager be notified in writing at least thirty (30) days prior to its cancellation. Not more frequently than once per year, if in the judgment of Owner the amount of such bond is insufficient, Manager shall increase the amount.

(iii) Worker's Compensation and Employee Liability insurance in compliance with requirements in the state where the Property is located.

(iv) In the event that the Manager employs outside contractors to supply services for the operation and maintenance of the Property, it will be its responsibility to see that such contractors provide and maintain Commercial General Liability insurance in the amount of $1,000,000 per occurrence, as well as Worker's Compensation insurance and that Owner and Manager are named as Additional Insured under the Liability coverage.

(3) If requested by Owner in writing, Manager shall, at Owner's expense, obtain any or all of the insurance necessary to protect the Property in amounts that are determined by Owner and from companies approved by Owner.

(j) <u>Government Rules</u>. Manager shall advise Owner with respect to requirements for full compliance with all building codes, zoning and licensing requirements, and other laws, ordinances, regulations, orders and requirements of duly constituted federal, state and local governmental authorities having jurisdiction over the Property, and shall use its best efforts to cause the Property to fully comply with any such requirements. Manager may in its reasonable discretion oppose or appeal from any requirement it deems unwarranted and it may compromise or settle any dispute regarding such requirements; provided, however, that Manager shall have received the prior written consent of Owner for its intended action.

With respect to compliance with environmental laws, ordinances and regulations, Manager shall have a duty of reasonable inquiry and observation of any tenant's use, storage, treatment or disposal or emission or other discharge whatsoever of hazardous substances and toxic waste on or about the Property, whether or not such activities are or should be subject to federal, state or local

pcp\manu1M.wp4

6

permit requirements. Manager shall notify Owner immediately if it has a reasonable belief or actual knowledge of any such use, storage, treatment, emission or disposal whether or not such activities are or should be subject to federal, state or local permit requirements. At Owner's request, Manager shall request and obtain any tenant's hazardous materials inventory, licenses and permits.

(k) **Employees.** Manager shall have in its employ or cause to be employed by an entity under its direct control at all times a sufficient number of capable employees to enable it to properly, adequately, safely and economically manage, operate and maintain the Property. Manager will assign one person as the "Property Manager" for the Property. The Property Manager will have the primary responsibility for coordinating Manager's performance hereunder. The person assigned as the Property Manager may be changed from time to time in Manager's discretion, but Manager shall give Owner prior written notice of any such change, and any such change must be approved in writing by Owner. The assigned Property Manager shall be regularly available to spend as much time as is reasonably necessary to supervise and coordinate the performance of Manager's responsibilities hereunder. The initial Property Manager shall be William A. Winburn, IV.

With funds from the Operating Account, Manager shall pay for the total compensation and related expenses of any of Manager's employees who are stationed at the Property, (except that portion of such compensation and related expenses which are attributable to the furnishing of Non-Customary Services) if such compensation and related expenses are set forth in the Budget and on the attached Schedule H as it may be amended from time to time. Such expense shall be evidenced to Owner by the presentation of invoices and supporting payroll records. Manager shall not be entitled to reimbursement in respect of the compensation and related expenses of any other of Manager's employees who perform work in connection with the Property including, without limitation, those involved in preparing the Budget pursuant to paragraphs 4(e) hereof and the reports pursuant to paragraphs 4(c) and 4(d) hereof.

All matters pertaining to the employment of such employees are the responsibility of Manager, who shall be in all respects the employer of such employees and who shall fully comply with all applicable laws and regulations affecting the employer/employee relationship. Since this Agreement is not one of agency by Manager for Owner but one with Manager engaged independently in the business of managing properties on its own behalf, all employment arrangements are therefore solely Manager's concern; provided, however, that such employees of Manager shall be compensated at market rates for their services or under such other arrangement as shall be approved by Owner prior to the effectiveness thereof.

In the event Manager proposes that any of its employees who are stationed at the Property perform work on matters not relating to the Property, Manager shall obtain the consent of Owner thereto as well as to the method of allocating the compensation of such employees between their work for the Property and such other work.

(l) **Rules and Regulations.** Manager shall monitor and enforce, to the extent reasonable and practical, and shall make any necessary or appropriate rules and regulations for the operation of the Property; provided, however, that no such rules nor regulations shall be effective until approved by Owner.

