IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GURPAL SINGH, as Administrator** : | | |
| of decedent **RANJIT SINGH,** : | | |
| : | | |
| Plaintiffs, : | | |
| : | Civil Action No. 06 0574 | |
| v. : | RMC | |
| : | | |
| : | | |
| **SOUTH ASIAN SOCIETY OF THE GEORGE** : | | |
| **WASHINGTON UNIVERSITY,** : | | |
| Et Al., : | | |
| Defendants. : | | |

**PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiffs oppose the United States' motion to dismiss and respectfully invite the court to consider the following:

**Defendant's motion must be treated as a motion for summary judgment and as such, it is premature**.

The United States styles its motion as a motion to dismiss. However, it has also attached a number of exhibits to its motion. Under Fed Rule Civ Proc R 12(b)(6), if on a motion for failure to state a claim upon which relief can be granted, matters outside the pleading are presented, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56. Hence, this motion must be treated as a summary judgment motion.

However, as a summary judgment motion, it is premature, as discovery against the United States has not even begun. Generally, courts are disinclined to

grant summary judgment motions before the opposing party has had an opportunity to conduct discovery. See: *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214. Summary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions. See *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 565-66 (7th Cir. 1972) (motive); *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949-50 (3d Cir. 1990). Generally speaking, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). However, a party opposing summary judgment may not merely assert in his opposition that discovery is necessary. Rather, if a party believes that discovery is necessary for it to demonstrate a genuine issue of material fact, the party must file a Rule 56(f) affidavit that states that it "could not properly oppose a motion for summary judgment without a chance to conduct discovery," *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996), and that "particularly specifies legitimate needs." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). The Evans court warned litigants that it places "great weight on the Rule 56 (f) affidavit" and that " [a] reference to Rule 56 (f) and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit.'" In this case, plaintiffs have filed such an affidavit which is attached hereto as Exhibit 1. It outlines specifically, the needs of the plaintiffs to engage in discovery in this case.

**The Independent Contractor Defence depends on the actual course of dealings between the United States and Sectek Inc. and Hill Partners Inc. and such is a factual question which cannot be resolved without discovery.**

Whether an entity is a federal employee or an independent contractor is a question of federal law. *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990), cert. denied, 499 U.S. 905, 113 L. Ed. 2d 213, 111 S. Ct. 1103 (1991). In evaluating the nature of the relationship between the Government and the entity, the Court focuses on the terms of the contract and the course of dealing between them. *Williams v. United States*, 50 F.3d at 305. Specifically, there are two primary factors that distinguish an agent from an independent contractor: (1) the "power of the Federal Government 'to control the detailed physical performance of the contractor,'" *United States v. Orleans,* 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976) (quoting *Logue v. United States,* 412 U.S. 521, 528, 37 L. Ed. 2d 121, 93 S. Ct. 2215 (1973)); and (2) whether the Government supervises the day-to-day operations of the contractor, *B&A Marine Co., Inc. v. American Foreign Shipping Co.,* 23 F.3d 709, 713 (2d Cir.), cert. denied, 513 U.S. 961, 130 L. Ed. 2d 336, 115 S. Ct. 421 (1994).

The critical factor in distinguishing an employee of the government from an independent contractor is whether the government retained the authority to control the detailed physical performance of the work or whether the worker's day-to-day operations in fact were supervised by the federal government. *Logue,* 412 U.S. at 527-28, 93 S. Ct. at 2219; *Orleans,* 425 U.S. at 814-15, 96 S. Ct. at 1976; *B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.,* 23 F.3d 709, 713 (2d Cir.), cert. denied, U.S. , 115 S. Ct. 521 (1994). *Henry v. United States*, 346 F. Supp. 2d

496 (S.D.N.Y. 2004). The latter factor is a question of fact, which depends on the actual level of supervision that the contracting party exercised. It is impossible to determine this relationship, in this case, without investigating the precise nature of the relationship and the course of dealings between the parties. Of course, plaintiffs have had no opportunity to mount such an investigation at this point. In view of this, it is respectfully submitted that plaintiffs should be permitted to engage in pretrial discovery on this issue.

