UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **GURPAL SINGH,** *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-574 (RMC) |
| **SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY,** *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is the motion of non-party Charles Ramsey, Chief of the Metropolitan Police Department, for a protective order absolving him from complying with a subpoena served on him by Defendant George Washington University. The University served the subpoena on August 10, 2006, seeking the following documents: (1) "The entire police file relative to the investigation surrounding the assault and death of Ranjit Singh"; and (2) "All incident reports and police files for any crime alleged to have been committed at the Old Post Office Pavilion or within two blocks of the Old Post Office Pavilion from March 2000 through March 2005." On November 8, 2006, Chief Ramsey moved for a protective order on the ground that the requested documents are subject to the law enforcement privilege and are, therefore, protected from disclosure. The University opposes the motion on the grounds that it is untimely and that Chief Ramsey has failed to provide sufficient information to establish the privilege. At the March 30, 2007, hearing on Chief Ramsey's motion, the Court ordered Chief Ramsey to provide certain documents from the

file for *in camera* review, which Chief Ramsey did on April 4, 2007. Having considered the parties' arguments and reviewed the documents submitted *in camera*, the Court concludes that Chief Ramsey's privilege claim is valid and must be sustained with respect to nearly all of the requested documents.

At the outset, the Court rejects the University's argument that Chief Ramsey waived the privilege by failing to respond timely to the subpoena. Even assuming that Chief Ramsey did not communicate his objections and privilege assertion to the University within 14 days of receiving the subpoena as required by Federal Rule of Civil Procedure 45(c)(2)(B), the only possible remedy would be an award of fees and costs; under no circumstances would the delay result in a waiver of the privilege, as the University suggests. *See In re Sealed Case*, 856 F.2d 268, 272 n.3 (D.C. Cir. 1988). And since there is no indication that the University incurred any additional costs as a result of the untimeliness, the University has no remedy for Chief Ramsey's alleged failure to comply with Rule 45. *See id.*; *see also* Fed. R. Civ. P. 37(a)(4).

Moving to the merits of Chief Ramsey's privilege claim, the Court finds that all but a few of the documents requested in the University's subpoena are protected by the law enforcement privilege. The law enforcement investigatory privilege is a qualified privilege that is based on the "public interest in safeguarding the integrity of ongoing criminal investigations." *Sealed Case*, 856 F.2d at 271. The privilege "is designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement and to preserve the integrity of law enforcement techniques." *Tri-State Hosp. Supply Corp. v. United States*, 238 F.R.D. 102, 106 (D.D.C. 2006) (internal quotation marks omitted). In order to establish the privilege, "three requirements must be met: (1) there must be a formal claim of privilege by the head of the

department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *Sealed Case*, 856 F.2d at 271.

In assessing the final factor — whether the information properly falls within the scope of the privilege — courts must "weigh the public interest in nondisclosure against the [requesting party's] need for access to the privileged information." *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (internal quotation marks and modifications omitted).

> To achieve this end, a number of factors must be considered, including: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.*

In support of his privilege claim, Chief Ramsey submitted the Declaration of Michael Anzallo, who is the MPD's Superintendent of Detectives. Commander Anzallo stated that he is the head of the department investigating the Singh homicide and, based on his review of the investigation file, he is claiming the law enforcement privilege. Anzallo Decl. ¶¶ 3, 5. He also

identified 46 kinds of documents or files within the Singh homicide file, listed the nature of those documents (*e.g.*, "Family Contact Record," "Department of Justice forms," "Witness lists," etc.), and made a blanket assertion that they "constitute protected confidential communications between law enforcement officers and citizen witnesses concerning the course of a criminal investigation and the disclosure thereof would compromise the ability of this Department to obtain future cooperation from those entities and persons." *Id.* ¶ 5. In support of Chief Ramsey's reply brief, Commander Anzallo submitted a supplemental declaration in which he provided a more detailed explanation why each document is privileged. *See* Anzallo Suppl. Decl. ¶ 5. At the hearing on the motion, Commander Anzallo provided even more detail in response to questions by the Court regarding specific documents in the file.

There is no dispute that Chief Ramsey has met the first two requirements for establishing the privilege: a formal claim of privilege by the head of the department having control over the requested information, and an assertion of the privilege based on actual personal consideration by that official. *See* Anzallo Decl. ¶¶ 3-5. The University argues, however, that Commander Anzallo's declarations do not describe the documents with enough specificity to determine whether they are properly subject to the privilege. The University is surely correct that Commander Anzallo's initial declaration was insufficient to establish that the privilege applied. It is not enough for a custodian to identify a category of documents and assert, as an *ipse dixit*, that the documents are protected. Rather, "the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *Sealed Case*, 856 F.2d at 271.

But Commander Anzallo's Supplemental Declaration, together with the representations he made in open court during the motion hearing, provide enough specificity for the Court to determine whether the documents are covered by the privilege. Commander Anzallo has explained that many of the documents contain the names of persons who have cooperated in the investigation and other information which, if disclosed, could negatively affect the ability of law enforcement officials to gain cooperation in the future and could impede the apprehension and prosecution of Mr. Singh's suspected killer. In addition, many of the documents contain evaluation and analysis by the detectives investigating Mr. Singh's murder. Thus, Commander Anzallo has explained that disclosure of the documents will discourage citizens from providing information, that persons who have given information would be injured by having their identities disclosed, that the materials are evaluative rather than factual in nature, and that the investigation has not been completed. The Court therefore concludes that the first, second, fourth, and sixth, *Tuite* factors weigh heavily in favor of Chief Ramsey's privilege claim, and the public interest in nondisclosure of documents in this active homicide investigation file is significant.

Against the strong public interest in nondisclosure, the Court must weigh the University's need for the information. The University argues that its civil liability for Mr. Singh's death will depend upon the details of the crime — for instance, whether "Mr. Singh was drinking (he was underage), provoked the attack, or left the Old Post Office Pavilion through an unauthorized exit" are key facts that may give rise to certain defenses. University's Opp'n at 20. Thus, the University claims that it needs contemporaneous witness statements and other information in the MPD's possession to determine exactly what happened on the night that Mr. Singh was murdered.

Although the University clearly has a legitimate need for the information in question, the Court does not find the need to be so strong that it outweighs the public interest in nondisclosure. The University knows who the percipient witnesses are, and it can depose them in order to learn what transpired on the night in question. While contemporaneous witness statements may be more reliable than deposition testimony given years after the fact, the Court does not find that potential problem with the quality of the evidence to be so significant that withholding the homicide file from disclosure would seriously prejudice the University's ability to defend itself in this case. Moreover, most of the information that the University seeks from the police file is available from other sources. It would be extremely helpful and convenient for the University to have the documents contained in the MPD's investigation file, but the University's interest in obtaining those documents fails to outweigh the public's interest in nondisclosure.

The Court does find, however, that some of the documents in the investigation file are not privileged. Of the documents submitted to the Court for *in camera* review, it appears that the General Service Administration Reports and the District of Columbia Alcoholic Beverage Regulation Administration Case Report are not law-enforcement documents and were not prepared at the request of the MPD based upon information that the MPD learned during its investigation. Accordingly, the law enforcement privilege does not apply to those documents and they must be produced immediately.

For the foregoing reasons, it is hereby

**ORDERED** that Chief Charles Ramsey's Motion for Protective Order [Dkt. No. 30] is **GRANTED IN PART AND DENIED IN PART**. The Motion is denied with respect to the

General Service Administration Reports and the District of Columbia Alcoholic Beverage Regulation Administration Case Report; the Motion is granted in all other respects.

**SO ORDERED**.

Date: April 30, 2007                                    /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge