## SPECIAL EVENT
## LICENSE AGREEMENT

THIS SPECIAL EVENT LICENSE AGREEMENT (this "Agreement") is entered into as of this <u>15th day of March 2005</u>, by and between <u>THE GENERAL SERVICES ADMINISTRATION</u>(the "Licensor"), and <u>THE GEORGE WASHINGTON UNIVERSITY</u> whose address is <u>514 19TH STREET, NW #501, WASHINGTON, DC 20052</u>(the "Licensee").

## RECITALS:

A.    Licensor is the owner of a leasehold estate in property located at 1100 Pennsylvania Avenue, N.W., Washington, D.C. 20004, known as The Pavilion At The Old Post Office (hereinafter the "Center").

B.    Licensee wishes to hold and conduct a special event within the Center.

C.    Licensor is agreeable to such activities, but only on the terms and conditions set forth in this Agreement.

## 1.
## DEFINITIONS

A.    "Gross Sales" shall have the meaning set forth in Section A. - N/A

B.    "GSA" shall mean the United States of America, acting through the General Services Administration.

C.    "GSA Lease" shall mean that certain Ground Lease by and between GSA and Licensor, as amended.

D.    "License Fee" shall mean the Minimum License Fee and the Percentage License Fee, as well as all other sums due and payable by Licensee hereunder.

E.    "Licensed Area" shall mean the area of the Center outlined on <u>Exhibit A</u>.

F.    "Minimum License Fee" shall mean the sum of <u>$ 10,000.00</u>, due and payable to Licensor upon execution of this Agreement.

G.    "Percentage License Fee" shall mean   <u>N/A</u> % of Gross Sales generated from each Special Event in excess of $ <u>N/A</u>.

H.    "Permitted Use" shall mean the limited use of holding and conducting a special event described as an <u>AFTER-HOURS CELEBRATION FOR BHANGRA BLOWOUT</u>.

I.    "Plans" shall mean the listings, drawings and/or photographs of all fixtures, furnishings, equipment, displays, stands, decorations and signs to be installed by Licensee in the Licensed Area, as approved by Licensor, which Plans shall be subject to alteration by Licensor at any time.

J.    "Property Manager" shall mean Hill Partners, Inc.

K.    "Security Deposit" shall mean <u>$ 7,000.00</u> . *$5,000.00 to cover normal custodial + security costs; Remaining $2000.00 to be returned after event if no incidentals are incurred

L.    "Special Event" shall mean each special event held at the Center during the Term of this Agreement.

"Term" shall mean <u>03/26/05</u> through <u>03/27/05</u> unless sooner terminated pursuant to the provisions of this Agreement.
9:00pm - 2:00pm

pop formdocs specevt.doc
110-981


EXHIBIT
G
TIANEX

000104

1

HP000009

2.
## GRANT OF LICENSE

Subject to the terms and conditions set forth herein, Licensor hereby grants to Licensee a license to use the Licensed Area solely for the Permitted Use. Licensor may change the location of said Licensed Area at any time during the term of this Agreement. Licensee acknowledges and agrees that (i) the physical condition of the Licensed Area during the Term shall be the same as on the date of execution of this Agreement and Licensor is under no obligation to make any alterations to the Licensed Area or to permit any alterations by any third parties, except for installations by Licensee made in accordance with Plans approved in accordance with the terms of this Agreement; (ii) the Licensed Area is located in a multi story atrium within a historic building that may not allow for optimal environmental conditions; and (iii) Licensor leases the Center from the GSA under the GSA Lease and Licensor will have no ability thereunder to cause the GSA to alter any environmental conditions within the Center for the Special Event.

3.
## LICENSE FEES

A.    The Minimum License Fee is due and payable upon the execution of this Agreement, and Licensor hereby acknowledges receipt from Licensee of the Minimum License Fee. All payments of the Percentage License Fee with respect to each Special Event are due and payable within five (5) days following each Special Event, and shall be submitted along with a statement of Licensee's Gross Sales for such Special Event. All additional License Fees required under this Agreement shall be due and payable upon demand by Licensor. Checks shall be made payable to The Pavilion at the Old Post Office.

B.    All payments of the License Fee are due and payable without defense or offset. If Licensee fails to pay any amount due hereunder within three (3) days after the date the same is due, an additional charge equal to $25.00 shall be paid by Licensee as an additional License Fee to reimburse Licensor for its additional administrative cost of collection. In addition, any fees not paid within three (3) days after the same are due hereunder shall bear interest at 18% per annum from the original due date until paid.

C.    In the event Licensee should elect to cancel this Agreement prior to the date of a Special Event, the Minimum License Fee paid upon the execution of this Agreement shall be retained by Licensor as reimbursement for expenses incurred by it in connection herewith. In the event Licensor should elect to cancel agreement prior to the date of the Special Event, Licensor shall provide a full refund to Licensee of the monies paid to Licensor.

