# ATTACHMENT D

DEPOSITION OF VICKI WILLMANN
Conducted on October 17, 2007

---

**Page 1**

```
 1      UNITED STATES DISTRICT COURT
 2      FOR THE DISTRICT OF COLUMBIA
 3   ---------------x
 4   GURPAL SINGH,            :
     Administrator of decedent :
 5   RANJIT SINGH,            :
                              :
 6           Plaintiff,       : Case No. 06-0574
                              : (RMC)
 7       v.                   :
                              :
 8   SOUTH ASIAN SOCIETY OF   :
     THE GEORGE WASHINGTON    :
 9   UNIVERSITY, et al.,      :
                              :
10           Defendants,      :
                              :
11   ---------------x
12              Wednesday, October 17, 2007
                Washington, D.C.
13   Deposition of
14              VICKI WILLMANN
15   a witness, called for examination by counsel for the
16   plaintiff, pursuant to notice, held at the offices of
17   the U.S. Attorney's Office, 555 4th Street, N.W.,
18   Washington, D.C., beginning at 2:10 p.m., before
19   Warren D. Freeman, a Notary Public in and for the
20   District of Columbia, when were present on behalf of
21   the respective parties:
```

---

**Page 2**

```
 1   APPEARANCES:
 2       For the Plaintiff:
 3         GEOFFREY D. ALLEN, ESQUIRE
           1730 Rhode Island Avenue, N.W.
 4         Suite 206
           Washington, D.C. 20036
 5         202/778-1167
 6
         For the Defendants George Washington University
 7       and South Asian Society:
           TIMOTHY W. ROMBERGER, ESQUIRE
 8         1025 Connecticut Avenue, N.W.
           Suite 1000
 9         Washington, D.C. 20036
           202/248-5053
10
11       For the Defendant United States of America:
12         QUAN LUONG, ESQUIRE
           BLANCHE BRUCE, ESQUIRE
13         Office of the U.S. Attorney
           501 Third Street, N.W.
14         Room E4412
           Washington, D.C. 20530
15         202/616-3517
16       Also Present:
17         TIM TOZER
```

---

**Page 3**

```
 1                  C O N T E N T S
 2
 3              Examination by Counsel
 4   Witness
 5   Vicki Willmann           Mr. Allen: 4
 6
 7                    EXHIBITS
 8                    (NONE.)
```

---

**Page 4**

```
 1   Thereupon
 2              VICKI WILLMANN
 3   a witness, called for examination by counsel for the
 4   plaintiff, and after having been first duly sworn by
 5   the Notary Public, was examined and testified as
 6   follows:
 7       EXAMINATION BY COUNSEL FOR THE PLAINTIFF
 8       BY MR. ALLEN:
 9       Q   State your name for the record.
10       A   Vicki Willmann.
11       Q   Ms. Willmann, my name is Geoffrey Allen. I'm
12   plaintiff's counsel in this case. As you know, I'm
13   going to ask you some questions this afternoon.
14           If you don't understand my question, please
15   let me know. I'll be more than happy to rephrase the
16   question.
17           I don't think that this is going to last very
18   long. But if at any time you wish to take a break,
19   just let me know. Of course, we'll accommodate that.
20           If you wish to confer with counsel, that's
21   fine. However, if there is a pending question, if you
```

DEPOSITION OF VICKI WILLMANN
Conducted on October 17, 2007

---

Page 37

1 terms of documents?
2   A  Yes.
3   Q  And what would those have been?
4   A  I don't recall exactly what we call it, but
5 it is something to do with an application for a
6 license for an event.
7     MR. LUONG:  Geoffrey, I'm going to object to
8 this line of questioning as well. I'm not sure how
9 this is related to GSA's supervision of Hill Partners'
10 day-to-day operations.
11     MR. ALLEN:  I think I might be able to make
12 it clearer.
13     BY MR. ALLEN:
14   Q  Did you review the application for the
15 license submitted by Bhangra Blowout with anybody from
16 Hill Partners?
17   A  Repeat the question.
18   Q  You said you received an application for a
19 license in connection with this event, the Bhangra
20 Blowout of 2005.
21     My question then is do you recall whether or

Page 38

1 not you reviewed that application for a license with
2 anybody from Hill Partners?
3   A  I don't believe I reviewed it with anyone
4 from Hill Partners.
5   Q  Were there any security issues involved in
6 the application for the license?
7   A  I don't remember what is on the application.
8 I don't know if there would be a security issue.
9   Q  When reviewing the license, would you have
10 been reviewing it with security in mind?
11   A  No.
12     MR. LUONG:  Just for the record, I'm just
13 going to note our objection to that line of
14 questioning.
15     MR. ALLEN:  Okay.
16     BY MR. ALLEN:
17   Q  Do you recall ever seeing a security plan for
18 the Bhangra Blowout submitted by anyone from Hill
19 Partners?
20   A  No.
21   Q  Do you recall receiving anything from Rodney

