UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GURPAL SINGH, *et al.*, ) | ) |
| Plaintiffs, ) | ) |
| v. ) | Civil Action No. 06-574 (RMC) |
| SOUTH ASIAN SOCIETY OF THE ) GEORGE WASHINGTON UNIV., *et al.*, ) | ) |
| Defendants. ) | ) |

MEMORANDUM OPINION

Before the Court is Defendant the United States of America's Renewed Motion to Dismiss the Complaint [Dkt. # 80]. For the following reasons, Defendant's Motion will be granted.

I. BACKGROUND

Plaintiffs Gurpal Singh and Kulwinder Kaur are the parents and surviving heirs of Ranjit Singh. Ranjit Singh was murdered in the District of Columbia on March 27, 2005, outside the Old Post Office Pavilion, after attending the "Bhangra Blowout Afterparty," an event sponsored by the South Asian Society, a student organization, of the George Washington University ("GWU"). *See* Second Am. Compl. ("Compl.") ¶¶ 2, 10.[1]

In February 2006, Plaintiffs filed this lawsuit in D.C. Superior Court, naming the South Asian Society, GWU, and an unknown "Doe" security company as Defendants. The original named Defendants removed the case to this Court in March 2006. Since then, Plaintiffs have amended the complaint twice to add causes of action and defendants – including the United States,

---

[1] The General Services Administration ("GSA") had rented part of the Old Post Office Pavilion to GWU for the event. The event was promoted by GWU and the South Asian Society. *See* Pls.' Statement of Material Facts Not in Dispute [Dkt. # 81] ¶¶ 1-2.

which owns the Old Post Office Pavilion through its General Services Administration ("GSA").[2] The Second Amended Complaint asserted three causes of action against the United States: negligence (Count One); negligent selection, retention, and supervision of security providers (Count Two); and wrongful death (Count Four). Compl. ¶¶ 15-21, 26-28.

On March 5, 2007, the United States moved to dismiss the claims against it for lack of jurisdiction and failure to state a claim. *See* Def.'s Mot. to Dismiss Pls.' Second Am. Compl. ("Def.'s Mem.") [Dkt. # 62]. The United States argued that the Court lacked subject matter jurisdiction over Plaintiffs' tort claims under the "discretionary function" and "independent contractor" exceptions to the general waiver of sovereign immunity contained in the Federal Tort Claims Act, 28 U.S.C. § 2671 ("FTCA"), *et seq*. The United States also argued that Plaintiffs failed to exhaust their administrative remedies with respect to certain claims and were, therefore, procedurally barred from prosecuting them in this lawsuit.

The Court ruled that Plaintiffs were permitted an opportunity to conduct narrowly-circumscribed jurisdictional discovery before the Court would rule on the motion to dismiss. Accordingly, the motion was denied without prejudice with respect to Counts One and Two. *See* May 21, 2007 Order [Dkt. # 70]. Plaintiffs were permitted to conduct limited discovery on three discrete issues: (1) whether there was a mandatory policy regarding the placement of security guards at the exits of the Old Post Office Pavilion; (2) whether GSA exercised supervision over Hill Partners' day-to-day operations at the Old Post Office Pavilion; and (3) whether the Department of

---

[2] Hill Partners, Inc. ("Hill Partners") and SecTek, Inc. ("SecTek") were also added as Defendants. Hill Partners was the property management company for the Old Post Office Pavilion and SecTek provided security at the building at the time of the events at issue. *See* Compl. ¶¶ 11-12.

Homeland Security ("DHS") or Federal Protective Services ("FPS") exercised supervision over SecTek's day-to-day operations at the Old Post Office Pavilion. *See* May 21, 2007 Mem. Op. at 11 [Dkt. # 69].[3]

On the United States' second argument, the Court agreed that Plaintiffs failed to present their personal claims to the United States before bringing suit. Accordingly, Count Four of the Second Amended Complaint (wrongful death) was dismissed as to the United States. *See* May 21, 2007 Order.

The United States now renews its Motion to Dismiss, contending that discovery yielded no new information that withstands its arguments in favor of dismissal.

> During this limited discovery period, Plaintiff[s], among other things, deposed individuals, obtained documents, and received responses to interrogatories. However, the information obtained did not adduce any evidence to suggest that there was a mandatory policy regarding the placement of security guards at the exits of the Old Post Office Pavilion, that GSA exercised supervision over Hill Partners' day-to-day operations at the Old Post Office Pavilion; []or that DHS or FPS exercised supervision over SecTek's day-to-day operations at the Old Post Office Pavilion.

