**UNITED STATES DISTRICT
COURT FOR THE DISTRICT
OF COLUMBIA**

| | |
|---|---|
| ) | Civil Action No. 06-574 (RMC) |
| ) | |
| **GURPAL SINGH,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| ) | |
| **v.** ) | |
| ) | |
| **SOUTH ASIAN SOCIETY OF THE** ) | |
| **GEORGE WASHINGTON UNIV.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MOTION TO RECONSIDER JUNE 5, 2008 ORDER GRANTING
THE UNITED STATES' MOTION TO DISMISS**

Plaintiff respectfully moves this court to reconsider its order dated, June 5, 2008

granting the United States' Motion to Dismiss.

The grounds for this motion are fully set forth in the attached Memorandum Of

Points and Authorities.

WHEREFORE,  plaintiff requests that the motion be GRANTED.


Respectfully Submitted,

_/s/_ Geoffrey D. Allen__
Geoffrey D. Allen
DC Bar # 288142
1730 Rhode Island Ave, N.W.
Suite 206
Washington, D.C.  20036
Counsel for Plaintiff
Tel: (202) 778-1167

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2008 a copy of the foregoing Plaintiff's Motion For Reconsideration of the Court Order of June 5, 2008 Granting the United States' Motion to Dismiss was served electronically on :

Timothy W. Romberger, Esquire
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036-5405
Email: Timromberger1@comcast.net

*Attorney for the George Washington University and*
*The George Washington University South Asian Society*

Scott Douglas Goetsch, Esquire
Moore & Jackson, L.L.C.
305 Washington Avenue
Towson, Maryland 21204
Email: goetsch@moorejackson.com

*Attorney for Defendant, SecTek Inc.*

Blanche Bruce, Esquire
Quan K. Luong, Esquire
United State's Attorney's Office
501 Third Street, N.W.
Washington, D.C. 20530
Email: blanche.bruce@usdoj.gov

*Attorney for United States of America*

Robert H. Bouse, Jr. Esquire
Anderson, Coe & King, LLP
201 N. Charles Street, Suite 2000
Baltimore, MD 21201
Email: bouse@acklaw.com

*Attorney for Defendant Hill Partners, Inc.*

/s/ Geoffrey D. Allen
Geoffrey D. Allen

**UNITED STATES DISTRICT
COURT FOR THE DISTRICT
OF COLUMBIA**

|  |  |
|---|---|
| ) | **Civil Action No. 06-574 (RMC)** |
| ) | |
| **GURPAL SINGH,** *et al.*,  ) | |
| ) | |
| **Plaintiffs,**  ) | |
| ) | |
| **v.**  ) | |
| ) | |
| **SOUTH ASIAN SOCIETY OF THE**  ) | |
| **GEORGE WASHINGTON UNIV.,** *et al.*,  ) | |
| ) | |
| **Defendants.**  ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER
GRANTING THE MOTION TO DISMISS OF THE UNITED STATES**

**A. Background**.

On June 5, 2008 the court granted the Motion of the United States and dismissed plaintiff's claims against it.  On July 9, 2008 plaintiff came into possession of and reviewed for the first time, materials that were turned over to George Washington University in response a subpoena it had earlier issued. The court had reviewed these materials in camera and ordered U.S. to release these materials, after it ruled on the Motion to Dismiss.  A copy of these materials was not sent to plaintiff's counsel, and he was unaware of their content until July 9, 2008.  The document is attached hereto as Exhibit 1.

Plaintiff had argued that  40 U.S.C. § 1315  created  a mandatory policy regarding the placement of security  guards at the Old Post Office Pavilion.  40 U.S.C. § 13 15(a),

which provides:

> To the extent provided for by transfers made pursuant to the Homeland Security Act of 2002, the Secretary of Homeland Security (in this section referred to as the "Secretary") **shall protect** the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property.

Plaintiffs, claimed that because the Old Post Office Pavilion was "owned, occupied and secured by the Federal Government" at the time of Mr. Singh's murder, and because the areas outside the building on the public sidewalk where the stabbing occurred are owned and regulated by the United States, the United States was under a mandatory duty to protect Mr. Singh and others as they were leaving the event.

The United States denied that § 1315 mandated a *specific* course of action for a federal employee to follow. It pointed to the provision of the statute which provides that "[t]he Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and the persons on the property." 40 U.S.C. § 1315(c)(1). Thus, according to the United States, the statute did not mandate that DHS and/or GSA protect the buildings, grounds, and property and the persons on the property in any specific manner or under a specific course of action. It merely stated that DHS may, as necessary, prescribe regulations to carry out the statute.

The court accepted this argument. The court ruled that: "In the instant case, 40 U.S.C. § 1315 does not mandate that federal employees must protect persons or property in

any specific manner or under a specific course of conduct; accordingly, Plaintiffs have failed to satisfy the first prong of the *Gaubert* test. *See Fitzsimmons,* 496 F. Supp." Judge Collyer's "Memorandum Opinion" at page 11.


### B. Argument


### I.   Newly disclosed evidence shows the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion, in effect on the date of the murder of Ranjit Singh

The documents turned over to George Washington University by letter dated June 25, 2008 are attached hereto as Exhibit 1.  Counsel understands that the United States has informally indicated that the documents included in Categories 2 and 7 are part of a security assessment that was conducted on September 26, 2003 for the Old Post Office Pavilion. They were turned over in response to a subpoena, issued by George Washington University, which requested in Category 2:  "All documents showing, depicting, listing, or explaining all security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, including but not limited to any written security plan or assessment which may have been in place."

