UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, Administrator )<br>of decedent RANJIT SINGH )<br>  )<br>        Plaintiff, )<br>  )<br>    v. )<br>  )<br>SOUTH ASIAN SOCIETY )<br>OF THE GEORGE WASHINGTON )<br>UNIVERSITY, )<br>        et al. )<br>  )<br>        Defendants. )<br>  ) | Case No. 06-0574 (RMC) |

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
RECONSIDER THE JUNE 5, 2008 ORDER GRANTING THE
UNITED STATES' MOTION TO DISMISS**

**I.   INTRODUCTION**

In granting the Federal Defendants' Renewed Motion to Dismiss, the Court ruled that it lacked subject matter jurisdiction over Plaintiff's tort claim under the discretionary function and independent contractor exceptions to the general waiver of sovereign immunity contained in the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*  Plaintiff seeks reconsideration of that decision because he recently "came into possession of and reviewed for the first time" newly disclosed evidence showing the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion.  However, as discussed in further detail below, the Defendant United States fully disclosed that it conducted a building security assessment of the Old Post Office Pavilion, which is the basis of Plaintiff's newly disclosed evidence argument as early as February, 2007.  Moreover, Plaintiff's motion only takes issue with the discretionary function exception, and, therefore, the independent contractor exception portion of the Court's

decision is not being challenged. Lastly, assuming *arguendo*, that the Court determines the evidence to be newly disclosed and further deciding *sua sponte* that the prior decision on the independent contractor exception should also be reconsidered, the newly disclosed evidence does not establish that a specific mandatory policy existed pertaining to perimeter security.

## II. LEGAL STANDARD

While Plaintiff failed to provide an appropriate legal standard for reviewing a motion for reconsideration, the Defendant submits that Fed.R.Civ.P. Rule 54(b) governs the motion *sub judice*. Rule 54(b) provides, in relevant part, that:

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). See Cobell v. Norton, 224 F.R.D. 266, 271-72 (D.D.C. 2004) (citations omitted) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case.").

The precise standard governing Rule 54(b) reconsideration is not entirely settled in this Circuit, but courts will grant a Rule 54(b) motion for reconsideration "as justice requires." See Cobell at 272 (citations omitted). Courts have more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b). See id. That being stated, the Court's discretion in ruling on a motion for reconsideration will not be reversed absent an abuse of that discretion. See Billups v. Methodist Hosp., 922 F.2d 1300, 1305 (7th Cir. 1991).

## III. ARGUMENT

**A. Plaintiff has known, or should have known, of the existence of the allegedly newly discovered evidence since February, 2007.**

Plaintiff basis its entire motion on a Building Security Assessment (BSA) of the Old Post Office Pavilion conducted by the Federal Protective Service. According to Plaintiff, it "came into possession of and reviewed [the BSA] for the first time" on July 9, 2008 (Pl. Mtn. at 1). However, what Plaintiff fails to note is that the Government fully disclosed the existence of the BSA as early as February 2007 in its Opposition to a Motion to Compel filed by The George Washington University (See Docket Entry 59, Attachment 1, Affidavit of John Clark). In particular, as part of its Opposition, the United States attached an affidavit of John P. Clark who stated:

> ICE has conducted a building security assessment of the Old Post Office Pavilion, which was memorialized in a report that was completed prior to March 26, 2005, and March 27, 2005. The purpose of that report was to evaluate existing security and, if warranted, offer recommendations to improve security at the facility.

Id. at ¶ 5 (emphasis added). Thus, by virtue of the Clark Affidavit, Plaintiff was fully aware of the existence of the BSA as early as February, 2007.

Courts routinely deny motions for reconsideration when used as a "vehicle to introduce new evidence that could have been adduced during the pendency of the [dispositive motion]." Caisse Nationale de Credit Agricole v. CBI Indus. Inc., 90 F.3d 1264 (7th Cir. 1996) (citations omitted). In order to prevail on a motion for reconsideration based on newly discovered evidence, a party must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." Id. (citations omitted).

