IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GURPAL SINGH, as Administrator : <br> of decedent RANJIT SINGH : <br> : <br>    Plaintiffs : <br> : <br>    v. : <br> : <br> : <br> THE GEORGE WASHINGTON UNIV. : <br> Et Al : <br>    Defendants : | Civil Action No. 06 0574 <br> RMC |

**PLAINTIFF'S REPLY TO UNITED STATES' OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OF JUNE 5, 2008 ORDER
GRANTING MOTION TO DISMISS**

    Plaintiff, respectfully invites the court to consider the following points and authorities in reply to the United States' Opposition to Plaintiff's Motion for Reconsideration of its June 5, 2008 Order granting the United States' Motion to Dismiss.

**A. Standards To Be Applied**

    Motions for reconsideration are not specifically covered in the Federal Rules of Civil Procedure. A motion filed after judgment requesting that the court reconsider its decision constitutes either a motion to alter or amend under Fed. R. Civ. P. 59(e) or a motion for relief from judgment under Fed. R. Civ. P. 60(b). Under which Rule the motion falls turns on the time at which the motion is filed. If the motion is filed no later than 10 days of the rendition of

1

judgment, the motion falls under Fed. R. Civ. P. 59(e); if it is filed after that time, it falls under Fed. R. Civ. P. 60(b).

A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Hester Industries, Inc. v. Tyson Foods, Inc.*, 160 F.R.D. 15, 16 (N.D.N.Y. 1995) *(citing, Larsen v. Ortega*, 816 F. Supp. 97, 114 (D.Conn. 1992), *aff'd,* 990 F.2d 623 (1993)); *Nossek v. Brd. of Educ. of the Duanesburgh Central School Dist*., 1994 WL 688298 (N.D.N.Y. 1994)**.**

**B.  Procedural History concerning the document production by the United States on June 25, 2008.**

George Washington University originally propounded a subpoena to DHS on or about September 21, 2006, requesting ten (10) separate categories of documents seeking various information, such as the identify of federal security guards at the function, security measures, incident reports and investigatory files, duties and responsibilities of the security guards, and site and premises plans. (Ex. 1, Subpoena to DHS).

The University's subpoena sought the following documents:

1. A list of all federal security guards and agents who engaged in any type of security function at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

2. All documents showing, depicting, listing, or explaining all security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, including but not limited to any written security plan or assessment which may have been in place;

3. All DHS and Federal Protective Services incident reports and investigatory files relative to the events at the Old Post Office Pavilion on March 26, 2005 and

       March 27, 2005.

4. The personnel files for all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

5. All documents showing the training, background, and/or experience of all federal security guards and agents who performed work at the Old Post Office Pavilion on

6. All documents showing the duties and responsibilities of all federal security guards and agents who performed work at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005, including documents showing where these individuals were deployed on these dates.

7. All site plans, premises plans, and drawings depicting the exact area at the Old Post Office Pavilion (including entrances and exits, if any) that DHS security guards (or agents thereof) were responsible for at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

8. Any agreements, authorizations, and other documents authorizing SecTek, Inc., or any other entity to provide security at the Bhangra Blowout After-Hours Celebration hosted at the Old Post Office Pavilion on March 26, 2005 and March 27, 2005.

9. Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding the events of March 26, 2005 and March 27, 2005;

10. Any and all non-privileged incident reports, correspondence, memorandum, emails, and other documents regarding any violence or crime at the Old Post Office Pavilion or within two blocks of the Old Post Office Pavilion in the last five years.

In response, on or about October 20, 2006, the DHS – through its Immigration and Customs Enforcement ("ICE") division– forwarded a letter indicating that it would not produce documents responsive to enumerated categories 1-7 of the subpoena on the basis of the law enforcement privilege. On December 19, 2006, George Washington University filed a Motion to Compel discovery. It claimed that in order to assert such a privilege: 1) there must be a formal

claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. The University claimed that the government had failed to meet its burden with respect to these requirements. On February 16, 2007 the United States filed an Opposition to George Washington's motion. On February 23, 2007 George Washington University filed a Reply to that Opposition. On May 24, 2007 the court issued an order, and its ruling granting the University's motion with respect to Categories 1, 4, 5, and 10, and denying it with respect to Categories 3 and 9. The court further ordered that DHS provide to the Court for *in camera* inspection all documents responsive to Categories 2, 6, 7, and 8 no later than June 11, 2007. That process eventually concluded with the production of documents by the United States to the George Washington University on June 25, 2008. This production included, for the first time, the actual security assessment which forms the basis of plaintiff's motion for reconsideration. Moreover, because the United States only sent this material to the George Washington University, and to no other party, plaintiff's counsel was not able to review it until it was provided to him by counsel for George Washington University on July 9, 2008.

