UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GURPAL SINGH, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-574 (RMC) |
| SOUTH ASIAN SOCIETY OF THE GEORGE WASHINGTON UNIVERSITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

On June 5, 2008, the Court granted the United States's Renewed Motion to Dismiss and the United States was dismissed from this case. *See* Dkt. ## 85 & 86. The Court determined that it lacked subject matter jurisdiction under the discretionary function and independent contractor exceptions to the general waiver of sovereign immunity contained in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. Plaintiffs seek reconsideration of the Court's decision, alleging that they recently "came into possession of and reviewed for the first time" newly disclosed evidence showing the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion. *See* Pls.' Mem. in Supp. of Mot. for Recons. ("Pls.' Mem.") [Dkt. # 87] at 1.[1] For the reasons that follow, Plaintiff's Motion for Reconsideration will be denied.

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C.

---

[1] Plaintiffs only ask this Court to reconsider its ruling on the discretionary function exception, and, therefore, this Opinion will not address the ruling on the independent contractor exception.

2005). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Revision is permitted when the Court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Singh*, 383 F. Supp. 2d at 101 (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

## II. DISCUSSION

A court lacks jurisdiction to hear claims brought under the FTCA that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has established a two-part test for determining whether this "discretionary function" exception applies in a given case. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, a court must determine whether any "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If such a law or policy exists, "the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536). Second, assuming there is no statute, regulation, or policy, and the challenged conduct involves an "element of judgment," a court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23 (citations omitted). The exception's purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political

policy through the medium of an action in tort." *Id*. at 323 (citations omitted). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

In an earlier Opinion, the Court permitted limited discovery to determine "whether there was a mandatory policy regarding the placement of security guards at the exits of the Old Post Office Pavilion," but determined that, under the second prong of the *Gaubert* test, the posting of the guards at the Old Post Office Pavilion was a discretionary function. *See* May 21, 2007 Mem. Op. [Dkt. # 69] at 7.

> [T]he decision about where to post security guards – regardless of whether that decision was negligent – is clearly the type of discretionary function that Congress has exempted from the FTCA's waiver of sovereign immunity. Similarly, the selection and supervision of security contractors falls in an area of discretion that is beyond the Court's jurisdiction. But that only disposes of the second part of the discretionary function test. The United States could be held liable in tort for the failure to provide adequate security if the injury resulted from a government employee's failure to follow a specific, mandatory policy requiring a particular course of action.

*Id*. (internal citations omitted).

In their Opposition to Defendant's Renewed Motion to Dismiss, Plaintiffs argued: (1) the word "shall" in 40 U.S.C. § 1315(a) creates a mandatory policy, and (2) there was an unwritten oral policy requiring three armed guards at each entrance to the Old Post Office Pavilion. Pls.' Opp'n to Def.'s Renewed Mot. to Dismiss [Dkt. # 81] at 8-18. On the first argument, the Court determined that 40 U.S.C. § 1315 does not mandate that federal employees must protect persons or property in any specific manner or under a specific course of conduct. *See* June 5, 2008 Mem. Op. [Dkt. # 85] at 10 (citing *Fitzsimmons v. United States*, 496 F. Supp. 2d 1035, 1040 (D.N.D. 2007);

*Graham v. United States*, No. 97-1950, 2002 U.S. Dist. LEXIS 1765, at *11 (E.D. Pa. Feb. 5, 2002); *Macharia v. United States*, 334 F.3d 61, 65 (D.C. Cir. 2003)). The Court also rejected Plaintiffs' second argument.

> Plaintiffs offer no case law to support their contention that an unwritten policy, even if it existed, renders the discretionary function exception inapplicable. Moreover, under *Gaubert*, any mandatory policy would need to prescribe a specific course of conduct to overcome the discretionary function test. [Plaintiffs] offer vague testimony that [a] three-guard policy 'was virtually required by GSA or maybe DHS' . . . based on [] 'general knowledge' and 'general conversations' with unspecified GSA employees. This alleged evidence of a mandatory policy does not satisfy the first prong of the *Gaubert* test.