(m) **Hiring Attorneys.** Manager shall, subject to Owner's prior written consent and at the expense of Owner, engage counsel to advise on legal matters and conduct legal proceedings arising in the performance of Manager's duties under paragraphs 4(f), 4(h), 4(i), 4(j), 4(k), and 4(n) hereof.

(n) **Taxes and Assessments.** Real estate taxes shall be paid directly by Owner. Manager shall verify with the applicable taxing authority that the payment by Owner of such real estate taxes has been received. Manager may be instructed by Owner to defend against, seek revision of, or appeal from any assessment or charge deemed improper, or pay any such charge or assessment under

13. **STATUS OF MANAGER.** Nothing contained herein shall be deemed to create or shall be construed as creating in Manager an ownership interest in or to the Property. Notwithstanding anything to the contrary, which may be contained herein, Manager is and shall be construed for all purposes as an independent contractor and not an employee of Owner.

14. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement and understanding of the parties hereto, and supersedes all prior agreements, negotiations, discussions and understandings relating to the subject matter hereof.

15. **BINDING EFFECT.** This Agreement shall be binding upon and inure to the Benefit of the parties hereto and subject to the provisions of paragraph 8 hereof, their respective successors and assigns.

16. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

17. **SEVERANCE.** If any term, condition, covenant or agreement of this Agreement or the application thereof to any person or circumstances shall be invalid or unenforceable, the remainder of such term, condition, covenant or agreement to persons or circumstances other than those to which it is held invalid, shall both be unaffected thereby.

18. **LIMITATION OF LIABILITY.** Anything in this Agreement to the contrary notwithstanding, no representative, shareholder, trustee, officer, director, partner, affiliate, employee or agent of Owner shall be liable for any debt, claim, demand, judgment, decree, liability or obligation of any kind (in tort, contract, or otherwise) of, against or with respect to Owner arising out of any action taken or omitted for or on behalf of Owner under and pursuant to this Agreement, and Owner shall be solely liable therefor and resort shall be had solely to Owner's assets for the payment or performance thereof.

19. **OFFICE ON THE PROPERTY.** Manager may, with the prior consent of Owner, maintain and equip an office on the Property when, in its reasonable opinion, such a facility is necessary for the proper management of the Property, and so long as such facility is used by Manager exclusively in the performance of its management duties and responsibilities hereunder and for no other purpose whatsoever. The cost of furnishing and equipping such facility shall be borne by Owner. In the event Manager proposes to use such facility for purposes other than those relating exclusively to the Property, Manager shall obtain the consent of Owner thereto as well as to the method of allocating the expenses of such facility between the Property and such other purposes. Owner, in its sole discretion, upon five (5) days written notice, may terminate Manager's right to maintain and equip an office on the Property, in which event, Manager shall immediately close its office on the Property and remove all property of Manager therefrom.

20. **NO DISCRIMINATION.** Neither Owner, Manager nor anyone authorized to act for either in the sale, provision of services, or any other manner shall discriminate against any person on the grounds of race, color, creed, religion, handicap, sex or national origin, and Manager hereby agrees to comply with all laws, regulations and ordinances pertaining thereto.

IF NOT EXECUTED BY MANAGER AND RETURNED TO OWNER ON OR BEFORE _____, 19___, THIS PROPERTY MANAGEMENT AGREEMENT SHALL BE NULL AND VOID AND NEITHER OWNER NOR MANAGER SHALL HAVE ANY RIGHTS OR OBLIGATIONS HEREUNDER. SUBMISSION OF THIS PROPERTY MANAGEMENT AGREEMENT FOR EXAMINATION, EVEN THOUGH EXECUTED BY MANAGER, SHALL NOT BIND OWNER IN ANY MANNER, AND NO AGREEMENT OR OTHER OBLIGATION

psy\connkiE.wpd

ON THE PART OF OWNER SHALL ARISE, UNTIL THIS PROPERTY MANAGEMENT
AGREEMENT IS EXECUTED AND DELIVERED BY OWNER TO MANAGER.

IN WITNESS WHEREOF, the parties hereto have affixed their
respective signatures as of the day and year first above written.

Hill Partners, Inc.                    Collin Equities, Inc. a Texas
                                       corporation

By                                     By
Its: Pres.                                Vice President

By                                     By
Its: CEO                                  Assistant Secretary

        "Manager"                              "Owner"

P.20                    WELLS FARGO        303 741 0867        05-13-1994 12:58