**Plaintiffs should be permitted to engage in pretrial discovery concerning the applicability of the Discretionary Function Defense**

The discretionary function exception only covers "acts that 'involve an element of judgment or choice'", *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988)). Therefore, the first step in determining the applicability of the exception is to consider whether the challenged act or omission violated a mandatory regulation or policy that allowed no other option. Gaubert, 499 U.S. at 322, 111 S. Ct. at 1273-74 (1991). If there is room for judgment, the Court then must determine whether the decision involved the kind of judgment Congress intended to protect. The key inquiry is whether the decisions, be they initial decisions or implementation decisions, are necessarily susceptible to policy analysis. Gaubert, 49.

In, *Soldano v National Park Service*. 453 F.3d 1140; 1148, (9th Cir 2006), the court held that although the design of a road was shielded by the discretionary

function exception, the element of choice involved in the Park Service's decision not to implement a speed limit on the Road, consistent with its safety guidelines, resembled more a departure from safety considerations than a mistaken judgment in a matter clearly involving choices among political, economic, and social factors. It also held that such a decision did not entail a protected, discretionary selection of the means used to meet a general policy goal. This type of distinction was also applied in *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1031-32 (9th Cir. 1989), where the court held that the discretionary function exception shielded the government from liability arising from the consequences of its design of a canal, but did not protect the government from its negligent construction of the canal. See also: <u>Bagner v. United States</u>, 428 F. Supp. 2d 101 (N.D.N.Y. 2006), **(**In a suit against for injuries from a jet ski accident at a submerged dam at a federal lock, the government was not entitled to Fed. R. Civ. P. 12(b)(1) dismissal for lack of subject matter jurisdiction. Placement of warning signs and/or buoys did not fall within the discretionary function exception to the Suits in Admiralty Act)

  Plaintiff submits that the situation in this case is more akin to the implementation of a safety scheme rather than a decision designed to meet a general policy goal. The decision at issue in this case, that is whether or not to post guards at the exits of the building at the end of the event, is surely the kind of detailed decision which is designed to implement a general safety policy rather than a policy decision itself. The fact that the decision involved the very minor allocation of resources, in this case, manpower, does not mean that it is automatically to be considered a policy decision. If that were the case, the decision not to post a speed limit would likewise have to be considered a policy decision, and

as we have seen, it was not. Moreover, plaintiffs should be permitted to engage in discovery on this issue. For if there were any established government policies dealing with security issues at its buildings, as seems likely, then plaintiff should be allowed the opportunity to discover what they were and whether the decision to allocate no guards to the exits in this case, was a violation of those policies. If that turned out to be the situation, then this case would certainly be very much in the same posture as *Soldano,* where the discretionary function exception was not applied.

In *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997), a case cited by the United States, the appellant was shot in the parking lot of a United States Post Office. Appellant brought suit under the Federal Tort Claims Act (FTCA), 28 U.S.C.S. §§ 1346, 2671-80, alleging negligence on the part of the United States Postal Service in failing to provide any security presence at all. The trial court dismissed appellant's claim for lack of subject matter jurisdiction because the alleged negligent conduct by the Postal Service fell within the discretionary function exception of the FTCA. The court found that there were no fixed or readily ascertainable standards regarding post office security. In this case, by contrast, it is unknown as to what whether or not there are "readily ascertainable standards" regarding security at the Old Post Office Pavilion. The fact that the United States provided security at the building through Sectek, strongly implies that there might very well be specific standards for security at this building. Plaintiff should at least be given an opportunity to determine what those standards require.

Moreover, in *Macharia v. United States*, 357 U.S. App. D.C. 223; 334 F.3d 61; another case relied upon by the United States, it is clear that there the court

- 6 -

permitted discovery. In that case, the court stated, "In this case, even **after several months of discovery**, appellants failed to establish, as *Gaubert*'s first step requires, the existence of a "federal statute, regulation, or policy" Id. at 65. Hence, this case, does not in any way support the position of the United States, that this case should be dismissed prior to discovery taking place, in fact, it is an example of the court permitting such discovery.

Likewise, in *Zielinski v. United States*, No. 95-2160, 1196 WL 329492(4th Cir. 1996), also cited by the United States, the court stated that "Prior to trial, both Ms. Zielinski and the United States moved for summary judgment." Id. at 2. The court granted the United States' motion. However, the important point is that it seems likely that, the court permitted discovery, since this was a summary judgment motion and not a motion to dismiss. This case therefore does not support the position of the United States in this case.

*Fanoele v. United States,* 975 F. Supp. 1394 (D. Kan. 1997) is another case relied upon by the government, (applying the discretionary function exception to the manner in which Marshals Service secured a federal courthouse). Although there is no firm statement either way, it seems highly likely that discovery was permitted because of the detailed discussion of various regulations governing courthouse security which the opinion contains. The court also analyzed the questions in terms of summary judgment standards, which again implies that discovery had taken place. The United States also cites, *Bergmann v. United States*, 689 F.2d 789 (8th Cir. 1982), There, the United States, sought review of the judgment of the United States District Court for the Eastern District of Missouri, which awarded appellee wife, damages under the Federal Tort Claims Act, 28 U.S.C.S. § 2671 et

seq., after it found that the government's negligent selection and supervision of the burglar for the Federal Witness Security Program had been a substantial factor in her husband's death.  It is obvious that in this case also, since a court awarded damages there must have been pretrial discovery.

Hence, the cases relied upon by the United States do not support the proposition which it advances in this case.  In fact, the contrary appears to be true. Many of these were cases where discovery had taken place. As such, they actually support the plaintiffs' position in this case.  Nor, is this conclusion altered by the United States' fleeting reference to a regulation issued by the Department of Homeland Security.  It certainly does not contend that this is the exclusive regulation issued by the government which may apply to the Old Post Office Pavilion.  Plaintiffs should be permitted a reasonable opportunity to discover the full panoply of regulations which may apply.

The United States complains that the plaintiffs did not include in their complaint, any allegation that there is any federal statute or regulation or policy that specifically prescribed the course of action that was to be taken at the Old Post Office Pavilion.  However, it fails to provide any authority that a complaint is required to include such allegations.  In the absence of such authority, this contention should be rejected.

**Plaintiffs have exhausted their Administrative Remedies**.

The United States claims that Gurpal Singh or Kulwinder Singh failed to exhaust their administrative remedies under the Federal Tort Claims Act because "neither ever filed an administrative claim with the appropriate Agency." United

- 8 -

States' Motion page 16.   If the United States is asserting that no Form 95 was ever filed by Gurpal Singh it is obviously in error as its own Attachment 6 shows that a timely Form 95 was filed by Gurpal Singh as the representative of Ranjit Singh.

The Second Amended Complaint names Gurpal Singh as administrator of the decedent and Gurpal Singh and Kulwinder Kaur as parents of Ranjit Singh. Presumably, then the United States is seeking dismissal of any claims which can be brought by them as parents.  The United States cites no cases in support of its position. In fact, though, plaintiff sent Paul DeMuth, the deputy regional counsel a letter in which he attached a copy of the First Amended Complaint. See Attachment 7 to Defendant's Motion.  This contains the same plaintiffs as the Second Amended Complaint.  Hence, with respect to the parties, plaintiffs supplemented the original Form 95 in a way which provided notice that Kulwinder Kaur and Gurpal Singh were also advancing claims as parents of Ranjit Singh. Moreover, it is clear that in presenting an administrative claim, information may be presented to the government in many different ways and that a claimant is not restricted to a particular form.   See: *Williams v. United States*, 693 F.2d 555  (5th Cir. -1982) (where the court said that no specific form of notice was required, and that an administrative claim, combined with the prior state court action, gave defendant government adequate notice of the specifics of plaintiff's claim).

In *Turner v. United States,* 2005 U.S. Dist. LEXIS 33961  the court  held In a medical malpractice action under the FTCA against the United States for a child's treatment at a Naval hospital, the mention of the parents' claims in the first SF-95 notice regarding the minor's claim was sufficient to put the United States on notice of the adults' claims such that the requirements of 28 U.S.C.S. § 2675(a) were

- 9 -

satisfied. It held that a claimant must give an administrative agency only enough information to allow the agency to "begin its own investigation" of the alleged events and explore the possibility of settlement. *Adams v. United States*, 615 F.2d 284, 292. It was not required that the claimant provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery, *see Brown v. United States*, 838 F.2d 1157, 1160-61 (11th Cir. 1988), or every factual detail that might be relevant, *see Adams*, 615 F.2d at 291-92. In short, the amount of information required is "minimal." *Id.* at 289.

The case of *Emery v. United States*, 920 F. Supp. 788 (W.D. Mi. 1996) is also instructive . In *Emery*, one of the plaintiffs, James Emery, filed an administrative claim under the FTCA, in which Emery was listed as the only claimant. However, when detailing the nature of his claim on the form Emery provided, "Wife, Amelia Emery, has suffered a loss of consortium, love and affection." Emery, 920 F. Supp. at 789. The government sought to dismiss Amelia Emery as a party to the action for her failure to file a claim with the appropriate agency. In denying that request the *Emery* court concluded, "in light of the liberal reading of § 2675(a) required by *Williams v. United States* (693 F.2d 555, 557 (5th Cir. 1982)] and other federal case law, this Court holds that the notice requirement set forth in 28 U.S.C. § 2675(a) does not require a spouse to file a separate administrative claim form from her spouse's when filing a loss of consortium claim." *Emery*, 920 F. Supp. at 791. Furthermore, the *Emery* court concluded that the notice of Amelia Emery's claim provided sufficient notice to permit the agency to begin investigation of her claim too. In light of these cases and the information provided to the government in the Form 95 and in the First Amended Complaint, a copy of which was sent to the

- 10 -

government prior to the administrative claim being denied, the government was adequately informed of the claims of the parents in this case.

Defendant also claim that because the plaintiffs did not specifically reference negligent supervision, retention and supervision in their Form 95, then those claims should be dismissed. Again, the United States cites no authority in support of its contention. As we have seen, claimants are not required to detail each and every legal theory in their administrative claim. *see Brown v. United States*, 838 F.2d 1157, 1160-61 (11th Cir. 1988). It is sufficient if the information provided is enough to permit the government an opportunity to investigate the claim and engage in settlement negotiations if it thinks they are necessary. In this case, by sending a copy of the First Amended Complaint to the government, which does raise detailed claims of negligent supervision, the United States was provided with sufficient information to investigate the incident. Plaintiffs submit that they should be permitted to proceed with these claims.

## CONCLUSION

Based on the foregoing, plaintiff respectfully requests that the defendant's motion to dismiss the claims against it, be denied.

        Respectfully submitted,

_____
Geoffrey D. Allen
D.C. Bar 288142
1730 Rhode Island Ave. N.W.
Suite 206
Washington D.C. 20036
Tel: (202) 778-1167

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GURPAL SINGH, as Administrator** : <br> **of decedent RANJIT SINGH,** : <br>  : <br>    **Plaintiffs,** : <br>  : <br>  : <br>    v. : <br>  : <br>  : <br> **SOUTH ASIAN SOCIETY OF THE GEORGE** : <br> **WASHINGTON UNIVERSITY,** : <br> **Et Al.,** : <br>    **Defendants.** : | **Civil Action No. 06 0574** <br> **RMC** |

## ORDER

This matter comes before the Court on the motion of the United States to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and plaintiffs' opposition thereto. Having considered the submissions of the parties and the entire record herein, it is, this ___ day of _____, 2007 hereby,

ORDERED, that the motion be and hereby is DENIED.

_____
Judge Collyer

- 13 -