000105

prp [numdocs] specevt .doc
[5/94]

HP000010

4.

SALES REPORTS

A.   "Gross Sales" shall mean receipts from gross sales from all sources conducted upon or from the Licensed Area by Licensee, whether such sales be evidenced by check, credit, charge account, exchange or otherwise, and shall include, but not be limited to, the amounts received from admission charges, the sale of food or beverages, the sale or rental of goods, wares, and merchandise, and for services performed on or at the Licensed Area, together with the amount of all orders taken or received at the Licensed Area, whether such orders be filled from the Licensed Area or elsewhere, and whether such sales be made by means of direct sales or by use of vending devices in the Licensed Area. Gross Sales shall not include the amount of any sales, use or gross receipts tax imposed by any federal, state, municipal or other governmental authority directly on sales and collected from customers, provided that the amount thereof is separately added to the selling price and paid by Licensee to such governmental authority. No franchise or capital stock tax and no income or similar tax based upon income or profits as such shall be deducted from Gross Sales in any event whatsoever. Each charge or sale upon installment or credit shall be treated as a sale for the full price in the month during which such charge or sale shall be made, irrespective of the time when Licensee shall actually receive payment.

B.   Licensee shall use a cash register with tape or issue numbered sales slips and maintain adequate books, records and sales reports covering its business at the Center for the purpose of enabling Licensor to verify all sales made by Licensee at or from the Licensed Area. Upon three (3) days' advance notice from Licensor, Licensee shall make available to Licensor or its agents or accountants such books, records and sales reports for inspection and audit. If Licensee is charging admission to the Special Event, Licensor shall purchase, at Licensee's expense, admission tickets for the Special Event and Licensee shall return to Licensor all unused admission tickets after the Special Event. Alternatively, Licensee shall order admission tickets for the Special Event from a bonded ticket company and provide Licensor with a manifest from such ticket company detailing the number of tickets available for sale and the price of each ticket.

5.

TERM AND SURRENDER OF PREMISES

A.   The license granted herein shall be valid solely during the Term of this Agreement.

B.   Upon the conclusion of each Special Event, or upon the earlier termination of this Agreement in accordance with the terms hereof, Licensee shall peacefully yield to Licensor the Licensed Area in substantially the same condition as it was in prior to such Special Event.

C.   If Licensee has failed to remove any property brought by it to the Center, said property shall be deemed abandoned by the Licensee and shall become the property of the Licensor, and Licensor may, in addition to all other remedies available to it, remove and dispose of said property, without in any way being liable for conversion or negligence by reason of the acts of Licensor or anyone claiming under it. Licensee shall pay to Licensor the costs of such removal upon demand as an additional License Fee.

000106

pop\forwdocs\specevt.doc
*10/98.

3

6.

DEFAULT BY LICENSEE

A.    If Licensee fails to perform any covenant or obligation herein, at Licensor's option, all rights and privileges granted herein to Licensee shall immediately terminate upon written notice from Licensor.

B.    In the event of a default by Licensee under this Agreement, Licensor shall be entitled to pursue all rights and remedies afforded it at law or in equity.

C.    Licensee shall pay all costs, expenses and attorneys' fees that may be incurred by or on behalf of Licensor in enforcing the terms of this Agreement.

D.    In the event Licensor was forced to expend amounts to cure a default or to perform any obligations of Licensee, in addition to the actual cost thereof, Licensor shall be entitled to collect from Licensor an additional "administrative charge" equal to twenty percent (20%) of the total sums expended by Licensor.

7.

LICENSOR'S APPROVALS

A.    Licensee shall not install any furniture, fixtures, furnishings, equipment, displays, stands, decorations or signs in the Licensed Area without, in each instance, first obtaining Licensor's prior written consent, which consent may be withheld for any reason in Licensor's sole and absolute discretion.

B.    Not less than fifteen (15) days prior to the first Special Event, Licensee shall submit for Licensor's approval listings, drawings and/or photographs of any furniture, fixtures, furnishings, equipment, displays, stands, decorations or signs which Licensee proposes to install in the Licensed Area.  Upon approval by Licensor, such listings, drawings and/or photographs shall be deemed the Plans and shall be attached hereto as Exhibit C; provided, however, that Licensee acknowledges that Licensor may require subsequent changes to the Plans, in Licensor's sole discretion.

C.    Licensee acknowledges that the primary function of the Center is to serve as a retail/shopping environment.  In the event that Licensee is granted the right to use the Licensed Area in advance of or after a Special Event for the purpose of setting up, tearing down or rehearsing said Special Event as specified in Section 1(M) of this Agreement, Licensee shall leave the Licensed Area and the adjoining areas of the Center in such a condition that the Center may function without hindrance from Licensee's furniture, fixtures, furnishings, equipment, displays, stands, decorations, signs, merchandise, employees or agents.  Licensor retains the sole and absolute right to remove or alter Licensee's set up in order to restore the Licensed Area and the adjoining areas of the Center in the event that Licensor determines that such set-up unduly interferes with the operation of the Center as a retail/shopping environment. Such alterations by Licensor shall be made at the sole cost and expense of Licensee, payable upon demand as an additional License Fee.

8.

LICENSEE'S OPERATIONS

A.    Licensee shall (i) conduct each Special Event at the Licensed Area at all times in a dignified manner as determined by Licensor in its sole discretion, and (ii) keep all furnishings, equipment, displays, stands, decorations and signs used at the Licensed Area in a neat, clean, sanitary and safe condition and in good operating order.  The Licensed Area shall not be used in a manner that would require Licensor to make any addition or alteration to or in the Center.  Licensee acknowledges and agrees that (x) it shall not have exclusive use of the Licensed Area during the time period in which the Center is open for business, and (y) Licensor has made no

000107

pop formdocs spacent .doc
.ilt ..

4

HP000012

representations that the tenants in the Center will remain open for business
during Licensee's Special Event.

000108

pcp:\formdocs\spcevnt.doc
10/9/95

HP000013

B.    Licensee further covenants and agrees as follows:  (i) Licensee shall ensure that deliveries or shipments of any kind to and from the Licensed Area, including loading and unloading of furniture, fixtures, furnishings, equipment, displays, stands, decorations, signs or merchandise shall be made only in the manner designated by Licensor, and only at such times as may be designated for such purpose by Licensor; (ii) Licensee shall keep garbage and refuse containers specified by Licensor and shall deposit all garbage and refuse in designated areas and shall keep the Licensed Area and the adjoining areas of the Center free and clear of an accumulation of trash; (iii) Licensee shall store soiled or dirty linen in approved fire rated containers;  (iv) Licensee shall not place, suffer or permit any obstructions in the Licensed Area or the adjoining areas of the Center; (v) Licensee shall be responsible for procuring any and all permits and/or licenses required for the conduct of Licensee's Special Event at the Licensed Area, including, without limitation, music and performance licenses and a liquor license, copies of which shall be delivered to Licensor at least five (5) days prior to the first day of each Special Event; (vi) Licensee shall comply with all applicable laws, rules and regulations of governmental authorities having jurisdiction over the Center and its use; (vii) Licensee shall not in any way interfere with or cause disturbance to the use and quiet enjoyment of any portion of the Center by the Licensor, any tenants or licensees of the Center, their invitees or licensees; (viii) Licensee shall be responsible for payment of any and all taxes as required by law and governmental authorities having jurisdiction;  (ix) Licensee shall abide by the rules and regulations adopted by Licensor for the operation of the Center; and (x) in no event shall admissions tickets be distributed in excess of the capacity of the Licensed Area or the number of people in attendance at a Special Event exceed the capacity of the Licensed Area.  Licensee further agrees that Licensor may amend the foregoing or add new rules and regulations which are reasonable for the use and care of the Licensed Area and the operation of business in the Center.

C.    The Licensed Area shall be clearly marked off by Property Manager and barriers to the other areas of the Center shall be installed and maintained by Property Manager during each Special Event, and Licensor shall, at the expense of Licensee, to the extent deemed appropriate by Property Manager, monitor said barriers with guards to prevent unauthorized persons from entering areas of the Center not included within the Licensed Area and provide other security measures deemed appropriate by Property Manager.   In the event Licensor is not able to adequately monitor said barriers, Licensor may terminate this Agreement immediately.  Expenses incurred by Licensor under this section in excess of the amount deducted therefor from the Security Deposit pursuant to Section 15 shall be payable by Licensee upon demand as an additional License Fee

D.    Licensee shall be solely responsible for (i) setting up all facilities required for its Special Event, as approved by Licensor pursuant to Section B above, and for coordinating such set-up with the Property Manager, (ii) removal of all such facilities at the conclusion of each Special Event, (iii) clean-up of all debris and (iv) restoration of the Licensed Area and the adjoining areas of the Center to substantially the same condition as existed prior to such Special Event, each at the sole cost and expense of Licensee.

E.    Licensor will provide, at the expense of Licensee, such custodial services as Licensor deems appropriate for the conduct of each Special Event. Expenses incurred by Licensor under this section in excess of the amount deducted therefor from the Security Deposit pursuant to Section 15 shall be payable by Licensee upon demand as an additional License Fee.

000109

HP000014

9.

## REPAIRS TO LICENSED AREA

A.    Licensee covenants and agrees to maintain the Licensed Area in good order at all times during the term of this Agreement and to return same to Licensor upon the conclusion of each Special Event in substantially the same condition as it was in prior to such Special Event.  In no event shall this section permit Licensee to make repairs to the Licensed Area or the Center.  All repairs to the Licensed Area and the Center shall be made by Licensor and to the extent such repairs are required as a result of a Special Event, such repairs shall be made at the sole cost and expense of Licensee.

B.    Licensor shall have no obligation at any time during the Term to make any changes or improvements to the Licensed Area of the Center to prepare the Licensed Area for a Special Event.  If the Center shall be damaged or destroyed by fire or other casualty, or shall be subject to full or partial condemnation, Licensor shall have no obligation to restore the same unless it shall so elect in its sole discretion.  If Licensor shall not elect to restore the Center, this Agreement shall be deemed terminated without further liability on the part of either party to the other, other than liability which arose prior to such termination. and Licensee shall refund all monies and deposits

C.    The Licensee covenants and agrees that no waste or damage shall be committed upon or to the Licensed Area and the adjoining areas of the Center; that the Licensed Area shall be used for only the Permitted Use; that said Licensed Area shall not be used for any unlawful purpose and no violations of law shall be committed thereon.  Throughout the term hereof, Licensee, at Licensee's sole cost and expense, shall exercise reasonable care with respect to the Licensed Area and the adjoining areas of the Center; promptly pay the expense of all repairs; give prompt notice to Licensor of any damage that may occur; and execute and comply with all laws, rules, orders, ordinances and regulations at any time issued or in force, applicable to the Licensed Area or the Licensee's use thereof.

10.

## INSURANCE

A.    At least fifteen (15) days prior to the first Special Event, Licensee shall provide Licensor with a certificate of insurance stating that the Licensee has obtained and has in effect the following forms of insurance:

(i)    broad form commercial general liability insurance, including personal injury, property damage, products liability, completed operations and fire legal liability coverage with a single combined liability limit of not less than $5,000,000 for bodily injury, property damage and personal injury. Such coverage shall insure against liability of Licensee and its authorized representatives arising out of or in connection with Licensee's use of the Licensed Area.  The broad form liability insurance shall insure performance by Licensee of the indemnity provisions of Section 11 and be primary to Licensor's insurance.

(ii)    worker's compensation and employers' liability insurance affording statutory workers' compensation benefits for the District of Columbia and employers' liability coverage in an amount not less than the amount required by statute.

(iii)    liquor liability insurance in an amount not less than $5 million if Licensee intends to serve liquor at the Special Event.

(iv)    "All risk" insurance on all furniture, fixtures, furnishings, equipment, displays, stands, decoration, signs or merchandise kept, stored, or maintained in the Center by or on behalf of Licensee for their full replacement value.

CC0110

HP000015

B.    All insurance required to be provided by Licensee under this Agreement:

(i)    shall be issued by insurance companies which are authorized to do business in the District of Columbia and which have the financial rating of at least an A V, B+ VI or B VII status as rated in the most recent edition of Best Insurance Reports;

(ii)    shall be issued as a primary policy and shall expressly provide that any policies carried by Licensor or Property Manager shall be excess and noncontributory of such primary insurance;

(iii) shall, with the exception of the worker's compensation and employers' liability policy, name Licensor, Property Manager and the GSA as additional insureds and shall expressly provide that the interest of such additional insureds shall not be affected by any breach by Licensee of any policy provision; and

(iv)    shall contain an endorsement requiring at least thirty (30) days' prior written notice to Licensor before cancellation or change in coverage, scope or amount of any policy.

C.    It is understood and agreed that all furniture, fixtures, furnishings, equipment, displays, stands, decoration, signs or merchandise kept, stored, or maintained in the Center by Licensee shall be at the sole risk of Licensee.  Licensor shall not be liable to Licensee for any loss of property, business or other consequential loss or damage from any cause whatsoever.  Licensor shall not be responsible or liable at any time for any loss or damage to either the person or property of Licensee, or its agents, servants, contractors or invitees, that may be occasioned by or through the acts or omissions of any person or persons.

D.    In the event that Licensee fails to comply with the provisions of this section, Licensor may, in addition to all of its other rights and remedies available to it under this Agreement and at law, obtain such insurance at Licensee's sole cost and expense, payable upon demand by Licensor as an additional License Fee.

## 11.
## RELEASE AND INDEMNITY

As material consideration to induce Licensor to enter into this Agreement, Licensee agrees that none of Licensor, Property Manager or GSA (collectively, the "Indemnified Parties") shall be liable to Licensee for any damages suffered by Licensee or Licensee's property from any cause, other than the gross negligence or willful misconduct of such Indemnified Party, and Licensee waives all claims against the Indemnified Parties for damage to persons or property arising for any reason, except for damage resulting directly from such Indemnified Party's gross negligence or willful misconduct. Licensee shall indemnify, hold harmless, and at the election of each of the Indemnified Parties, defend such Indemnified Party from any and all legal and equitable claims, demands, causes of action, liabilities, obligations, costs and expenses (including attorneys' fees, court costs and litigation expenses) of any kind arising out of injury, damage or other loss to any person or property occurring in, on or about the Center or arising out of the use of the Center by Licensee, its employees or invitees or Licensee's breach of this Agreement.  Licensee's obligations under this section shall not be limited to the amounts of coverage of insurance maintained or required to be maintained by Licensee under this Agreement.  It is the intention of the parties that this indemnity does not require payment by or on behalf of the Indemnified Parties as a condition precedent to recovery by the Indemnified Parties against Licensee under this indemnity and that the Indemnified Parties shall be indemnified by Licensee to the full extent permitted by law.

000111

HP000016

12.
## EXCULPATION

Licensee hereby releases Licensor, Property Manager and GSA to the fullest extent permitted by law from all claims of every kind resulting in loss or damage to either the person or property of Licensee or its agents, servants, contractors or invitees that may be occasioned by or through the acts or omissions of any person or persons other than the agents or employees of Licensor or the employees of GSA, while acting within the scope of their employment.    Neither Licensor nor GSA shall be responsible or liable to Licensee, its agents, servants, contractors or invitees for any loss or damage caused to their persons or property as a consequence of the breaking, bursting, stoppage or leaking of water, sewer, sprinkler or steam pipes, gas lines or electrical cable and wires.    Further, neither the Licensor nor GSA shall have any liability of any kind, except for the return of any pre-paid portion of the Minimum License Fee, in the event that the Center becomes unavailable as a result of fire, casualty or other cause beyond the control of Licensor or GSA.        *or any of the above occurrences*

13.
## ASSIGNMENT

Licensee shall not assign this Agreement or the license granted hereunder without the prior written consent of Licensor, which Licensor may withhold in its sole and absolute discretion.  The consent by Licensor to any assignment shall not constitute a waiver of the necessity for such consent to any subsequent assignment.  This prohibition against assignment shall be construed to include a prohibition against any assignment by operation of law.  Notwithstanding any assignment, Licensee shall remain fully liable and shall not be released from performing all of the terms of this Agreement.

000112

pg.tcswdocs.space-L.doc
-10.94-

HP000017

14.

NOTICES

All notices required or permitted under this Agreement shall be in writing and deemed to be properly served if sent by registered or certified mail, or overnight delivery service or via professional messenger service to the addresses stipulated below. All notices sent by certified or registered mail, return receipt requested, first-class postage prepaid shall be deemed effective when mailed, and notices sent by any other method of delivery specified in this section shall be effective upon receipt. All requests, consents and approvals required or permitted under this Agreement shall be in writing to the following addresses:

If to Licensor:

The General Services Administration
Regional Office Building
7th & D Streets, SW
Washington, DC  20407
Attn: Robert Roop, Contracting Officer

With a copy to:

Hill Partners, Inc.
The Pavilion at the Old Post Office
1100 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Attention:  General Manager

If to Licensee, to the address set forth on the first page hereof.

Either party may designate, by notice to the other, a substitute address for notices, and thereafter any written notices shall be directed to such substitute address.

15.

SECURITY DEPOSIT

Not less than fifteen (15) days prior to the first day of the first Special Event, Licensee shall pay the Security Deposit, to be held as security for the payment of fees, for the performance of all obligations of Licensee hereunder and for the repair of any damage to the Center as a result of the Special Event. Except as set forth below, the Security Deposit, without interest, shall be refunded to Licensee within thirty (30) days after the end of the Term, provided Licensee has performed all required obligations hereunder. Licensee acknowledges and agrees that the cost of custodial services and security measures shall be deducted from the Security Deposit and that portion of the Security Deposit shall in no event be returned to Licensee. Upon any default by Licensee hereunder, all or part of the Security Deposit may, at Licensor's sole option, be applied against amounts due hereunder; and Licensee agrees that all or such portion of the Security Deposit shall be deemed to be the property of Licensor.

000113

HP000018

16.
## ENTIRE AGREEMENT AND MISCELLANEOUS

A.    All provisions herein shall be binding upon and shall inure to the benefit of the parties hereto, their legal representatives, successors and those assigns to whom assignment of rights hereunder is permitted.    Each provision to be performed by Licensee shall be construed to be both a covenant and a condition, and if there shall be more than one Licensee, they shall all be bound, jointly and severally, by these provisions.

B.    It is hereby declared by and between the parties that it is not the intention of either Licensor or Licensee to create between them the relationship of Landlord and Tenant or to confer any rights upon Licensee which would amount in law to a landlord-tenant relationship.    Rather, this Agreement is intended solely to create a bare privilege on the part of the Licensee, personal to Licensee, to operate in the Licensed Area and in the manner described in this Agreement.

C.    Anything in this Agreement to the contrary notwithstanding, Licensee agrees that it shall look solely to the interest of the Licensor in improvements comprising the Center, subject to the prior rights of the lessor under the GSA Lease, and any mortgagee or trustee, for the collection of any judgment or other judicial process requiring the payment of money by Licensor in the event of any defaults or breach by Licensor with respect to any of the terms, covenants and conditions of this Agreement to be observed and/or performed by Licensor, and no other assets of the Licensor shall be subject to levy, execution or other procedures for the satisfaction of Licensee's remedies.    In the event Licensor transfers its interest in the Center, except as collateral security for a loan, upon such transfer, Licensor shall be released from all liability and obligations hereunder.

D.    This Agreement and the exhibits, riders and/or addenda attached, if any, set forth the entire agreement between the parties hereto.

17.
## SUBORDINATION PROVISIONS

Licensee agrees that this Agreement and the license granted hereunder is and shall be subordinate to the terms of the GSA Lease and to the lien of any mortgage, deed of trust, or the lien resulting from any other method of financing or refinancing now or hereafter placed against the Center and to all renewals, modifications, replacements, consolidations and extensions thereof. Upon receipt from the Licensor, Licensee agrees to execute and deliver any and all documents confirming the subordination of its rights under this Agreement as aforesaid.

Licensee expressly covenants and agrees to abide by those certain clauses contained in the GSA Lease which are attached hereto as Exhibit B and incorporated herein.

pcplloandocs:aparent doc
453'941

11

000114

HP000019

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto, intending to be legally bound hereby, under seal, as of the day and year first above written.

LICENSOR:

THE GENERAL SERVICES ADMINSTRATION

By:  _____
     The General Services Administration

LICENSEE:

WITNESS:

_____        By:  _____  3/15/05
                                      Name:  Tim Miller
                                      Title:  Director
                                      THE GEORGE WASHINGTON UNIVERSITY

**Exhibits**
Exhibit A -    Site Plan
Exhibit B -    Prime Master Lease Clauses and Certification
               Regarding Crimes
Exhibit C -    Licensee's Plans and Drawings
Exhibit D -    Rules and Regulations

000115

HP000020

### EXHIBIT B

PRIME MASTER LEASE CLAUSES

1.   EQUAL OPPORTUNITY:

    a.   The Licensor will not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin.  The Licensor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex or national origin.  Such action shall include, but not be limited to, the following:  employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.  The Licensor agrees to cause to be posted in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity Clause.

    b.   The Licensor will, in all solicitations or advertisements for employees placed by or on behalf of the Licensor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

    c.   The Licensor will send to each labor union or representative or workers with which he has collective bargaining agreement or other contract or understanding, a notice to be provided by the Contracting Officer, advising the labor union or workers' representative of the Licensor's commitments under this Equal Opportunity Clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

    d.   The Licensor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

    e.   The Licensor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

    f.   In the event of the Licensor's noncompliance with the Equal Opportunity provisions of this Lease with any of the said rules, regulations, or orders, the Licensor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 or September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law; provided, however, that the Licensor must first by given written notice of any such noncompliance followed by a reasonable period of time in which to institute compliance.

    g.   The Licensor will include the provisions of subparagraphs a. through f. above in all contracts entered into by it for the performance of the work described in Paragraph 3.2 hereof unless otherwise exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each contractor participating in such work. The Licensor will take such action with respect to any such contract as the Contracting Officer may direct as means of enforcing such provisions, including sanctions for noncompliance; provided, however, that in the event the Licensor becomes involved in, or is threatened with litigation with a contractor as a result of such direction by the Contracting Officer, the Government may enter into such litigation to protect the interests of the Government.

pcp/formdocs.agreemt.doc
(10/74)

000116

HP000021

2.    FACILITIES NONDISCRIMINATION:

a.    As used in this Paragraph, the term ''facility'' means stores, shops, restaurants, cafeterias, restrooms, and any other facility of a public nature in the Demised Premises, Joint Use Areas or Public Use Areas.

b.    The Licensor agrees that he will not discriminate by segregation or otherwise against any person or persons because of race, color, religion, sex, or national origin in furnishing, or by refusing to furnish, to such person or persons the use of any facility, including any and all services, privileges, accommodations, and activities provided thereby.  Nothing herein shall require the furnishing to the general public of the use of any facility customarily furnished by the Licensor solely to Sublessees, their invitees.

c.    It is agreed that the Licensor's noncompliance with the provisions of this Paragraph shall constitute a breach of this Lease.  In the event of such noncompliance, the Government may take appropriate action to enforce compliance, after giving written notice of such noncompliance to the Licensor, together with a reasonable opportunity in which to cure such noncompliance. Noncompliance shall not be grounds for a termination of the Lease unless and until (I) a court of law shall find, after a hearing, that there has been a pattern of repeated and willful violations of the covenants in subparagraph b. above by the Licensor; and (ii) the Government has first given the Leasehold Mortgagee the opportunity to cure such violations by foreclosing its Leasehold Mortgage and assuming the licensor's position hereunder.  In the event of termination, the Licensor shall be liable for all reasonable costs of the Government acquiring a substitute lessee.

d.    It is further agreed that from and after the date hereof, the Licensor will, at such time as any Sublease is to be entered into or a concession is to be permitted to operate, include or require the inclusion of the foregoing provisions of this Paragraph in every such Sublease or concession pursuant to which any person other than the Licensor operates or has the right to operate any facility.  The Licensor also agrees that it will take any and all lawful actions as expeditiously as possible, with respect to any such agreement as the Contracting Officer may direct, as a means of enforcing the intent of this Paragraph in every such Sublease or concession pursuant to which any person other than the Licensor operates or has the right to operate any facility.  The Licensor also agrees that it will take any and all lawful actions as expeditiously as possible, with respect to any such agreement as the Contracting Officer may direct, as a means of enforcing the intent of this Paragraph, including, but not limited to, termination of the agreement or concession and institution of court action.

3.    EXAMINATION OF RECORDS:

a.    <u>Right to Audit</u>.  The Government, or its authorized designee, shall have the right to audit the Licensor's records pertaining to gross rentals received by the Licensor during the term of this Lease.  If such audit shall disclose a deficiency for unpaid rent to the Government, the Licensor shall promptly pay to the Government the amount of such deficiency, together with interest thereon at the average rate of interest set by the ''90 Day U.S. Treasury Bills'' or its successor for the period of the deficiency.  If such audit reveals overpayment of rentals by the Licensor to the period of the deficiency.  If such audit reveals overpayment of rentals by the Licensor to the Government, the Developer shall be given a credit against the next successive installment(s) of rent payable hereunder in the amount of such overpayment.

000117

pup\fcrmdocs\spacext.doc
17-98

HP000022

b.    Operating Statements.    The Licensor shall submit to the Government:
(i) on or before the sixtieth (60th) day following the end of each quarter of
each Lease Year during the term, a statement showing in reasonable detail the
amount of gross rentals received by the Licensor during the preceding quarter,
certified by an authorized representative of the Licensor, and (ii) on or
before the ninetieth (90th) day following the end of each Lease Year during
the term, a statement showing in reasonable detail the amount of gross rentals
received by the Licensor during the preceding Lease Year, certified by an
independent Certified Public Accountant.

(1)    The Licensor agrees to retain and preserve all records pertaining
to gross rentals and operation of the Project for at lease three (3) years
after the expiration of each Lease Year.

(2)    The Licensor agrees that the Comptroller General of the United
States, the administrator of General Services, or any of their duly authorized
representatives shall, until the expiration of three (3) years after the end
of each Lease Year, have access to and the right to examine any books,
documents, papers, and records of the Developer pertaining to the reports,
statements and budgets required to be submitted by the Licensor to the
Government.

(3)    The Licensor further agrees to include in all contracts entered
into pursuant to this Lease, including all Subleases, a provision to the
effect that the Contractor or Sublessee agrees that the Comptroller General of
the United States, the Administrator of General Services or their
representatives shall have access to and the right to examine any pertinent
books, documents, papers, and records of such Contractor/Sublessee involving
transactions related to the Contract/Sublease including those related to
rentals paid or payable under such Contract/Sublease for at lease three (3)
years after the expiration of each year of the Contract/Sublease.

4.    SUBLEASE CERTIFICATION:

The Licensor may make Subleases consistent with the Lease Plan for such
term of years and otherwise upon such terms and conditions as it deems
appropriate; provided, however, that each Sublease shall be for a fair market
rental value and shall contain provisions to the following effect:  (i) that
it is subject to all of the terms and conditions of this Lease; (ii) that it
shall expire on or prior to the expiration date of this Lease, and (iii) all
Subleases shall contain a ``Certification Regarding Previous Crimes,
Debarments, Suspensions and Default'' as provided by the Government.

000118

HP000023

CERTIFICATION REGARDING PREVIOUS CRIMES,
DEBARMENTS, SUSPENSIONS, AND DEFAULTS

(a) _____ THE GEORGE WASHINGTON UNIVERSITY _____
Licensee's Name

certifies to the best of his/her/its knowledge that, within 3 years prior to the date of this License, it and/or any of its officers or principal employees responsible for obtaining or administering a License within the Building:

(1)    Have [  ] have not [ ✓ ] been convicted of:

    (i)        a criminal offense incident to a public contract or private contract or subcontract thereunder;

    (ii)       a violation of the Organized Crime Control Act of 1970;

    (iii)     a violation of the Federal Antitrust statutes arising out of the submission of bids or proposals;

    (iv)      embezzlement or fraud or equivalent crimes indicative of lack of business integrity.

(2)    Have [  ] have not [ ✓ ] been debarred or suspended from the award of public contracts.

(3)    Have [  ] have not [ ✓ ] had a public contract terminated for default.

(b)    A certification that any of the items in (a) above exist will not necessarily result in the withholding of the execution of the License. However, the certification will be considered in connection with the determination of prospective Licensee's responsibility. Prospective Licensees who fail to furnish the certification and provide such additional information as requested by the Developer will not be found acceptable.

_____ 3/15/05
Signature

000119

pop\formdocs\specevt.doc
'10 '94

16

HP000024

EXHIBIT D

THE PAVILION AT THE OLD POST OFFICE
SPECIAL EVENT LICENSE AGREEMENT
RULES AND REGULATIONS

The Licensee and all employees working for the Licensee must be familiar with these Rules and Regulations. Non-compliance with the established Rules and Regulations shall be a breach of the Special Event License Agreement (the "Agreement") and the Licensor may impose any remedy provided under the terms of the Agreement.

1.  Guarantee

Licensee must guarantee all products sold and provide information to customers so that they can be satisfied by the Licensee's guarantee.

2.  Display Fixtures

Display fixtures may not be attached to any wall, fixture or part of the Center with nails, screws, bolts, glue, staples, etc. Any Licensee who defaces the Center will be responsible for the cost of repairs. If any element is damaged extensively, the Licensee will be in violation of the Agreement and the Agreement may be terminated. The Licensor expressly reserves the right to recover the costs of repairing damage to the Center caused by Licensee.

3.  Electricity

Some electricity is available; however, it is very limited. Licensee must provide its own electrical equipment to be installed by Licensor at Licensee's expense.

4.  Signs

Signs must be approved by the Licensor, in advance, and only those which are professionally prepared are acceptable.

5.  Deliveries

Access to the Licensed Area is available through the loading dock area. All furniture, fixtures, furnishings, equipment, displays, stands, decorations, signs, inventory and display items should be moved between floors by the service elevators only.

6.  Storage

It is recommended that Licensee take down and store all merchandise and display fixtures during non-operating hours. The Center has some limited non-exclusive storage areas available for Licensee's use for a nominal fee. Licensor assumes no responsibility for the Licensee's merchandise or personal property.

000120

PUP-Furnace-specevt.doc
'01-'96'

17

HP000025

7.  Hours

The Center entrances are open by 6:30 a.m. Monday through Saturday and 9 a.m. on Sunday. Immediately following each Special Event, Licensee shall vacate the Center.
Licensor reserves the right to exclude from the Center at any time commencing one hour after the Center closes for business with the public and ending one hour before the Center opens for business with the public, any employee who does not present a pass to the Center issued by Licensor, unless Licensee or its authorized representative is present in the Center and specifically requests the guard to admit a particular person. Licensor will furnish a pass to any person for whom Licensee requests the same in writing. Licensee will be responsible for the conduct of any person admitted to the Center during such hours for whom Licensee requested a pass or requested the guard to admit such person to the Center.

8.  Staff Requirements

A.  Licensee is responsible for hiring adequate and responsible employees.

B.  Licensee and employees of Licensee must keep all fixtures in good repair.

9.  Solicitations

The use of flyers, discount coupons or handbills by Licensee for any purpose is strictly forbidden without Licensor's written approval.

10.  Parking

Parking is the sole responsibility of the Licensee and all of its employees. No parking is permitted in the loading dock area.

11.  Advertising

Licensee shall use the name "The Pavilion At The Old Post Office" in local advertising in lieu of a street address, but Licensor reserves the right to prohibit any advertising which in Licensor's sole and absolute opinion tends to impair the reputation of the Center or its desirability as a location for stores or offices; and upon request of Licensor, Licensee shall discontinue such advertising.

12.  Waiver of Rules and Regulations

Licensor reserves the right to waive any rule in any particular instance or as to any particular person or occurrence without waiving the same as to any other person or other occurrence, and to amend or rescind any of these rules or make, amend and rescind new rules to the extent Licensor, in its sole judgement deems suitable for the safety, care and cleanliness of the Center and the conduct of high standards of merchandising and services therein, and Licensee agrees to conform to such new or amended rules upon receiving notice of the same.

13.  Termination of License

Violation of these rules by the Licensee or any employee of the Licensee may subject the Licensee to termination of the Agreement.

pop\bondocs\operent.doc
'10/14'

000121

18

HP000026