Page 39

1 Dyer at Hill Partners prior — say, in the two-month
2 period prior to the event?
3   A  Anything at all from Rodney?
4   Q  Yes. Any correspondence, any letters.
5   A  I don't remember. I don't recall.
6   Q  Do you recall receiving any written materials
7 from the building manager with reference to the
8 Bhangra Blowout prior to the event?
9   A  No.
10   Q  Did you ever inspect the building with Mr.
11 Dyer prior to March 2005, walk through the building?
12   A  Have I ever walked through the building prior
13 to 2005 with Rodney?
14   Q  Yes.
15   A  Yes.
16   Q  And would you do that on a regular basis?
17     MR. LUONG:  Just objection to the term
18 regular.
19     BY MR. ALLEN:
20   Q  How often would you do it?
21   A  Twice a year, average.

Page 40

1   Q  And what would you discuss while you were
2 doing this walkthrough?
3   A  The status of different retail vendors, the
4 cleanliness of the food court and the retail areas,
5 any plans he had for leasing more of the food court
6 spaces. More or less the financial operation of...
7   Q  Sorry?
8   A  The financial operation of the retail
9 component of the Old Post Office.
10   Q  Anything else?
11   A  I don't recall.
12   Q  Did you ever discuss security?
13   A  With Rodney?
14   Q  Yes.
15   A  Usually not.
16   Q  No, that's not the question. The question
17 is did you ever.
18   A  I'm sure I did because he has loading dock
19 hours that are special to his operation of the
20 building. And there is security present during those
21 hours.

DEPOSITION OF VICKI WILLMANN
Conducted on October 17, 2007

17

1  A  Sometimes.
2  Q  Do you still have those notes?
3  A  If I took them, yes. I probably have them.
4  Q  Would you exchange emails?
5  A  Yes.
6  Q  And again, presumably if they have been
7  archived, they would still be available?
8  A  Yes.
9  Q  Did you ever exchange correspondence with
10 him?
11 A  No. Usually not, unless it was just email.
12 Q  Would you ever meet with him in person?
13 A  Sometimes.
14 Q  Where would those meetings take place?
15 A  Either at my office or at his office.
16 Q  And what would you discuss during these
17 contacts?
18 A  Primarily how the food court was operating.
19 Q  Did you ever discuss security issues?
20 A  In 2005? Possibly.
21 Q  Do you remember what you discussed?

18

1  A  As far as security issues go?
2  Q  Yes.
3  A  Well, he didn't have much to do with
4  security, so I don't really remember there being a lot
5  of conversations around security. I don't remember
6  any particulars from that.
7  Q  Did you ever have any discussions with
8  SecTek?
9  A  No.
10 Q  Did you ever prior to March 26th, 27th, 2005,
11 have any discussions with anybody about the Bhangra
12 Blowout?
13 A  No.
14 Q  Do you know what I'm referring to when I say
15 the afterparty to the Bhangra Blowout? Do you know
16 what I'm talking about?
17 A  I don't know for sure, no. I'm assuming it's
18 the event that occurred at the Old Post Office.
19 Q  Right. Did you ever have any discussions
20 with anybody about that?
21 A  Prior to the event?

19

1  Q  Prior to the event.
2  A  I don't know if I had discussions. As part
3  of my process involvement, there would be a piece of
4  paper that would come across my desk for a particular
5  event.
6  Q  What information would be typically given to
7  you?
8  A  It would be an application for the special
9  event. So it would have been prepared by Hill
10 Partners, sent to me. And then information from that
11 was sent to DHS.
12     (Thereupon, the reporter was replaced by
13 another reporter.)
14     BY MR. ALLEN:
15 Q  Ms. Willmann, I think you indicated that the
16 building manager currently was Glenn Thomas, but you
17 weren't sure who the building manager was as of
18 March 2005. Is that correct?
19 A  That's correct.
20 Q  Could you find out who the building manager
21 was then in March 2005?

20

1  A  Yes.
2  Q  Could you convey that information to Ms.
3  Bruce, I guess, would be the appropriate person.
4  A  Yes.
5      MR. ALLEN: And for the record, I would
6  request that any notes of conversations with the
7  building manager in 2005 up until the time of the
8  incident and e-mails, if they are still available, be
9  provided.
10     MR. LUONG: Is that something that you guys
11 have already requested or are you making supplemental
12 discovery?
13     MR. ALLEN: I need to check if it is covered
14 by an existing request. If it isn't then –
15     MR. LUONG: To the extent it is covered by an
16 existing request, I'm sure we have already looked and
17 given you our response. But if it is a new request,
18 if you could do me a favor and put it in writing, that
19 would be great.
20     MR. ALLEN: Okay.
21     BY MR. ALLEN:

5 (Pages 17 to 20)