Def.'s Renewed Mot. to Dismiss ("Def.'s Renewed Mem.") [Dkt. # 80] at 2.

## II. LEGAL STANDARDS

The United States relies on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks subject matter jurisdiction and Plaintiffs fail to state a claim.

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause

---

[3] *Singh v. S. Asian Soc'y of the George Wash. Univ.*, No. 06-574, 2007 U.S. Dist. LEXIS 36620 (D.D.C. May 21, 2007).

lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Subject matter jurisdiction focuses on a federal court's power to hear the claim. Therefore, a federal court must give a plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required on a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Moreover, a court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). Although a complaint does

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

A court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia*, 334 F.3d at 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *see also Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, No. 07-7105, 2008 U.S. App. LEXIS 9627, at *14 (D.C. Cir. Apr. 29, 2008) (under Rule 12(b)(6), "a court must construe a complaint liberally in the plaintiff's favor, accepting all of the allegations in the complaint as true, even if doubtful in fact") (citing *Twombly*, 127 S. Ct. at 1965)). Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and a court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "A complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4.

In deciding a 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, a court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary

judgment under Rule 56.  *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

## III. ANALYSIS

The United States renews its argument that the Court lacks subject matter jurisdiction under the FTCA because Plaintiffs' claims fall under two exceptions to the FTCA's waiver of sovereign immunity: the discretionary function exception and the independent contractor exception.

To begin at the beginning, the United States is immune from suit unless it has expressly waived its sovereign immunity through an act of Congress. *See FDIC v. Meyer*, 510 U.S. 471, 474 (1994). The FTCA contains a limited waiver of sovereign immunity with respect to suits for money damages against the United States based on "injury or loss of property, or personal injury or death caused by a negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As intimated by the Defendant United States's arguments, however, there are exceptions set out in the FTCA itself.

### A.   **Discretionary Function Exception**

A court lacks jurisdiction to hear claims brought under the FTCA that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has established a two-part test for determining whether this "discretionary function" exception applies in a given case. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, a court must determine whether any "federal

statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id*. at 322 (internal quotation marks and citation omitted). If such exists, "the employee has no rightful option but to adhere to the directive." *Id*. (internal quotation marks and citation omitted). Second, assuming there is no statute, regulation, or policy, and the "challenged conduct involves an element of judgment," a court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. (internal quotation marks and citation omitted). The exception's purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 323 (internal quotation marks and citation omitted). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

In its earlier Opinion, the Court permitted limited discovery to determine "whether there was a mandatory policy regarding the placement of security guards at the exits of the Old Post Office Pavilion," but determined that, under the second prong of the *Gaubert* test, the posting of the guards at the Old Office Pavilion was a discretionary function. *See* May 21, 2007 Mem. Op. at 7.

> [T]he decision about where to post security guards – regardless of whether that decision was negligent – is clearly the type of discretionary function that Congress has exempted from the FTCA's waiver of sovereign immunity. Similarly, the selection and supervision of security contractors falls in an area of discretion that is beyond the Court's jurisdiction. But that only disposes of the second part of the discretionary function test. The United States could be held liable in tort for the failure to provide adequate security if the injury resulted from a government employee's failure to follow a specific, mandatory policy requiring a particular course of action.

*Id*. (internal citations omitted).

In their Opposition to Defendant's Renewed Motion to Dismiss, Plaintiffs argue that the word "shall" in 40 U.S.C. § 1315(a) creates a mandatory policy. Plaintiffs also contend that there was an unwritten oral policy requiring three armed guards at each entrance to the Old Post Office Pavilion.

1.   40 U.S.C. § 1315

Plaintiffs argue that there was a mandatory policy regarding the placement of security guards at the Old Post Office Pavilion. In support, they cite 40 U.S.C. § 1315(a), which provides:

> To the extent provided for by transfers made pursuant to the Homeland Security Act of 2002, the Secretary of Homeland Security (in this section referred to as the "Secretary") shall protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property.

40 U.S.C. § 1315(a). According to Plaintiffs, because the Old Post Office Pavilion was "owned, occupied and secured by the Federal Government" at the time of Mr. Singh's murder, and because the areas outside the building on the public sidewalk where the stabbing occurred are owned and regulated by the United States, the United States was under a mandatory duty to protect Mr. Singh and others as they were leaving the event. *See* Pls.' Opp'n at 9-10.

> The United States[] knew the event was taking place on March 26-27, 2005, knew that it would be attended by at least 1000 people, knew that alcohol would be served at the event, knew that the event would go until the early morning hours, and knew about serious problems, at the event, the previous year. Given this knowledge, it nevertheless provided absolutely no security on its land immediately outside the building for the 2005 event, as the event closed, despite [40] U.S.C. [§] 1315(a)'s mandate to protect persons on federal property. Indeed,

>Federal Protective Services (FPS),[4] the agency, within the Department of Homeland Security (DHS) which was responsible for providing security at the building, apparently did nothing. Whereas, the precise manner in which security [was] to be provided may be covered by the discretionary function defense, there surely[] can be no discretion to completely ignore a federal statute which lays down a mandatory requirement to provide some security.

*Id*.

The United States denies that § 1315 mandates a *specific* course of action for a federal employee to follow. The United States points to the provision of the statute which provides that "[t]he Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and the persons on the property." 40 U.S.C. § 1315(c)(1). Thus, according to the United States, the statute does not mandate that DHS and/or GSA protect the buildings, grounds, and property and the persons on the property in any specific manner or under a specific course of action. It merely states that DHS may, as necessary, prescribe regulations to carry out the statute.

Upon review of the statute and analogous case law, the Court agrees. In *Fitzsimmons v. United States*, 496 F. Supp. 2d 1035 (D.N.D. 2007), the plaintiff argued that the Bureau of Indian Affairs ("BIA") improperly failed to enforce certain laws that were statutorily mandated, and, therefore, could rely on the discretionary function exception. *See* 496 F. Supp. 2d at 1040. The *Fitzsimmons* court focused on whether there were "controlling statutes, regulations, and administrative policies" that "mandated that BIA law enforcement employees investigate and enforce, *in a specific manner*," the violations of certain crimes and ordinances. *Id*. (emphasis added)

---

[4] FPS is a federal agency which provides security for federal properties. Until 2003, it was part of the GSA, at which time it was transferred to DHS. *See* Pls.' Statement of Material Facts Not in Dispute ¶ 7.

(citing *Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993) (distinguishing between the discretionary function exception and the concept of duty in an ordinary negligence analysis)). In rejecting the plaintiff's argument, the *Fitzsimmon*'s court determined that the relevant statute provided authority to BIA law enforcement employees, "but [did] not mandate the actions of the BIA law enforcement officers." *Id*. at 1041.

> The [c]ourt finds that there are no federal or state statutes, rules, regulations, or policies which specifically prescribe a course of action for the BIA to follow in enforcing the laws on the reservation. The [c]ourt concludes that in the absence of any specific statute, rule, regulation or policy which mandates the *specific manner* in which the BIA must enforce the law, the actions of BIA law enforcement employees must be considered a product of judgment or choice. . . . Therefore, the first step of the discretionary function analysis is satisfied.

*Id*. (emphasis added).

In *Graham v. United States*, No. 97-1590, 2002 U.S. Dist. LEXIS 1765 (E.D. Pa. Feb. 5, 2002), the plaintiff argued that the Bureau of Prisons failed to follow a mandatory statute regarding prisoner care. The plaintiff based his claim on 18 U.S.C. § 4042, which provides: "The Bureau of Prisons, under the direction of the attorney general, *shall* . . . provide . . . for the safekeeping, care and subsistence [and protection] of all persons charged with or convicted of offenses against the United States." *Id*.; 18 U.S.C. §§ 4042(a)(2) & (3) (emphasis added). In applying the discretionary function test, the court explained that while § 4042 may have provide a duty of care, it "does not dictate the manner in which the duty must be fulfilled." *Id*. at *11 (citations omitted).

In the instant case, 40 U.S.C. § 1315 does not mandate that federal employees must protect persons or property in any specific manner or under a specific course of conduct; accordingly, Plaintiffs have failed to satisfy the first prong of the *Gaubert* test. *See Fitzsimmons*, 496 F. Supp.

2d at 1040; *Graham*, 2002 U.S. Dist. LEXIS, at *11; *see also Macharia*, 334 F.3d at 65 (holding that the plaintiff failed to establish the existence of a "federal statute, regulation or policy" for providing security to foreign service officers at various embassies).

  2.  Unwritten Policy

In addition to 40 U.S.C. § 1315(a), Plaintiffs argue that a separate mandatory policy was violated. Plaintiffs point to deposition testimony of Rodney Dyer, the property manager for Hill Partners at the Old Post Office Pavilion, to support their claim that the United States "laid down" an unwritten mandatory policy regarding guards at entrances to the Old Post Office Pavilion. *See* Pls.' Opp'n at 12. Mr. Dyer testified that subsequent to September 11, 2001, the United States required three armed guards at each entrance to the building. *See id.*; Ex. O (Dyer Dep. Tr. at 14-15). "However, the security plan that was proposed by Mr. Dyer and approved by GSA did not assign any guards to the exit actually used by Ranjit Singh and others as they were leaving the event. Hence, it appears that GSA approved a security plan which violated this mandatory policy." Pls.' Opp'n at 12-13.

Plaintiffs offer no case law to support their contention that an unwritten policy, even if it existed, renders the discretionary function exception inapplicable. Moreover, under *Gaubert*, any mandatory policy would need to prescribe a specific course of conduct to overcome the discretionary function test. Mr. Dyer offers vague testimony that this three-guard policy "was virtually required by GSA or maybe DHS" and his understanding of this is based on his "general knowledge" and "general conversations" with unspecified GSA employees. This alleged evidence of a mandatory policy does not satisfy the first prong of the *Gaubert* test.

### B. Independent Contractor Exception

As noted above, the FTCA waives sovereign immunity for torts committed by an "employee of the government" acting within the scope of his or her employment. An "employee of the government" is defined to include "officers or employees of any federal agency," and a "federal agency" is defined to include "the executive departments, . . . independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor of the United States." *See* 28 U.S.C. § 2671. Based on this language, the Supreme Court formulated an "independent contractor exception" to the FTCA, under which a contractor's negligence may be imputed to the United States, and thus render the United States open to suit, only if the contractor's "day-to-day operations are supervised by the Federal Government." *See United States v. Orleans*, 425 U.S. 807, 815 (1976). "A critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." *Id*. at 814 (internal quotation marks and citation omitted).

In its initial motion, the United States argued that decisions regarding security at the Bhangra Blowout Afterparty were made by independent contractors – Hill Partners and/or SecTek – and not by a federal agency. In support, the United States explained that GSA delegated all of its management authority at the Old Post Office Pavilion to Hill Partners by way of a Property Management Agreement ("PMA") that was in place when GSA purchased the Old Post Office Pavilion in 2001. *See* Def.'s Mem. at 10-11. DHS and FPS contracted with SecTek in 2003 to provide security services at the Old Post Office Pavilion during its normal operating hours. *See id*. at 9-10. And under the terms of the PMA, Hill Partners contracted with SecTek to provide security

at the event. *Id*. at 10. In their Second Amended Complaint, Plaintiffs do not allege that any federal employee served as a security guard during the event, nor do they allege that any federal employees made decisions related to the number of security guards or where to deploy such guards. Thus, the United States argued that this Court lacks subject matter jurisdiction under the FTCA.

The Court permitted Plaintiffs to take limited discovery on whether Hill Partners and/or SecTek were independent contractors. *See* Mem. Op. at 10 (citing *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (denying the United States' motion to dismiss based on independent contractor exception in order to give the plaintiff an opportunity to conduct limited discovery on that issue)). Specifically, Plaintiffs were permitted discovery into whether GSA exercised supervision over Hill Partners' day-to-day operations at the Old Post Office Pavilion and whether DHS or FPS exercised supervision over SecTek's day-to-day operations at the Old Post Office Pavilion. *See Orleans*, 425 U.S. at 815; *see also Logue v. United States*, 412 U.S. 521, 528 (1971) (determination of agency turns, at least in part, upon the right of the United States "to control the detailed performance of the contractor").

In the instant round of briefing, Plaintiffs argue that the independent contractor defense may not be relied upon by the United States because the United States "failed to provide [security] services on its land outside the Old Post Pavilion, after the event." Pls.' Opp'n at 6. This argument misses the point. The level and location of security are issues of discretion that comprise the second prong of the *Gaubert* test and are not relevant to the independent contractor exception. *See* May 21, 2007 Mem. Op. at 7 ("Here, the decision about where to post security guards – regardless of whether that decision was negligent – is clearly type of discretionary decision that Congress has exempted from the FTCA's waiver of sovereign immunity.") (citing *Macharia*, 334

F.3d at 65-66). The only relevant inquiry is "whether Hill Partners and/or SecTek were independent contractors." *See* Mem. Op. at 11.

Plaintiffs further argue that GSA's knowledge, familiarity, and control over entrances and exits at the Old Post Office Pavilion constitute the necessary day-to-day supervision that obviates the independent contractor exception. *See* Pls.' Opp'n at 7 ("GSA officials have offices in the Old Post Office Pavilion. GSA officials regularly inspected the building according to Mr. Dyer, and were very familiar with its layout." GSA officials also have "a high degree of familiarity with the exits of the building, including the 11th Street Plaza."). In addition to such knowledge, Plaintiffs point out that the United States exercised the power to "hire, fire, and direct security operations at the building." *Id*. at 8. The evidence proffered by Plaintiffs does not rise to the level of supervision or control over either contractors' detailed physical performance. It is common sense that GSA, as landlord, would have knowledge of its own buildings; such knowledge or familiarity does not translate into supervision or control over specific contractor performance. The federal government's ability to "hire" or "fire" contractors, *see, e.g.*, 48 C.F.R. § 49.000, *et seq*. (2007) (termination of contracts), does not speak to whether the it is supervising such contractors' performances on a day-to-day basis. *See Cooper v. United States*, 225 F. Supp. 2d 1, 4 (D.D.C. 2002) ("[C]ourts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the United States."). Plaintiffs' argument to the contrary is without merit.

Plaintiffs also argue that GSA had day-to-day supervision over contractors at the Old Post Office Pavilion because Hill Partners sought approval from GSA to hold the event and went through DHS and/or GSA to approve security requirements for the Afterparty. *See* Pls.' Opp'n at

8; *see also* Pls.' Statement of Material Facts Not in Dispute ("The security plan for the 'Bhangra Blowout' Afterparty event on March 26-27, 2005 was submitted to the United States by Rodney Dyer of Hill Partners, Inc. The United States approved the plan and its funding."). The relevant security plan was "a detailed plan, for a specific event[,] which was reviewed and specifically approved by GSA." Pls.' Opp'n at 8.

> These requirements included requirements as to checking uniforms, inspecting guards, verifying the presence of Post Orders, making sure to report forms are available, examining duty books, reporting requirements, signing in, picking up equipment, reviewing orders, conducting inspections, checking licenses, checking equipment inventory, and meeting with "occupant agent security officers." There are directives for not leaving duty posts until relieved, [and] insuring that all incidents are reported to FPS. The Post Orders set forth admittance procedures and requirements for persons wishing to enter the building. There are procedures for moving property in and out of the building, [and] key control. Each entrance is designated as to whether armed guards are required. Duty hours are set forth. X-ray procedures are established. Walk through metal detector, visitor pass procedures, and hazardous materials reporting procedures are all established. There is even an established procedure for dealing with lost property.

Pls.' Statement of Material Facts ¶ 13.

Requirements that a contractor comply with certain regulations, specifications, or standards in performing its work do not, alone, establish that the United States supervised the contractor's day-to-day operation, and do not vitiate the independent contractor exclusion. *See Logue*, 412 U.S. at 529-30. Controverting evidence proffered by the United States indicates that SecTek – not the federal government – had a substantive role in approving and reviewing the proposed security plan. *See* Dyer Dep. Tr. at 21-22 ("Q: Okay, well was there anybody in the government who did go through the process of reviewing [the security plan] and saying – evaluating whether you needed more or less? A: We have – no, I don't – there are no persons that we've been

made aware of. There was, as you see in my letter, I sent that request . . . to SecTek so that they, could provide that change, if necessary, for the event."). Under these circumstances, the United States cannot be held liable for the allegedly tortious conduct, if any, of its contractor. *Orleans*, 425 U.S. at 815-816.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the United States's Motion to Dismiss. The United States will be dismissed as a Defendant in this action. A memorializing order accompanies this Memorandum Opinion.

Date: June 5, 2008                                                                /s/                        
                                                              ROSEMARY M. COLLYER
                                                              United States District Judge