Table 4.2 which is titled : "Inadequate Existing Countermeasures"  describes existing perimeter patrol and states:

> The Federal Protective Service and the District of Columbia Metropolitan Police Department perform this function 7 days a week 24 hours a day. However, the GSA guards do not patrol the exterior of the facility.  There was one reported incident in which a homeless person in front of the Pennsylvania Avenue entrance physically assaulted an employee.  The

employee was injured and hospitalized.  (underscoring added)

Hence, it is clear that, as of September 2003,  there was an existing requirement for perimeter patrol, at the  building, which was being met in part, by Federal Protective Services, and that these measures were deemed inadequate.

Table 4.3 is titled "Credible Threats for this Facility"  The "Threat" is identified as "Assault"  Under "Justification- Why Credible" it shows that there 11 assault incidents in the surrounding area that did not occur in the building and one assault of an employee leaving the building on May 28, 2003.

Table 5.1 is titled "Recommended Countermeasure Upgrades"  In this document, The "Threat" is identified as "Assault" and the recommended upgrade is "Perimeter Patrol (4)"  Table 5.3 is titled "Countermeasures Upgrade Descriptions"  under the heading "Mandatory Package" it lists "perimeter patrol."  Much of the "Description" is redacted but the un-redacted portion states: "As required by law, be sure to have the guard remain on GSA property while performing these duties"

Since this material was produced in response to a subpoena request for  security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005,  it seems certain  that there was a mandatory requirement for perimeter patrol at the Old Office Pavilion in effect at the time of Ranjit Singh's murder.  Plaintiff's inability to state exactly what it was, in terms of the number of guards or the frequency of the patrols is  due to the heavily redacted nature of this document, since it is almost certain that the document contains such specifics.

It is clear that, in fact, there was no perimeter security in place at the event on the morning of March 27, 2005. Paul Constable is the Regional Director, FPS, National Capital Region (NCR), Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). He swore an affidavit on April 6, 2007 which was attached to the United States' Reply to Opposition to Motion to Dismiss for Lack of Jurisdiction filed by the United States on April 9, 2007. In it he states,

> The contract between the General Services Administration (GSA) and the George Washington University to rent the Old Post Office Pavilion for this event was not coordinated with FPS prior to or at anytime during the event. FPS was not involved in any decisions related to security and/or law enforcement needs for this event, nor did FPS provide any security personnel or services for this event.

See Exhibit 2 attached hereto.

Nowhere, in any of its submissions, has the United States ever indicated that it had any perimeter security in effect at the time of the incident. Moreover, the United States has not contested that the murder took place on land owned and controlled by the U.S.

Significantly, the documents contained in Exhibit 1 appear to be inconsistent with earlier materials submitted by the United States on this question. Paul Constable in his Affidavit stated in Paragraph 6:

> "…..I am not aware of any statutes, regulations, directives or policy related to a requirement to post guards at the exits for special events at the Old Post Office Pavilion building. These types of decisions are left to the discretion of local officials within FPS based upon an evaluation of a number of factors, including but not limited to, the nature of an event, the availability of personnel and financial resources, and other

related considerations under the circumstances."

The materials in Exhibit 2 appear to constitute just the opposite. They clearly set forth policies and directives in exactly this area. At his deposition, Mr. Constable was examined on this paragraph and never once mentioned anything about the apparent policies contained in Exhibit 2. This is rather startling in view of the fact that there was an extended discussion about mandatory policies in this area. See Exhibit 3.

## II. Standard of Review

Although the United States styled its motions as Motions to Dismiss, it submitted a number of exhibits with its pleadings. The court appeared to indicate that it was exercising its discretion under 12(b)(6) to treat them as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia,* 324 F.3d 724, 725 (D.C. Cir. 2003). Memorandum Opinion at Page 6.   Under the summary judgment standard, the court must view any contested facts in the light most favorable to the nonmoving party. Fed. Rule Civ. Proc. 56(c).   It is respectfully submitted that if this is done here, one must conclude that there was a specific requirement for perimeter patrol for the United States, in effect at the Old Post Office Pavilion on March 27, 2005.   Indeed, the recommendation in September 2003 was that this requirement  be upgraded to four officers to guard against the threat of assault occurring outside the Old Post Office Pavilion. It is also clear that there was an existing  requirement in 2003 for  FPS to provide security on the property, twenty four hours a day, seven days  a week, on the perimeter. There is no indication that this requirement was not in effect on the day of the murder.   Most telling of all, is Table 5.3 which describes a "mandatory package" for

perimeter patrol at the site.  Hence, viewed in the light most favorable to plaintiff, it is clear that there was a requirement for perimeter security, that it was a seven day a week, twenty four hour a day requirement, that it was "mandatory" and that it involved a number of FPS guards patrolling GSA property.

### III. Conclusion

Based on above, it is submitted the court should  reconsider its earlier ruling on this point and reverse its decision.

Respectfully submitted,


<u>/s/ Geoffrey D. Allen</u>
Geoffrey D. Allen
D.C. Bar 288142
1730 Rhode Island Ave. N.W.
Suite 206
Washington D.C. 20036
Tel: (202) 778-1167
E-Mail: Geoffreyallen@verizon.net

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GURPAL SINGH, as Administrator** | : | |
| **of decedent RANJIT  SINGH** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **C.A. 06-0574** |
| **v.** | : | **RMC** |
| | : | |
| | : | |
| **GEORGE WASHINGTON UNIVERSITY** | : | |
| **Et Al** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### ORDER

Upon consideration of Plaintiff's  Motion To Reconsider its ruling of June 5, 2008,  granting the motion to dismiss of the United States, it is this _____ day of _____, 2008,  hereby,

**ORDERED,** that the motion is **GRANTED,** and it is further,

**ORDERED,**  the Renewed Motion to Dismiss of the United States is **DENIED.**

Date: _____               _____
                                    Judge Collyer
                                    United States District Court