On May 21, 2007, the Court granted Plaintiff the right to conduct limited discovery with regards to the independent contractor and discretionary function exceptions. See Docket Entry 69. During the ensuing discovery period, Plaintiff failed to specifically request the BSA from the United States in a request for documents; failed to propound interrogatories to the United

3

States inquiring into the specifics of the BSA; and failed to ask questions about the specifics of the BSA during depositions. Moreover, despite Plaintiff's knowledge of the BSA, knowledge that it did not have a copy, and knowledge that the court actually had the document *in camera*, Plaintiff never asked the court to suspend ruling on the renewed motion to dismiss, never filed a motion to compel, or took any other action to acquire the BSA. See Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251-52 (7th Cir. 1987) (lack of due diligence by not asking judge for more time or order compelling depositions); Brutyn, N.V. v. Anthony Gagliano Co., 2006 WL 3354578 *2 (E.D. Wis. 2006) (slip opinion) (lack of due diligence by not filing motion to compel or requesting court to postpone further consideration of dispositive motion until completion of discovery); Brown v. City of Oneonta, 858 F.Supp.340 (N.D.N.Y. 1994) (merely noting that information has recently come to moving party's attention not enough to support that with use of due diligence information could not have been discovered earlier).

While the actual information in the BSA may be new to Plaintiff, the Government never withheld or recently disclosed the existence of the document. Had Plaintiff exercised due diligence during the discovery period, it would have obtained the very document that forms the sole basis for its motion for reconsideration. Accordingly, because the BSA is not newly disclosed evidence, the court should deny the Plaintiff's motion for reconsideration.

    **B.**     **Regardless of whether the BSA is, indeed, newly disclosed information, Plaintiff does not seek reconsideration of the court's ruling with regards to the independent contractor exception.**

Plaintiff's motion wholly fails to address the Court's order which dismisses the complaint based on the independent contractor exception. Plaintiff puts forth no new information, argues no wrong as a matter of law, or offers any rationale as to why justice requires the Court's decision granting the independent contractor exemption to be reconsidered under Rule 54(b).

The BSA, which is the sole basis for the Plaintiff's motion to reconsider, provides assessments and recommendations relating to security and has nothing to do with the independent contractor exception or the day-to-day operations on which the exception is evaluated. As such, because Plaintiff has not asked the Court to reconsider its prior ruling with regards to the independent contractor exception, that potion of the order is not being challenged and must stand.

> **C.   Plaintiff's argument that newly disclosed evidence shows the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion is inaccurate and does not change the Court's analysis of the discretionary function exemption to the United States.**

Plaintiff argues that the BSA shows the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion. First, Plaintiff seems to argue that simply producing the BSA constituted an admission by the United States that it had a mandatory policy for security measures <u>in place</u> for the protection of the Old Post Office Pavilion (emphasis added). Second, Plaintiff argues that specific provisions within the BSA show a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion. Both of these arguments are factually and legally incorrect.

As to the first argument, Plaintiff states that,

> [s]ince this material was produced in response to a subpoena request for security measures that the Department of Homeland Security had <u>in place</u> for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, it seems certain that there was a mandatory requirement for perimeter patrol at the Old Office Pavilion in effect at the time of Ranjit Singh's murder.

Memorandum in Support of Motion to Reconsider at 6. This statement is somewhat misleading because it is based on only a portion of the subpoena's full request, which sought:

> All documents showing, depicting, listing, or explaining all security measure that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005,

5

>*including but not limited to any written security plan or assessment which may have been in place.*

Category 2 (emphasis added).  Thus, contrary to Plaintiff's assertion, the fact that the United States produced the BSA does not, on its own, really amount to much other than that it is an "assessment which may have been in place" on March 26, 2005 and March 27, 2005.  The fact that the United States provided the assessment pursuant to the subpoena should in no way be inferred as some type of tacit admission that now makes the entire BSA a specific mandatory requirement.

As to the second argument, Plaintiff requests that the court revisit its analysis with regards to the first prong of the two-pronged Gaubert test for determining whether the official's conduct involved "an element of judgment or choice."  Gaubert v. United States, 499 U.S. 315, 322-32 (1991).  The court's inquiry focuses on the existence of a "specific and mandatory regulation, statute, or policy" that "requires a particular course of action."  Daigle, 972 F.2d at 1538 (citing Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1959).  See also Fitzsimmons v. United States, 496 F.Supp. 2d 1035 (D.N.D. 2007); Graham v. United States, No. 97-1590, 2002, U.S.Dist.LEXIS 1765 (E.D. Pa. Feb. 5, 2002).

Plaintiff erroneously argues that specific redacted tables and language in the BSA shows the existence of a mandatory policy requiring perimeter patrols.  Although Plaintiff scrutinizes specific language in the BSA, its motion never addresses the purpose of the BSA.  As explained in Mr. Clark's declaration, "[t]he purpose of the [BSA] was to evaluate existing security and, if warranted, offer recommendations to improve security at the facility" (Docket Entry 59, Attachment 1, Clark Affidavit at ¶ 5). (emphasis added).  While Mr. Clark's prior declaration stands on its own, Don Waldon, the Deputy Regional Director, FPS, National Capitol Region, further substantiates the Government's position.  For instance, with regards to BSA's, Mr.

Waldon states that he is "not aware of any statutes, regulations, directives, or polic[ies] related to a requirement that a Building Security Assessment establishes a regulation, directive or policy based upon the recommendations included in the assessment" (Attachment 1, Don Waldon Declaration (Waldon Decl.) at para. 3). Moreover, much like Mr. Clark, Mr. Walden affirmatively states that, "The objective of a Building Security Assessment is to evaluate and, if warranted, offer recommendations to improve the security posture of a facility. All recommended countermeasure upgrades are, ultimately, recommendations which are incorporated into the Building Security Assessment and are evaluated and implemented on a myriad of factors including priority, risk, and economics." Id. In short, the BSA is exactly what it says it is – an assessment. Despite Plaintiff's assertions to the contrary, the BSA itself did not create a mandatory requirement for a specific course of conduct for perimeter security. Rather the BSA provides assessments and recommendations which may or may not be implemented based on a variety of factors.

The arguments presented by Plaintiff are similar to those espoused in Fanoele v. United States, 975 F.Supp. 1394 (D.Kan. 1997), in which plaintiff argued that the use of the word "shall" in a GSA handbook setting forth security procedures eliminated the government's discretion in designing security precautions for Federal buildings. In rejecting this argument, the court explained that,

> [i]n each instance, the policies, regulations, or plans are not the panacea of mandatory directives the plaintiff claims. Rather, they contain discretionary language regarding the implementation of certain security provisions. None of the manuals or directives that plaintiff cites require the GSA or Marshal's Service to pursue any specific course of action. The materials simply contain definitions, general guidelines, and broad objectives for providing security protection. Additionally, the materials are highlighted by language of a predominantly precatory nature, implicitly and explicitly vesting the GSA and Marshal's Service with wide discretion in determining how to proceed in providing security precautions.

7

<u>Faneole</u> at 1400. The BSA is similar to the GSA handbook in that both are discretionary—they do not require any specific course of action by the Government.

     Plaintiff merely attempts to highlight certain "buzzwords" in the BSA in order to make the same sort of constrained, superficial argument that the Court rejected in the second motion to dismiss in which Plaintiff argued that the use of the word "shall" in a statute automatically meant "mandatory." The Court rightly rejected that argument by reading the entire statute in context. Now, Plaintiff comes before the Court once again and presents nothing more than the same sort of superficial argument that focuses on words taken out of context from a larger passage. The Second Circuit explained such tactics in a motion for reconsideration as follows: "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason, to battle for it again." <u>Zdanol v. Glidden Co., Durkee Famous Foods Div.</u>, 327 F.2d 944, 953 (2d Cir. 1964).

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that Plaintiff's Motion to Reconsider the June 5, 2008 Order Granting the United States' Motion to Dismiss be denied.

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney
/s/_____
BLANCHE L. BRUCE , D.C. BAR # 960245
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530

Of Counsel
Timothy Tozer
U. S. General Services Administration
Christopher Gaffney
U.S. Department of Homeland Security