**C. The United States Claims of Lack of Diligence, in Failing To Discover The Security Assessment Are Ill Founded**

In its Opposition, the United States, claims that the plaintiff's motion to reconsider should be denied because plaintiff's counsel did not discover the contents of the security assessment and submit the arguments he now makes, earlier. Plaintiff, it claims was remiss in not filing a motion to compel or in failing to question witnesses about the document. These claims lack merit. Firstly, the United States had already refused to turn over a wide range of documents which included this assessment,

as early as October 20, 2006. And secondly, a motion to compel had already been filed by George Washington University on December 19, 2006. The matter continued to be *sub judice* until the document production of June 25, 2008. It would clearly, have been duplicative and frivolous of plaintiff to file a further motion to compel on the same issue as a matter that was already before the court. Questioning witnesses about a document would also have a futile exercise. The United States was hardly likely to permit discovery of its contents by this means, when it was already vigorously objecting to any disclosure of its contents in written submissions to the court.

The United States also claims that it disclosed the existence of the BSA as early as February, 2007 because it mentioned it, in a pleading it filed. That may be so, but being informed as to the existence of a document, is obviously not the same as having an opportunity to review it and the United States does not contest plaintiff's assertion that this did not occur until July 9, 2008.

The cases cited by the United States, in support of its claims concern situations which are not comparable to the situation in this case. In, *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, a case cited by the United States, the court held that: "Most of the 'newly discovered evidence' Rothwell submitted, along with its three briefs filed in support of the motion to reconsider, was either case law or commodity rules that were in existence before the motion for summary judgment was even filed. Everything submitted with the opening brief on reconsideration was in existence before the original motion was decided, and Rothwell failed to give the trial court or this court any satisfactory explanation as to why the information could not have been produced earlier." Id. at 252. In this case, by contrast, plaintiff's submissions are not based on case law, or rules but on a document which was released by the United

States for the first time, after the court ruled on its motion to dismiss on June 5, 2008. The situations could scarcely be more dissimilar.

The United States also cites, *Brutyn, N.V. v. Anthony Gagliano Co*., 2006 WL 3354578 *2 (E.D. Wis. 2006). This case has almost no relevance to the situation here. It concerned a motion for sanctions filed by a plaintiff for a defendant's failure to provide documents after being ordered to do so, following a motion to compel. The defendant claimed it misconstrued the scope of the court's order. The court held that if the plaintiff was confused about the scope of the order it should have sought clarification, which it did not do. Based on this, the court refused to consider the motion for reconsideration of the imposition of sanctions. Hence, that situation has almost nothing in common with the situation in this case.

Likewise, in *Brown v. City of Oneonta*, 916 F. Supp. 176 the Court merely held that as a general principle "the parties seeking reconsideration must not use this vehicle as a means to relitigate issues previously decided by the Court, or to attempt to "sway the judge" one last time." Clearly, in this case, plaintiff is not seeking merely to rehash previously rejected arguments. Hence, this case also, fails to provide any support the defendant's argument.

It is clear that a court may entertain a motion for reconsideration in the light of evidence, not in the summary judgment record, under appropriate circumstances" *ICEE Distribs. Inc. v. J & J Snack Foods Corp*., 445 F.3d 841, 847 (5th Cir. 2006). Court's have has set forth several factors to consider when a party seeks to upset a summary judgment by producing additional evidence: These include: (1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment

6

motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *ICEE Distribs., 445 F.3d at 847* (internal citations omitted).

Cases where a motion for reconsideration has been granted on the basis of new evidence demonstrate that the facts in this case here are analogous to those cases. In, *Markey v. La. Citizens Fair Plan,* 2008 U.S. Dist. LEXIS 16773 for example, the court changed its decision on summary judgment based on an expert report offered for the first time, on a motion for reconsideration. The court held that the report, constituted newly discovered evidence, and was submitted in accordance with the court's scheduling order, and there was no evidence that the proffering party had not acted with due diligence in obtaining this new information. Similarly, in this case, plaintiff can hardly be faulted for failing to present a document he had not and could not have seen in his initial opposition to defendant's motion to dismiss.

Likewise in, *In re Prince*, 85 F.3d 314, 325, appellants argued that that the district court abused its discretion by granting the a Rule 59(e) motion because the bank records were in existence and accessible by the public--and therefore technically available-- prior to the entry of judgment. The court held that: "…… this argument reflects a far too simplistic interpretation of availability" The court accepted that where a party fails to produce readily available evidence pertaining to that issue, the party may not introduce the evidence to support a Rule 59(e) motion. However, where it appears that the parties did not have sufficient indication prior to the hearing that a particular issue would arise, evidence on that issue could be submitted on a motion for reconsideration even though the records could have been obtained previously. In the instant case, clearly, the BSA report was not only not "readily available" to plaintiff, in fact, it was absolutely unavailable, until the court had completed its *in camera* review.

Other courts have granted such motions based on a variety of different circumstances. See generally, *Zinman v. Cont'l Cas. Co.*, 2003 U.S. Dist. LEXIS 18957; *Roche Diagnostics Corp. v. Bayer Corp.,* 247 F. Supp. 2d 1065 . And indeed , some courts, perhaps prompted by a desire to avoid manifest injustice, have granted motions for reconsideration, based on new evidence, without any inquiry into the reason for the evidence not being submitted earlier. See: *Gaugaix v. Laboratoires Esthederm United States*, 2001 U.S. Dist. LEXIS 26 .  Taken as a whole, it is submitted, that the situation in this case fits comfortably within the parameters established by other courts in similar situations, when  granting such relief.  Firstly, the evidence in this case,  was absolutely unavailable.  Secondly, as demonstrated below,  it is important, indeed vital to plaintiff's case.  And thirdly, the United States has been unable to point to any prejudice it will suffer, if the court considers this evidence.

**D. The  BSA Report Is Critically Important Evidence On the Issue of Existing Security On the Perimeter of the Old Post Office Pavilion**

The BSA report clearly indicates that there was an existing requirement for perimeter patrols at the Old Post Office Pavilion.  There was also,  a recommendation that perimeter patrol be upgraded, to four officers.   The date of the BSA is September 26, 2003.  Hence, this information could scarcely be more germane to the issue of whether or not there is a *specific* course of action for a federal employee to follow in the context of security at the Old Post Office Pavilion. Moreover, Mr. Waldon's Declaration, which was attached to the United States Opposition does not, with respect, advance the defendant's cause.  Firstly, it does not even mention 40 U.S.C. § 1315  and its mandatory requirement that the United States provide protection to persons on its property.  And secondly, it  ignores the statement  in the BSA, that

it was an existing mandatory requirement Federal Protective Services provides perimeter patrol at the site, "twenty four seven." Mr. Waldon's statement that the BSA is an assessment, while obviously true, is of little value. For it contains no information on or discussion of existing countermeasures which are mentioned in the assessment. Plaintiff would note, however, that it is an extraordinary omission, that his declaration does not contain any statement that the recommendation in the BSA, that four guards should patrol the perimeter, was <u>not</u> implemented by 2005. This leads to the very strong suspicion that it may well have been in place at the time of the event in February of 2005. To the extent that the court feels that this issue should be definitively resolved, prior to ruling on the motion, it may wish to permit further discovery on the BSA and the extent to which its recommendations were implemented as of February 2005.

**E. The United States May Not Avail Itself of an Independent Contractor Defense**

The remaining contention of the United States lacks merit. The United States mistakenly asserts that it may avail of itself of the independent contractor defense with respect to <u>external</u> security in the areas outside the Old Post Pavilion. In fact, it is quite clear that it may not. The only evidence of an independent contractor hired by the U.S. is its hiring of SecTek Inc. According to SecTek, however, it was hired to provide security <u>inside</u> the building only, and it had no responsibilities for security outside the building whatsoever. See Affidavit of Lt. Gross attached hereto as Exhibit 2. This evidence is completely un-rebutted by any evidence submitted by the United States. Put simply, the United States, did not hire an independent contractor to provide security in the area where the murder of Ranjit Singh

actually occurred, which was in the pedestrian plaza immediately adjacent to and <u>outside</u> of the building. See generally: Plaintiff's Opposition to the United States' Motion To Dismiss. This being the case, the United States' reliance on the independent contractor defense is utterly misplaced.

**F. Conclusion**

Given the circumstances, it would be manifestly unjust not to consider this material. The court should reconsider its earlier ruling and deny the United States' motion to dismiss.

Respectfully submitted,

<u>/s/ Geoffrey D. Allen</u>
Geoffrey D. Allen
D.C. Bar 288142
1730 Rhode Island Ave. N.W.
Suite 206
Washington D.C. 20036
Tel: (202) 778-1167
E-Mail: Geoffreyallen@verizon.net
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2008, a copy of the foregoing Motion was served electronically on :

Timothy W. Romberger, Esquire
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036-5405
Email: Timromberger1@comcast.net

*Attorney for the George Washington University and*
*The George Washington University South Asian Society*

Scott D. Goetsch, Esquire
Moore & Jackson, L.L.C.
305 Washington Avenue
Towson, Maryland 21204
Email: goetsch@moorejackson.com

*Attorney for Defendant, SecTek Inc.*

Blanche Bruce, Esquire
United State's Attorney's Office
501 Third Street, N.W.
Washington, D.C. 20530
Email: blanche.bruce@usdoj.gov

*Attorney for United States of America*

Robert H. Bouse, Jr. Esquire
Anderson, Coe & King, LLP
201 N. Charles Street, Suite 2000
Baltimore, MD 21201
Email: bouse@acklaw.com

*Attorney for Defendant Hill Partners, Inc.*

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Geoffrey D. Allen
　　　　　　　　　　　　　　　　　　　　　　　　　Geoffrey D. Allen

12