June 5, 2008 Mem. Op. at 11.

The instant Motion for Reconsideration is based on the June 9, 2008 production of a Building Security Assessment ("BSA") that was responsive to a subpoena issued by Defendant George Washington University. According to Plaintiffs, the BSA shows the existence of a mandatory policy requiring guards to patrol the perimeter of the Old Post Office Pavilion. Plaintiffs argue that "[s]ince this material was produced in response to a subpoena request for security measures that the Department of Homeland Security had <u>in place</u> for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, it seems certain that there was a mandatory requirement for perimeter patrol at the Old Post Office Pavilion in effect at the time of Ranjit Singh's murder." Pls.' Mem. at 6 (emphasis in original).

Plaintiffs' description of the underlying subpoena from which the BSA was produced is incomplete. That request sought "[a]ll documents showing, depicting, listing, or explaining all security measures that the Department of Homeland Security had in place for the protection of the Old Post Office Pavilion and its invitees on March 26, 2005 and March 27, 2005, *including but not*

*limited to any written security plan or assessment which may have been in place*." *See* Mot. to Compel [Dkt. # 40] at 5 (quoting subpoena request).  The United States explains, with supporting testimony, that the BSA did not entail a mandatory policy, but merely a set of recommendations.  The "objective of a Building Security Assessment is to evaluate and, if warranted, offer recommendations to improve the security posture of a facility.  All recommended countermeasure upgrades are, ultimately, recommendations which are incorporated into the Building Security Assessment and are evaluated and implemented [based] on a myriad of factors including priority, risk, and economics."  Def.'s Opp'n to Mot. for Recons. [Dkt. # 89], Ex. 1 (Decl. of Don Waldon, Acting Deputy Reg'l Dir., Fed. Protective Servs., Nat'l Capital Region) ¶ 3; *see also* Def.'s Opp'n to Mot. to Compel [Dkt. # 59], Ex. 1 (Decl. of John P. Clark, Deputy Assistant Sec'y for Operations of U.S. Immigration and Customs Enforcement) ¶ 5 (the "purpose of the [BSA] was to evaluate existing security and, if warranted, *offer recommendations* to improve security at the facility") (emphasis added)).  There is no indication that the recommendations in the BSA were ever implemented or made part of a mandatory policy.

In *Fanoele v. United States*, 975 F. Supp. 1394 (D. Kan. 1997), the court faced a similar set of facts.  The plaintiff in that case argued that the use of the word "shall" in a GSA handbook setting forth security procedures eliminated the government's discretion in designing security precautions for federal buildings.  In rejecting this argument, the court explained that,

> [i]n each instance, the policies, regulations, or plans are not the panacea of mandatory directives the plaintiff claims.  Rather, they contain discretionary language regarding the implementation of certain security provisions.  None of the manuals or directives that plaintiff cites require[s] the GSA or Marshal's Service to pursue any specific course of action.  The materials simply contain definitions, general guidelines, and broad objectives for providing security protection.  Additionally, the materials are highlighted by language of

> a predominately precatory nature, implicitly and explicitly vesting the
> GSA and Marshal's Service with wide discretion in determining how
> to proceed in providing security precautions.

*Faneole*, 975 F. Supp. at 1400. The BSA, like the GSA handbook, is discretionary; it does not require any specific course of action by the Government. Thus, because the BSA cannot be said to create a mandatory requirement for a specific course of conduct for perimeter security, Plaintiffs cannot satisfy the first prong of the *Gaubert* test.

### III.  CONCLUSION

The Court concludes that the newly disclosed evidence does not establish that a specific mandatory policy existed pertaining to perimeter security. There being no change in the law, and no material change in the facts, and no injustice done, Plaintiffs' Motion for Reconsideration [Dkt. # 87] will be denied. A memorializing order accompanies this Memorandum Opinion.


Date: September 16, 2008                             /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge